EXHIBIT "A"

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COURT OF COMMON PLEAS OF PHILADELPHIA**

*Filed and Attested by the
Office of Judicial Records
26 FEB 2021 11:17 am
S. RICE*

**PIETRAGALLO GORDON ALFANO**
**BOSICK & RASPANTI, LLP**
By:  James F. Marrion, Esquire (PA ID 85181)
      Kevin E. Raphael, Esquire (PA ID 72673)
1818 Market Street, Suite 3402
Philadelphia, PA  19103
Telephone: 215-320-6200
Facsimile: 215-981-0082
jfm@pietragallo.com
ker@pietragallo.com                                    *Attorneys for Plaintiffs*

| | |
|---|---|
| PHILADELPHIA ENERGY SOLUTIONS REFINING & MARKETING, LLC, 1735 MARKET STREET PHILADELPHIA, PA 19103<br><br>and<br><br>PES LIQUIDATING TRUST, 1735 MARKET STREET PHILADELPHIA, PA 19103<br><br>          Plaintiffs,<br><br>     v.<br><br>THE BABCOCK & WILCOX COMPANY 1200 EAST MARKET STREET, SUITE 650 AKRON, OH  44305<br><br>BABCOCK & WILCOX COMPANY 1200 EAST MARKET STREET, SUITE 650 AKRON, OH  44305<br><br>BABCOCK & WILCOX HOLDINGS, LLC. 1200 EAST MARKET STREET, SUITE 650 AKRON, OH  44305<br><br>BABCOCK & WILCOX ENTERPRISES, INC. 1200 EAST MARKET STREET, SUITE 650 AKRON, OH  44305<br><br>          Defendants. | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>CIVIL DIVISION<br><br><br>_____ TERM 2021<br><br>NO.<br><br>JURY TRIAL DEMAND |

## NOTICE TO DEFEND
## 2P - PRODUCTS LIABILITY

### NOTICE

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.   You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once.  If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

Philadelphia Bar Association
Lawyer Referral
and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-619

2

<span style="color:red">Case ID: 210202578</span>

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COURT OF COMMON PLEAS OF PHILADELPHIA**

**PIETRAGALLO GORDON ALFANO**
**BOSICK & RASPANTI, LLP**
By:  James F. Marrion, Esquire (PA ID 85181)
       Kevin E. Raphael, Esquire (PA ID 72673)
1818 Market Street, Suite 3402
Philadelphia, PA  19103
Telephone: 215-320-6200
Facsimile: 215-981-0082
jfm@pietragallo.com
ker@pietragallo.com                                             *Attorneys for Plaintiffs*

| | |
|---|---|
| PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING LLC, 1735 MARKET STREET PHILADELPHIA, PA 19103<br><br>and<br><br>PES LIQUIDATING TRUST, 1735 MARKET STREET PHILADELPHIA, PA 19103<br><br>              Plaintiffs,<br>    v.<br><br>THE BABCOCK & WILCOX COMPANY 1200 EAST MARKET STREET, SUITE 650 AKRON, OH  44305<br><br>BABCOCK & WILCOX COMPANY 1200 East Market Street, Suite 650 Akron, OH  44305<br><br>BABCOCK & WILCOX HOLDINGS, LLC. 1200 East Market Street, Suite 650 Akron, OH  44305<br><br>BABCOCK & WILCOX ENTERPRISES, INC. 1200 East Market Street, Suite 650 Akron, OH  44305,<br><br>              Defendants. | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>CIVIL DIVISION<br><br><br>_____ TERM 2021<br><br>NO.<br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION – COMPLAINT
## 2P – PRODUCT LIABILITY

Plaintiffs, PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING LLC., and PES LIQUIDATING TRUST (collectively "Plaintiffs"), by and through their counsel, Pietragallo Gordon Alfano Bosick & Raspanti, LLP, hereby complain against the defendants, The Babcock & Wilcox Company, Babcock & Wilcox Company, Babcock & Wilcox Holdings, LLC, and Babcock & Wilcox Enterprises, Inc., , ("B&W"), as follows:

**I.   THE PARTIES**

1.   Plaintiff, PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING LLC., is a Delaware limited liability company.

2.   Plaintiff, PES LIQUIDATING TRUST, is a Delaware statutory trust.

3.   Defendant, THE BABCOCK & WILCOX COMPANY, is a Delaware corporation with its principal place of business at 1200 East Market Street, Suite 650, Akron, Ohio 44305.

4.   Defendant, BABCOCK & WILCOX COMPANY, is a Delaware corporation with its principal place of business at 1200 East Market Street, Suite 650, Akron, Ohio 44305.

5.   Defendant, BABCOCK & WILCOX HOLDINGS, LLC, is a Delaware corporation with its principal place of business at 1200 East Market Street, Suite 650, Akron, Ohio 44305.

6.   Defendant, BABCOCK & WILCOX ENTERPRISES, INC., is a Delaware corporation with its principal place of business at 1200 East Market Street, Suite 650, Akron, Ohio 44305.

**II.   JURISDICTION AND VENUE**

7.   Plaintiffs incorporate by reference the previous paragraphs of the Complaint as if set forth fully herein.

Case ID: 210202578

8.      This Court maintains original jurisdiction over the instant claims since the amount in controversy exceeds mandatory arbitration amounts.

9.      Venue is proper in Philadelphia County as the occurrence upon which the claim is based occurred in Philadelphia County and B&W regularly conducts business in Philadelphia County.

10.     Venue of this matter is properly laid in this judicial district pursuant to Pa.R.C.P.No. 1006 and Pa.R.C.P.No 2179 as a result of the cause of action arising, transaction or occurrence taking place, and the defendants regularly conducting business or otherwise utilizing the market place, within this judicial district.

11.     Jurisdiction is proper in this judicial district as defendant has availed itself of the benefits and protections of the law, regulations, and rules of this jurisdiction and the Commonwealth.

12.     There is no diversity of citizenship between the parties, as all are incorporated in the state of Delaware.

III.   **FACTS**

13.     Plaintiffs incorporate by reference the previous paragraphs of the Complaint as if set forth fully herein.

14.     Philadelphia Energy Solutions Refining and Marketing LLC ("PES"), a Delaware limited liability company, owned and operated an oil refining complex in Philadelphia (the "Philadelphia Refinery Complex"), part of which was known as known as the PES Girard Point Refinery in Philadelphia ("the GP Refinery").

15.     On or about June 21, 2019, a hydrocarbon vapor release at the GP Refinery emanated from an 8" 90º elbow joint ("Failed elbow joint").

Case ID: 210202578

16.     PES was the successor-in-interest to several prior companies when and where the Failed elbow joint was originally installed.  Those prior companies' ownership of the GP Refinery are as follows and, collectively hereinafter referred to as "Refinery Owner".  PES purchased the Philadelphia Refinery Complex from Sunoco in 2012.  Sunoco, in turn, purchased the GP Refinery from Chevron, who had merged with Gulf Oil.  Gulf Oil owned the GP Refinery at the time of the construction of the unit where the Failed elbow joint was installed that forms the basis of this lawsuit.  During the construction of the GP Refinery, Gulf Oil, through its contractors and/or agents, purchased many parts for specific use in the GP Refinery, including 8" 90º elbow joints and the Failed elbow joint purchased from Defendant, B&W.

17.     The vapor release resulted in a fire and explosions in Unit 433 of the Modified HF Alkylation Unit's Depropanizer Reflux System at the GP Refinery.

18.     The fire and explosions severely damaged the GP Refinery and required that PES cease operations at the Philadelphia Refinery Complex and file for bankruptcy protections.

19.     PES and plaintiffs sustained damages as a result of the fire and explosions.  The damages included, but are not limited to, the cost of fighting and extinguishing the fire, remediation costs, damage to the Philadelphia Refinery Complex, the loss of the products being stored at the GP Refinery, the loss of raw materials for use at the GP Refinery, and loss of business income.

20.     The Failed elbow joint from which the hydrocarbon vapor was released was designed, manufactured, marketed, distributed or sold by B&W as it was marked "Made in USA 8 STD B&W WPB 1 LDM."

21.     B&W designed, manufactured, and/or marketed the Failed elbow joint.

22.     Refinery Owner purchased the Failed elbow joint for use in the GP Refinery.

Case ID: 210202578

23.     At the time Refinery Owner purchased the elbow joint, Refinery Owner intended to purchase an elbow joint made of carbon steel.

24.     After the incident it was discovered the Failed elbow joint also contained a very faint stamping of "YOLOY," which is a trademark for a specific type of steel alloy that contains intentionally added specific amounts/percentages of nickel and copper trademarked by THE YOUNGSTOWN SHEET AND TUBE COMPANY, not the carbon steel ordered by Refinery Owner.

25.     Testing of the Failed elbow joint post-incident confirmed the Failed elbow joint contained specific constituent chemistry which is only found in YOLOY steel.  The testing confirmed the Failed elbow joint was in-fact YOLOY and not ASME SA-234 Gr. WPB.

26.     While ASME SA-234 Gr. WPB allows for trace elements, the specific chemical composition of the Failed elbow joint did not contain trace elements; rather it had intentionally added and significantly elevated levels of nickel and copper, rendering it subject to corrosion and premature failure.

27.     An adjacent 90º elbow joint stamped with ASME SA-234 Gr. WPB, the carbon steel ordered by Refinery Owner and furnished by B&W, that was confirmed post-incident to be carbon steel, showed no signs of corrosion since its initial installation.

## IV.     <u>CAUSES OF ACTION</u>

### COUNT I - NEGLIGENCE

28.     Plaintiffs incorporate by reference the previous paragraphs of the Complaint as if set forth fully herein.

29.     At the aforementioned time and place, the Failed Elbow joint improperly designed, labeled, manufactured and marketed by the B&W, suddenly and unexpectedly ruptured. The

Case ID: 210202578

rupture allowed the escape of hydrocarbons, which ignited and caused fires that led to catastrophic physical damage to the refinery and caused significant economic damages.

30.     B&W manufactured and supplied elbow joints such as this one for numerous parties throughout the world for many varied purposes, uses, and services. The elbow joint was not custom designed for the Plaintiffs or previous Refinery Owners, but rather was an elbow joint that could be used in many applications.

31.     The Failed elbow joint from which the hydrocarbon was released contained two sets of markings: ASME SA-234 gr. WPB and the very faint YOLOY.

32.     The first and visible marking indicates carbon steel; the second very faint marking, YOLOY, indicates the use of an alloy containing intentionally added percentages of nickel and copper.

33.     In fact, the Failed elbow joint from which the hydrocarbon was released contained intentionally added percentages and amounts of nickel and copper, or YOLOY.

34.     The intentional addition of nickel and copper rendered the Failed elbow joint susceptible to accelerated corrosion.

35.     The elbow joint specifications required the use of carbon steel only, not YOLOY.

36.     B&W by not supplying what was specified and purchased, i.e., a ASME SA-234 Gr. WPB carbon steel elbow fitting, but rather a YOLOY alloy fitting containing intentionally added percentages and amounts of copper and nickel that was marked by B&W as carbon steel, caused the Failed elbow joint to prematurely rupture.

37.     Plaintiffs had no notice of the lack of proper chemical composition of the Failed elbow joint until after the fire on June 21, 2019.

38.     B&W breached its duties by designing, manufacturing, distributing or selling the

Case ID: 210202578

Failed elbow joint using the alloy YOLOY, rather than designing, manufacturing, distributing or selling the elbow joint solely with carbon steel.

39.     B&W breached its duties by designing, manufacturing, distributing or selling the elbow joint with improper markings.

40.     B&W's breach of its duties was the proximate cause of the fire and explosions.

41.     B&W's breach of its duties were a substantial factor in the damages sustained by PES and Plaintiff.

42.     Plaintiffs would show that B&W was negligent through their acts and omissions, jointly and severally, by and through agents, servants, and/or employees, acting in the course and scope of their respective employment, individually and/or collectively.

Wherefore, Plaintiffs demand judgment against B&W, including the costs of this action, interest and such other and further relief as the Court may deem just and appropriate.

## COUNT II - STRICT LIABILITY SECTION 402A
### (Defective Design)

43.     Plaintiffs incorporate by reference the previous paragraphs of the Complaint as if set forth fully herein.

44.     The Failed elbow joint designed, manufactured, marketed, distributed or sold by B &W was in a defective condition at the time of its sale to Refinery Owner.

45.     B&W inadequately designed the Failed elbow joint for use in Unit 433.

46.     That defective condition consisted of the intentional introduction of specific amounts and percentages of nickel and copper, or the alloy YOLOY, in the elbow joint calling solely for the use of carbon steel.

47.     The defective condition consisted in the design of the Failed elbow joint with the intentional introduction of specific amounts and percentages of nickel and copper and/or design of

Case ID: 210202578

the Failed elbow joint with misleading markings and mismarking of the Failed elbow joint as to its composition.

*Risk Utility Standard*

48.    A reasonable and prudent designer, manufacturer, seller or distributor should have concluded that the probability and seriousness of harm caused by the Failed elbow joint outweighed the burden or costs of proper design and markings.

49.    The defective condition of the Failed elbow joint rendered it unreasonably dangerous for its intended use.

50.    The defective condition of the Failed elbow joint was a substantial factor in the fire and explosions.

51.    The defective condition of the Failed elbow joint was the proximate cause of the damages to Plaintiffs.

*Consumer Expectations Standard*

52.    At all relevant times material herein, the danger presented by the use and operation of the Failed elbow joint was unknowable to an ordinary end user or consumer, such as the Plaintiffs.

53.    At all relevant times material herein, the danger presented by the use and operation of the Failed elbow joint to an ordinary end user or consumer such as the Plaintiffs and was unacceptable to the Plaintiffs.

54.    At all relevant times material herein, the ordinary end user or consumer, such as the Plaintiffs would not reasonably anticipate and appreciate that the use and operation of the Failed elbow joint would result catastrophic damages to the GP Refinery.

Case ID: 210202578

55.     At all relevant times material herein, the danger and risk of catastrophic damages presented by the Failed elbow joint was beyond that which is contemplated by an ordinary end user or consumer, such as the Plaintiffs.

Wherefore, Plaintiffs demand judgment against B&W, including the costs of this action, interest and such other and further relief as the Court may deem just and appropriate.

## COUNT III - STRICT LIABILITY – MANUFACTURING DEFECT

56.     Plaintiffs incorporate by reference the previous paragraphs of the Complaint as if set forth fully herein.

57.     The Failed elbow joint designed, manufactured, marketed, distributed or sold by B&W was in a defective condition at the time of its sale to Refinery Owner.

58.     B&W inadequately and defectively manufactured the Failed elbow joint by adding specific amounts and percentages of nickel and copper, which was not appropriate for use at the GP Refinery, because it caused accelerated corrosion and failure, and by manufacturing the Failed elbow joint with misleading and inaccurate markings, misleading Refinery Owner into using what it thought was a carbon steel elbow joint when in fact it was not.

59.     The defective condition consisted in the manufacture of the Failed elbow joint with the addition of specific amounts and percentages of nickel and copper and/or manufacture of the Failed elbow joint with misleading markings and mismarking of the Failed elbow joint as to its composition.

60.     A reasonable and prudent designer, manufacturer, seller or distributor should have concluded that the probability and seriousness of harm caused by the Failed elbow joint outweighed the burden or costs of proper manufacture.

61.     The defective condition of the Failed elbow joint rendered it unreasonably

9

Case ID: 210202578

dangerous for its intended use.

62.     The defective condition of the Failed elbow joint was a substantial factor in the fire and explosions.

63.     The defective condition of the Failed elbow joint was the proximate cause of the damages to Plaintiffs.

Wherefore, Plaintiffs demand judgment against B&W, including the costs of this action, interest and such other and further relief as the Court may deem just and appropriate.

### COUNT IV- STRICT LIABILITY – MARKETING DEFECT

64.     Plaintiffs incorporate by reference the previous paragraphs of the Complaint as if set forth fully herein.

65.     The Failed elbow joint designed, manufactured, marketed, distributed or sold by B &W was in a defective condition at the time of its sale to Refinery Owner.

66.     After the incident, Plaintiffs discovered that the Failed elbow joint also contained a very faint stamping of "YOLOY", which is a trademark for a specific type of steel alloy that contains specific amounts/percentages of nickel and copper trademarked by THE YOUNGSTOWN SHEET AND TUBE COMPANY, not the carbon steel ordered by Refinery Owner.

67.     Post-incident testing confirmed the Failed elbow joint contained specific constituent chemistry which is only found in YOLOY steel alloy and not carbon steel.  The testing confirmed the Failed elbow joint was in-fact YOLOY and not the ordered ASME SA-234 Gr. WPB carbon steel.

68.     While ASME SA-234 Gr. WPB allows for trace elements, the specific chemical composition of the Failed elbow joint did not contain trace elements; rather, it had intentionally

Case ID: 210202578

added and significantly elevated levels of nickel and copper, rendering it subject to corrosion and premature failure.

69.     B&W inadequately and defectively marketed the Failed elbow joint by mislabeling the Failed elbow joint and misleading the purchaser, including Refinery Owner.  The mislabeling caused  Refinery Owner to use what it thought was a carbon steel elbow joint when, in reality, it was a YOLOY elbow joint, so it prematurely corroded and failed.  The adjacent 90º elbow stamped with ASME SA-234 Gr. WPB, the carbon steel ordered by Refinery Owner and furnished by B&W, that was confirmed post-incident to be carbon steel showed no signs of corrosion since its initial installation.

70.     The defective condition consisted in the inaccurate and misleading marketing of the Failed elbow joint.

71.     A reasonable and prudent designer, manufacturer, seller or distributor should have concluded that the probability and seriousness of harm caused by the Failed elbow joint outweighed the burden or costs of proper manufacture.

72.     The defective condition of the Failed elbow joint rendered it unreasonably dangerous for its intended use.

73.     The defective condition of the Failed elbow joint was a substantial factor in the fire and explosions.

74.     The defective condition of the Failed elbow joint was the proximate cause of the damages to Plaintiffs.

Wherefore, Plaintiffs demand judgment against B&W, including the costs of this action, interest and such other and further relief as the Court may deem just and appropriate.

11

Case ID: 210202578

## COUNT V – BREACH OF IMPLIED WARRANTIES

75.     Plaintiffs incorporate, by reference, all preceding paragraphs, as if set forth herein at length.

76.     Defendant designed, manufactured, distributed, marketed, and sold the Failed elbow joint in issue.

77.     Defendant warranted the Failed elbow joint as a sound, quality product in safe condition (i.e. without defects).

78.     Refinery Owner relied upon the skill and judgment of defendant that the Failed elbow joint was safe to use in its intended manner.

79.     The fire and explosion, as described above and incorporated herein, were due to the conduct of Defendant and the design, manufacture, distribution, marketing, and sale of the defective Failed elbow joint.

80.     The Failed elbow joint was unfit to be used in it is intended manner for the reasons stated above and incorporated herein by reference.

81.     As a result of the foregoing, Defendant is liable to Plaintiffs for the implied warranties that the Failed elbow joint sold by Defendant was merchantable, fit for use, and not suitable and fit for a particular purpose under common law and *13 Pa.C.S. §2314* and *13 Pa.C.S. §2315*.

82.     As a result of the aforementioned breach of implied warranties by Defendant, Plaintiffs have suffered damages for the reasons stated above and incorporated herein by reference.

Wherefore, Plaintiffs demand judgment against B&W, including the costs of this action, interest and such other and further relief as the Court may deem just and appropriate.

Case ID: 210202578

## V.   <u>DAMAGES</u>

83.     Plaintiffs incorporate by reference the previous paragraphs of the Complaint as if set forth fully herein.

84.     Wherefore, Plaintiffs demand judgment against Defendant, including the costs of this action, interest and such other and further relief as the Court may deem just and appropriate, including that Plaintiffs be awarded compensatory damages as proven at trial; that Plaintiffs be awarded damages for prejudgment delay; and that Plaintiffs be awarded post-judgment interest.

## VI.   <u>JURY DEMAND</u>

85.     Plaintiffs incorporate by reference the previous paragraphs of the Complaint as if set forth fully herein.

86.     Plaintiffs demand a jury trial and have paid the appropriate fee pursuant to Pa.R.C.P. 1007.1(a).

## VII.   <u>FOR THE COURTS EYES ONLY</u>

87.     Plaintiffs incorporate by reference the previous paragraphs of the Complaint as if set forth fully herein.

88.     Plaintiffs hereby give notice to the Court and all parties concerned that various Underwriters issued policies of insurance which insured Plaintiffs and which insured a portion of this loss.  Pursuant to their subrogation rights under the insurance policies they issued to Plaintiffs, these Underwriters are also real parties-in-interest and, along with Plaintiffs, have brought this lawsuit.

## VIII.   <u>PRAYER</u>

89.     Plaintiffs incorporate by reference the previous paragraphs of the Complaint as if set forth fully herein.

Case ID: 210202578

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be cited in terms of law to appear and answer herein, that upon final trial and hearing hereof, that Plaintiffs recover damages in accordance with the evidence, that Plaintiffs recover costs of court herein expended, that Plaintiffs recover prejudgment and post-judgment interest to which Plaintiffs are justly entitled under the law, that Plaintiffs recovery attorney's fees through the final appeal of the lawsuit, and for such other further relief, both general and special, both in law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**

By:*/s/ Kevin E. Raphael*
    James F. Marrion, Esquire (85181)
    jfm@pietragallo.com
    Kevin E. Raphael, Esquire (72673)
    ker@pietragallo.com
    1818 Market Street, Suite 3402
    Philadelphia, PA  19103
    Telephone: 215-320-6200
    Facsimile: 215-981-0082

    and

    **ZABEL FREEMAN**
    Tom Zabel
    Texas Bar. No. 22235500
    (*Subject to admission Pro Hac Vice*)
    tzabel@zflawfirm.com
    Brook F. Minx
    Texas Bar No. 00789905
    (*Subject to admission Pro Hac Vice*)
    bminx@zflawfirm.com
    Richard T. Fass
    Texas Bar No. 06849400
    (*Subject to admission Pro Hac Vice*)
    rfass@zflawfirm.com

14

Case ID: 210202578

Taylor Ann Cruse
Texas Bar No. 24107743
(*Subject to admission Pro Hac Vice*)
tcruse@zflawfirm.com
1135 Heights Boulevard
Houston, Texas 77008
Telephone: 713-802-9117
Facsimile: 713-802-9114

*Attorneys For Plaintiffs*

Case ID: 210202578

**VERIFICATION**

I, ANTHONY LAGRECA, do state that the facts set forth in this complaint are true and correct to the best of my knowledge, information and belief, and I acknowledge that this verification is made subject to the penalties of 18 Pa. C.S.A. § 1404 relating to unsworn falsifications to the authorities.

Dated: February 25, 2021

Case ID: 210202578

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Plaintiffs Philadelphia Energy Solutions Refining & Marketing, LLC and
PES Liquidating Trust


Signature:     */s/ James F. Marrion*
Name:        James F. Marrion
Attorney No.:  PA85181

Case ID: 210202578

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**COURT OF COMMON PLEAS OF PHILADELPHIA**

**PIETRAGALLO GORDON ALFANO**
**BOSICK & RASPANTI, LLP**
By:  James F. Marrion, Esquire (PA ID 85181)
     Kevin E. Raphael, Esquire (PA ID 72673)
1818 Market Street, Suite 3402
Philadelphia, PA  19103
Telephone: 215-320-6200
Facsimile: 215-981-0082
jfm@pietragallo.com
ker@pietragallo.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| PHILADELPHIA ENERGY SOLUTIONS REFINING & MARKETING, LLC, 1735 MARKET STREET PHILADELPHIA, PA 19103 <br><br> and <br><br> PES LIQUIDATING TRUST, 1735 MARKET STREET PHILADELPHIA, PA 19103 <br><br>                 Plaintiffs, <br>     v. <br><br> THE BABCOCK & WILCOX COMPANY 1200 EAST MARKET STREET, SUITE 650 AKRON, OH  44305 <br><br> BABCOCK & WILCOX COMPANY 1200 EAST MARKET STREET, SUITE 650 AKRON, OH  44305 <br><br> BABCOCK & WILCOX HOLDINGS, LLC. 1200 EAST MARKET STREET, SUITE 650 AKRON, OH  44305 <br><br> BABCOCK & WILCOX ENTERPRISES, INC. 1200 EAST MARKET STREET, SUITE 650 AKRON, OH  44305 <br><br>                 Defendants. | COURT OF COMMON PLEAS PHILADELPHIA COUNTY <br><br> CIVIL DIVISION <br><br><br> _____ TERM 2021 <br><br> NO. <br><br> JURY TRIAL DEMAND |

Case ID: 210202578

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Complaint and supporting papers have been served this day upon the following individuals and in the manner indicated below, which service satisfies Pa.R.C.P. Nos. 403, 404, and 205.4:

## REGULAR MAIL AND CERTIFIED MAIL/RETURN RECEIPT REQUESTED

The Babcock & Wilcox Company
1200 East Market Street, Suite 650
Akron, Oh  44305

Babcock & Wilcox Company
1200 East Market Street, Suite 650
Akron, Oh  44305

Babcock & Wilcox Holdings, LLC
1200 East Market Street, Suite 650
Akron, Oh  44305

Babcock & Wilcox Enterprises, Inc.
1200 East Market Street, Suite 650
Akron, OH  44305

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**

By: */s/ James F. Marrion*
James F. Marrion, Esquire
Kevin E. Raphael, Esquire

*Attorneys for Plaintiffs*

Dated:  February 26, 2021

2

Case ID: 210202578

# EXHIBIT "B"

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re: | NUMBER |
| | 00-10992 |
| **THE BABCOCK & WILCOX COMPANY,** | SECTION "B" |
| | |
| **DEBTOR(S)** | CHAPTER 11 |
| | REORGANIZATION |

<u>**Jointly Administered with**</u>

| | |
|---|---|
| **DIAMOND POWER INTERNATIONAL, INC.** | 00-10993 |
| **BABCOCK & WILCOX CONSTRUCTION CO., INC.** | 00-10994 |
| **AMERICON, INC.** | 00-10995 |

<u>**JOINT PLAN OF REORGANIZATION AS OF SEPTEMBER 28, 2005,
AS AMENDED THROUGH JANUARY 17, 2006**</u>

| | |
|---|---|
| KIRKLAND & ELLIS LLP | HELLER, DRAPER, HAYDEN, |
| John Donley |   PATRICK & HORN, L.L.C. |
| Theodore L. Freedman | Jan M. Hayden |
| Deanna D. Boll | William H. Patrick, III |
| 200 East Randolph Drive | Warren Horn |
| Chicago, IL 60601 | 650 Poydras Street, Suite 2500 |
| Telephone: (312) 861-2000 | New Orleans, LA 70130 |
| Facsimile: (312) 861-2200 | Telephone: (504) 568-1888 |
| | Facsimile: (504) 522-0949 |
| | |
| National Counsel for the Debtors | Louisiana Counsel for the Debtors |
| and Debtors In Possession | and Debtors In Possession |
| | |
| CAPLIN & DRYSDALE, CHTD. | YOUNG CONAWAY STARGATT |
| Elihu Inselbuch | & TAYLOR, LLP |
| Peter Van N. Lockwood | James L. Patton, Jr. |
| Julie W. Davis | Richard H. Morse |
| Nathan D. Finch | Edwin J. Harron |
| 375 Park Avenue, 35th Floor | The Brandywine Building |
| New York, NY 10022 | 1000 West Street, 17th Floor |
| Telephone: (212) 319-7125 | P.O. Box 391 |
| Facsimile: (212) 644-6755 | Wilmington, DE 19899 |
| | Telephone: (302) 571-6600 |
| | Facsimile: (302) 571-1253 |
| | |
| National Counsel for the | Counsel to the Legal Representative for |
| Asbestos Claimants' Committee | Future Asbestos-Related Claimants |

BALDWIN & HASPEL, LLC
James P. Magee (#01203)
Dennis M. Laborde (#17979)
1100 Poydras Street
New Orleans, LA 70163-2200
Telephone (504) 585-7711
Facsimile: (504) 585-7751


Louisiana Counsel for the Asbestos
Claimants' Committee


ADAMS & REESE
John M. Duck
4500 One Shell Square
New Orleans, LA 70139
Telephone: (504) 585-0226
Facsimile: (504) 566-0210


Louisiana Counsel for McDermott
Incorporated

SESSIONS, FISHMAN & NATHAN, LLP
J. David Forsyth (Bar No. 5719)
201 St. Charles Avenue
Suite 3500
New Orleans, LA 70170
Telephone: (504) 582-1521
Facsimile: (504) 582-1564


Counsel to the Legal Representative for
Future Asbestos-Related Claimants


JENNER & BLOCK LLP
Daniel R. Murray
One IBM Plaza
Chicago, IL 60611-7603
Telephone: (312) 222-9350
Facsimile:  (312) 527-0484


National Counsel for McDermott
Incorporated

TABLE OF CONTENTS

ARTICLE 1. DEFINITIONS, CONSTRUCTION OF TERMS, EXHIBITS AND ANCILLARY DOCUMENTS ................................................................................1

    1.1    Defined Terms. .........................................................................1

    1.2    Other Terms/Interpretation. ...................................................21

    1.3    The Plan Documents. ..............................................................21

    1.4    Ancillary Documents. ............................................................22

ARTICLE 2. PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND TAX CLAIMS ...........................................................................22

    2.1    Payment of Allowed Administrative Expenses. ....................22

    2.2    Tax Claims. .............................................................................22

ARTICLE 3. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ..................................................................................23

    3.1    Summary. ................................................................................23

    3.2    Classification and Treatment. ................................................23

ARTICLE 4. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .........29

    4.1    Modification of the Plan/Amendment of Plan Documents....................29

    4.2    Revocation or Withdrawal. .....................................................29

    4.3    Disallowed Claims and Disallowed Interests. .......................29

ARTICLE 5. PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS............................30

    5.1    Objections to Claims; Prosecution of Disputed Claims........................30

    5.2    Distribution on Account of Disputed Claims.........................30

    5.3    General Unsecured Claims – Distributions by the Reorganized Debtors. ............30

    5.4    Asbestos PI Trust Claims........................................................30

    5.5    Class 7 Claims.........................................................................30

ARTICLE 6. ACCEPTANCE OR REJECTION OF THE PLAN ...............................................30

6.1     Impaired Classes to Vote. ....................................................................................30

6.2     Acceptance by Impaired Classes of Claims.........................................................31

6.3     Presumed Acceptance of Plan. .............................................................................31

6.4     Acceptance Pursuant to Section 524(g) of the Bankruptcy Code.........................31

6.5     Nonconsensual Confirmation................................................................................31

ARTICLE 7. IMPLEMENTATION OF THE PLAN.........................................................................31

7.1     Corporate Governance of B&W and the Other Debtors.......................................31

7.2     The Asbestos PI Trust...........................................................................................31

7.3     Insurer Misconduct Actions. ................................................................................33

7.4     Asbestos Insurance Entity Injunction. .................................................................33

7.5     The Class 7 Claims. ..............................................................................................35

7.6     Rights Against Non-Debtors Under Environmental Laws. ..................................35

7.7     Non-Debtor Affiliate Release. ..............................................................................35

7.8     The Asbestos PI Channeling Injunction and the Asbestos PD Channeling
        Injunction..............................................................................................................36

7.9     Distributions Under the Plan.................................................................................36

7.10    Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..........36

7.11    Manner of Payment Under the Plan.......................................................................36

7.12    Occurrence of the Confirmation Date....................................................................36

7.13    Occurrence of the Effective Date...........................................................................39

7.14    Management of the Reorganized Debtors...............................................................41

7.15    Corporate Action....................................................................................................41

7.16    Plan Documents. ....................................................................................................41

7.17    Effectuating Documents and Further Transactions................................................41

7.18    Allocation of Plan Distributions Between Principal and Interest. .........................41

7.19    Term of Certain Injunctions and Automatic Stay. ...................................41

7.20    No Successor Liability. ..............................................................................42

7.21    Nondischargeable Environmental Liability Affecting Rights of Governmental Units. ........................................................................................................42

7.22    Deemed Consolidation of Debtors for Plan Purposes Only....................42

ARTICLE 8. EXECUTORY CONTRACTS, UNEXPIRED LEASES, CORPORATE GUARANTIES, INDEMNITY AGREEMENTS, AND POST PETITION CONTRACTS ................................................................................................42

8.1    Assumption of Executory Contracts and Unexpired Leases...................42

8.2    Reservation of Insurance Rights. .............................................................43

8.3    Compensation and Benefits Program.......................................................43

8.4    Letters of Credit, Surety Bonds, Corporate Guaranties of Construction Contracts, and Certain Indemnity Agreements, and Post-Petition Contracts. ........................43

ARTICLE 9. RETENTION OF JURISDICTION ..........................................................44

9.1    Asbestos PI Trust Agreement and Distribution Procedures. ..................44

9.2    Executory Contracts and Unexpired Leases. ..........................................44

9.3    Trustee Causes of Action. ........................................................................44

9.4    Disputed Claims Allowance/Disallowance..............................................44

9.5    Enforcement/Modification of the Plan.....................................................44

9.6    Compensation of Professionals................................................................45

9.7    Settlements...............................................................................................45

9.8    Taxes. .......................................................................................................45

9.9    Specific Purposes. ...................................................................................45

9.10    Insurance Matters.....................................................................................45

ARTICLE 10. PROPERTY HELD IN TRUST AND AUTHORITY OF THE DEBTORS.........46

10.1    Certain Property Held in Trust by the Reorganized Debtors....................46

10.2    Authority of the Plan Proponents.............................................................46

ARTICLE 11. MISCELLANEOUS PROVISIONS ....................................................................46

11.1    Payment of Statutory Fees. ...................................................................................46

11.2    Discharge of the Debtors; Effect of the Asbestos PI Channeling Injunction, the
        Asbestos PD Channeling Injunction, and the Asbestos Insurance Entity
        Injunction. ...........................................................................................................46

11.3    Reduction of Insurance Judgments. ......................................................................47

11.4    Rights of Action. ..................................................................................................47

11.5    Third-Party Agreements. ......................................................................................48

11.6    Dissolution of the Unsecured Claimants' Committee and the Asbestos Claimants'
        Committee; Retention of the Future Claimants' Representative; Creation of the
        Trust Advisory Committee. ...................................................................................48

11.7    Exculpation and Indemnity. ..................................................................................48

11.8    Additional Releases and Indemnification. .............................................................49

11.9    Pension Plans. ......................................................................................................50

11.10   Title to Assets; Discharge of Liabilities.................................................................51

11.11   Notice. .................................................................................................................51

11.12   Headings. .............................................................................................................52

11.13   Reformation and Severability. ..............................................................................52

11.14   Governing Law. ...................................................................................................53

11.15   Filing of Additional Documents and Amendments to Plan Documents.................53

11.16   Compliance with Tax Requirements.......................................................................53

11.17   Exemption from Transfer Taxes. ...........................................................................53

11.18   Further Assurances. ..............................................................................................53

11.19   Further Authorizations. ........................................................................................53

11.20   Deemed Withdrawal of the Plan. ..........................................................................53

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

In re:                                               NUMBER
                                                     00-10992

THE BABCOCK & WILCOX COMPANY,                        SECTION "B"

DEBTOR(S)                                            CHAPTER 11
                                                     REORGANIZATION

Jointly Administered with

DIAMOND POWER INTERNATIONAL, INC.                    00-10993
BABCOCK & WILCOX CONSTRUCTION CO., INC.              00-10994
AMERICON, INC.                                       00-10995

**JOINT PLAN OF REORGANIZATION AS OF SEPTEMBER 28, 2005,**
**AS AMENDED THROUGH JANUARY 17, 2006**

The Babcock & Wilcox Company ("B&W"), Diamond Power International, Inc. ("Diamond Power"), Babcock & Wilcox Construction Co., Inc. ("B&W Construction"), Americon, Inc. ("Americon" and collectively with B&W, Diamond Power and B&W Construction, the "Debtors"), the Asbestos Claimants' Committee, the Legal Representative for Future Asbestos-Related Claimants, and McDermott Incorporated hereby propose the following Joint Plan of Reorganization of the Debtors pursuant to the provisions of Chapter 11 of Title 11 of the United States Code:

# ARTICLE 1.
## DEFINITIONS, CONSTRUCTION OF TERMS, EXHIBITS AND ANCILLARY DOCUMENTS

**1.1  Defined Terms.**

As used herein, the following terms shall have the respective meanings specified below, unless the context otherwise requires.

### 1.1.1  1998 Transfers

"1998 Transfers" shall mean the transfers by B&W of four Subsidiaries and a $313 million intercompany note to its sole shareholder, Babcock & Wilcox Investment Company, that is the subject of Adversary Proceeding Number 01-1155 and the subject of an appeal to the District Court (consolidated under Civil Action No. 2:02-CV-00681 R(5)).

### 1.1.2  Administrative Expense Claim

"Administrative Expense Claim" shall mean any claim constituting a cost or expense of administration in the Chapter 11 Cases under Section 503(b), 507(a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors, any indebtedness or obligation incurred or assumed by the Debtors on or after the Petition Date (including the executory contracts of the Debtors assumed pursuant to Section 365 of the Bankruptcy Code by order of the Bankruptcy Court or this Plan) in connection with the conduct of their businesses or for the acquisition or lease of property or the rendition of services, any allowed compensation or reimbursement of expenses awarded or allowed under Section 330(a), 331 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under Section 1930, Chapter 123, Title 28, United States Code.

### 1.1.3  Affiliate

"Affiliate" shall mean: as to any specified Entity, (i) any other Entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by or is under common control with the specified Entity, and (ii) any Entity that is an "affiliate" (within the meaning of Section 101(2) of the Bankruptcy

1

Code) of the specified Entity. As used in clause (i) of this definition, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of an Entity (whether through ownership of Capital Stock of that Entity, by contract or otherwise).

### 1.1.4   Allowed

"Allowed" shall mean:

1.1.4.1   With respect to any Claim (other than an Asbestos PI Trust Claim), proof of which was filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court or District Court, (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, or (ii) as to which an objection has been interposed within such time as is set by the Bankruptcy Court pursuant to this Plan, such Claim to the extent that such objection has been overruled in whole or in part by a Final Order of the Bankruptcy Court or District Court.

1.1.4.2   With respect to Asbestos PI Trust Claims, in such amount as is determined pursuant to the procedures set forth in the Asbestos PI Trust Distribution Procedures.  An Allowed Claim with respect to Asbestos PI Trust Claims shall be, and be deemed to be, a judgment determining the amount of legal liability against the Asbestos PI Trust in the Allowed Amount of such Allowed Claim.  Such Allowed Claims shall be paid pursuant to the terms of this Plan and the Asbestos PI TDP.

1.1.4.3   With respect to any Claim, other than an Administrative Expense Claim, Asbestos PI Trust Claim, or Apollo/Parks Township Claim, as to which no proof of claim was filed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, such Claim to the extent that it has been listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent and not otherwise subject to an objection filed within such time as is set by the Bankruptcy Court pursuant to this Plan.

1.1.4.4   With respect to any Claim that is asserted to constitute an Administrative Expense Claim:

(i) that represents a Claim of a professional person employed under Section 327, 328 or 1103 of the Bankruptcy Code that is required to apply to the Bankruptcy Court for the allowance of compensation and reimbursement of expenses pursuant to Section 330 of the Bankruptcy Code, such Claim to the extent it is allowed by a Final Order of the Bankruptcy Court under Section 330 of the Bankruptcy Code; or,

(ii) other than with respect to a Claim of a professional person employed under Section 327, 328 or 1103 of the Bankruptcy Code that is required to apply to the Bankruptcy Court for allowance of compensation and reimbursement of expenses pursuant to Section 330 of the Bankruptcy Code,

(X) that represents an actual or necessary expense of preserving the estate or operating the business of one or more of the Debtors, any such Claim to the extent that the Debtors or the Reorganized Debtors determine it to constitute an Administrative Expense Claim, or

(Y) that the Reorganized Debtors do not believe constitutes an Administrative Expense Claim, any such Claim to the extent it is allowed in whole or in part by a Final Order of the Bankruptcy Court and only to the extent that such allowed portion is deemed, pursuant to a Final Order of the Bankruptcy Court, to constitute a cost or expense of administration under Section 503 or 1114 of the Bankruptcy Code.

### 1.1.5   Allowed Amount

"Allowed Amount" shall mean:

(i) the dollar amount of an Allowed Claim as determined by a Final Order of the Bankruptcy Court;

(ii) in the event that no such determination is made, the dollar amount agreed to by the Reorganized Debtors, or, in the case of Asbestos PI Trust Claims, determined pursuant to the Asbestos PI Trust Agreement and the Asbestos PI TDP;

(iii) in the event that no amount is determined or agreed to pursuant to clause (i) or (ii) of this subsection, the Estimated Amount of a Claim, but only to the extent that the Court has expressly estimated such Claim for purposes of distribution; or

(iv) in the event that no amount is determined or agreed to pursuant to clause (i), (ii) or (iii) of this subsection, the dollar amount of an Allowed Claim (other than an Asbestos PI Trust Claim) as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court.

Unless otherwise specified herein, in the Asbestos PI Trust Distribution Procedures or by Final Order of the Bankruptcy Court or District Court, the Allowed Amount of an Allowed Claim shall not include interest accruing on such Allowed Claim from and after the Petition Date.

### 1.1.6   Amended Findings and Conclusions

"Amended Findings and Conclusions" shall mean the Amended Proposed Findings of Fact and Conclusions of Law Regarding Core Matters and Proposed Findings of Fact, Conclusions of Law and Recommendations to the District Court with Respect to Non-Core Matters entered by the Bankruptcy Court following the confirmation hearings on the Third Amended Plan.

### 1.1.7   Apollo Facility

"Apollo Facility" shall mean the parcel or parcels of land and improvements currently or formerly containing nuclear fuel processing facilities located in Apollo, Pennsylvania.

### 1.1.8   Apollo/Parks Township Claim

"Apollo/Parks Township Claim" shall mean any and all suits, claims, causes of action, demands, damages, liabilities, costs, and expenses of any kind or description whatsoever, whether known or unknown, direct, indirect or derivative, existing or contingent, past, present, or future, foreseen or unforeseen, compensatory or punitive, whether in the nature of or sounding in tort, contract, warranty, or any other theory of law or equity for bodily, physical, emotional, or other personal injuries or other injuries or property damages or other damages arising out of or allegedly arising out of, directly or indirectly, any acts or omissions of the Debtors **(including any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of the Debtors or any conduct for which the Debtors may be deemed to have strict liability under any applicable law)** caused or allegedly caused directly or indirectly by nuclear radiation or nuclear contamination arising out of, resulting from, or attributable to the operations (including remediation and decommissioning) of the Apollo Facility or Parks Township Facility, including:

(a) All past, present, and future claims, debts, obligations, or liabilities for compensatory damages (including loss of consortium, medical monitoring, bodily, physical, emotional or other personal injury, pain, and/or suffering, wrongful death, survivorship, subrogation, or other indirect or derivative claims (e.g., medical liens) proximate, consequential, general, and special damages) and punitive damages related to acts or omissions or alleged acts or omissions of the Debtors arising out of, or resulting from, or allegedly arising out of, or resulting from, nuclear radiation or nuclear contamination arising out of or attributable   to the operations (including remediation and decommissioning) of the Apollo or Parks Township Facilities;

(b) All past, present, and future claims, debts, obligations, or liabilities for compensatory or punitive damages attributable to diminution in the value of real property, or environmental damage or economic loss attributable to acts or omissions of the Debtors caused directly or indirectly by nuclear radiation or nuclear contamination arising out of

or attributable to the operations (including remediation and decommissioning) of the Apollo or Parks Township Facilities; and

(c)       Claims of any nature that have been asserted, could have been asserted, or will be asserted in the future in the Hall Action, or in the action pending in the Court of Common Pleas of Allegheny County captioned <u>Frances Clark v. Atlantic Richfield Company</u>, Civil Division No. 60-01-13081.

(d)       Claims asserted by ARCO against the Debtors by way of Proof of Claim numbers 0234584, 0350662, 0234582, 0350661.

Notwithstanding any of the foregoing, "Apollo/Parks Township Claims" shall not include Workers' Compensation Claims.

### 1.1.9   Apollo/Parks Township Future Claimants' Representative or Apollo FCR

"Apollo/Parks Township Future Claimants' Representative" or "Apollo FCR" shall mean Basile Uddo, appointed by order of the Bankruptcy Court on August 15, 2003 (or any court-appointed successor), as the legal representative for individuals that may subsequently assert future Apollo/Parks Township Claims.

### 1.1.10   ARCO

"ARCO" shall mean the Atlantic Richfield Company, a Delaware corporation.

### 1.1.11   Asbestos Claimants' Committee or ACC

"Asbestos Claimants' Committee" or "ACC" shall mean the Asbestos Claimants' Committee appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code.

### 1.1.12   Asbestos Insurance Entity

"Asbestos Insurance Entity" shall mean any Entity, including any insurance company, insurance broker, or guaranty association, that has issued, or that has actual or potential liability, duties or obligations with respect to any Subject Asbestos Insurance Policy, provided, however that "Asbestos Insurance Entity" shall not include any captive insurance company owned directly or indirectly by MII, including, but not limited to, Creole Insurance Company, Ltd.

### 1.1.13   Asbestos Insurance Entity Injunction

"Asbestos Insurance Entity Injunction" shall mean the injunction described in Section 7.4 herein.

### 1.1.14   Asbestos Insurance Rights

"Asbestos Insurance Rights" shall mean any and all rights, titles, privileges, interests, claims, demands or entitlements of any of the Insurance Contributors to any proceeds, payments, initial or supplemental dividends, scheme payments, supplemental scheme payments, causes of action and choses in action arising under or attributable to the Subject Asbestos Insurance Policies, the Subject Asbestos Insurance Settlement Agreements, the Asbestos PI Insurance Settlement Agreements and/or the Asbestos PD Insurance Settlement Agreements, whether existing on the Effective Date or arising thereafter accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including:

(a)       any and all rights of any of the Insurance Contributors to pursue or receive payments under any Subject Asbestos Insurance Policy, Subject Asbestos Insurance Settlement Agreement, Asbestos PI Insurance Settlement Agreement and/or Asbestos PD Insurance Settlement Agreement whether for liability, defense or otherwise;

(b)       any and all rights of any of the Insurance Contributors to pursue or receive payments under any Subject Asbestos Insurance Policy, Subject Asbestos Insurance Settlement Agreement, Asbestos PI Insurance Settlement Agreement and/or Asbestos PD Insurance

Settlement Agreement from any domestic or foreign insolvent insurance company, whether in receivership, liquidation, rehabilitation, run-off, scheme of arrangement, or any other form of proceeding; and

(c)     any and all rights of any of the Insurance Contributors to pursue or receive payments under any Subject Asbestos Insurance Policy, Subject Asbestos Insurance Settlement Agreement, Asbestos PI Insurance Settlement Agreement and/or Asbestos PD Insurance Settlement Agreement from any state insurance guaranty association in connection with any state insurance guaranty association statute.

For the avoidance of doubt, "Asbestos Insurance Rights" (i) shall not include any proceeds, payments (including payments made on account of accounts receivable), initial or supplemental dividends, scheme payments or supplemental scheme payments made to any Insurance Contributor on or prior to August 25, 2005, (x) under or attributable to any Subject Asbestos Insurance Policy or (y) under a Subject Asbestos Insurance Settlement Agreement that is listed as a Pre-Petition Settlement Agreement on the Schedule of Subject Asbestos Insurance Settlement Agreements which is included in the Plan Supplement; (ii) shall include any proceeds, payments (including payments made on account of accounts receivable), initial or supplemental dividends, scheme payments or supplemental scheme payments made to any Insurance Contributor after August 25, 2005, (x) under or attributable to any Subject Asbestos Insurance Policy or (y) under a Subject Asbestos Insurance Settlement Agreement that is listed as a Pre-Petition Settlement Agreement on the Schedule of Subject Asbestos Insurance Settlement Agreements which is included in the Plan Supplement; and (iii) notwithstanding the foregoing, shall include any and all rights of any of the Insurance Contributors to proceeds or amounts paid or to be paid pursuant to any Asbestos PI Insurance Settlement Agreements which are included in the Plan Supplement, including any and all amounts deposited into any escrow or bank trust account pursuant to such an Asbestos PI Insurance Settlement Agreement.

### 1.1.15   Asbestos Insurance Rights Assignment

"Asbestos Insurance Rights Assignment" shall mean the transfer, assignment, and vesting of Asbestos PI Insurance Rights and Asbestos PD Insurance Rights described in the Asbestos Insurance Rights Assignment Agreement.

### 1.1.16   Asbestos Insurance Rights Assignment Agreement

"Asbestos Insurance Rights Assignment Agreement" shall mean one or more asbestos insurance rights assignment agreements referenced in Sections 7.2.4 and 7.4.3 of this Plan and in substantially the form or forms included in the Plan Supplement.

### 1.1.17   Asbestos PD Channeling Injunction

"Asbestos PD Channeling Injunction" shall mean an order or orders entered or affirmed by the District Court, in accordance with and pursuant to Sections 105(a) and 1141 of the Bankruptcy Code or otherwise, permanently and forever staying, restraining, and enjoining any Entity from taking any action against any Asbestos Protected Party (other than the Reorganized Debtors), Settling Asbestos Insurance Entity or the Asbestos PI Trust (except as specifically provided in such order or orders) for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Class 7 Claims, all of which shall be channeled to the Reorganized Debtors for resolution as set forth in this Plan, including:

(a)     commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party (other than the Reorganized Debtors), any Settling Asbestos Insurance Entity, the Asbestos PI Trust, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity;

(b)     enforcing, levying, attaching (including through any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party (other than the Reorganized Debtors), any Settling Asbestos Insurance Entity, the Asbestos PI

Trust, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity;

(c)     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party (other than the Reorganized Debtors), any Settling Asbestos Insurance Entity, the Asbestos PI Trust, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity;

(d)     setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party (other than the Reorganized Debtors), any Settling Asbestos Insurance Entity, the Asbestos PI Trust, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity; and

(e)     proceeding in any other manner with regard to any matter involving one or more Class 7 Claims, except in conformity and compliance with this Plan.

### 1.1.18   Asbestos PD Insurance Rights

"Asbestos PD Insurance Rights" shall mean any and all Asbestos Insurance Rights arising from, or applicable to, Class 7 Claims, but excluding any Asbestos Insurance Rights that if exercised would reduce or erode any aggregate limit of liability applicable to Asbestos PI Trust Claims.

### 1.1.19   Asbestos PD Insurance Settlement Agreement

"Asbestos PD Insurance Settlement Agreement" shall mean any settlement agreement with a Settling Asbestos Insurance Entity relating to any Class 7 Claim, which is entered into by the Debtors and which has been approved by the Court.

### 1.1.20   Asbestos PD Share Payment

"Asbestos PD Share Payment" shall mean the product of (i) the B&W/McDermott Asset Value and (ii) a fraction, the numerator of which is the Estimated Amount of Claims in Class 7, and the denominator of which is the sum of the Estimated Amount of Claims in Class 5, the Estimated Amount of Claims in Class 6, and the Estimated Amount of Claims in Class 7.

### 1.1.21   Asbestos Personal Injury Claim or Asbestos PI Claim

"Asbestos Personal Injury Claim" or "Asbestos PI Claim" shall mean a Claim, Demand, or remedy against, or any debt, liability, or obligation of, one or more of the Debtors or the Non-Debtor Subsidiaries, whether or not such Claim, Demand, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, and whether in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty for, arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or emotional injuries to persons caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to, asbestos – including asbestos-containing products, boiler systems, equipment, components, parts, improvements to real property, or materials engineered, designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any way used by one or more of the Debtors or any of their respective past or present Subsidiaries, any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable – and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors, any of their respective past or present Subsidiaries, or any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries (**including any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors, any of their respective past or present Subsidiaries, or any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries, or any conduct for which any of the Debtors, any of their respective past or present Subsidiaries, or any of the predecessors of any of the Debtors or any of their respective past or present**

**Subsidiaries may be deemed to have strict liability under any applicable law**) including all related claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages) and punitive damages, including any such Claims for which the claimant and one or more of the Debtors entered into an enforceable settlement agreement, as of the commencement of the Chapter 11 Cases, but for which the claimant has yet to receive payment.  Asbestos PI Claims do not include Workers' Compensation Claims.

### 1.1.22 Asbestos PI Channeling Injunction

"Asbestos PI Channeling Injunction" shall mean an order or orders entered or affirmed by the District Court, in accordance with and pursuant to Sections 524(g), 105(a) and 1141 of the Bankruptcy Code or otherwise, permanently and forever staying, restraining, and enjoining any Entity from taking any action against any Asbestos Protected Party or any Settling Asbestos Insurance Entity (except as specifically provided in such order or orders) for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos PI Trust Claims, all of which shall be channeled to the Asbestos PI Trust for resolution as set forth in the Asbestos PI Trust Distribution Procedures (other than actions brought to enforce any right or obligation under this Plan or any agreement or instrument between the Debtors or the Reorganized Debtors, on the one hand, and the Asbestos PI Trust, on the other hand, entered into pursuant to this Plan, which actions shall be in conformity and compliance with the provisions hereof), including:

(a)   commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, any Settling Asbestos Insurance Entity, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity;

(b)   enforcing, levying, attaching (including through any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, any Settling Asbestos Insurance Entity, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity;

(c)   creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party, any Settling Asbestos Insurance Entity, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity;

(d)   setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, any Settling Asbestos Insurance Entity, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity; and

(e)   proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos PI Trust, except in conformity and compliance therewith.

Notwithstanding the foregoing, the Asbestos PI Channeling Injunction shall not apply to any Claim against an Excluded Former Subsidiary that relates only to activities of such Excluded Former Subsidiary after the date such Excluded Former Subsidiary was incorporated.

### 1.1.23 Asbestos PI Insurance Rights

"Asbestos PI Insurance Rights" shall mean any and all Asbestos Insurance Rights, including, but not limited to, Asbestos Insurance Rights arising from, or applicable to, Asbestos PI Trust Claims.

### 1.1.24   Asbestos PI Insurance Settlement Agreement

"Asbestos PI Insurance Settlement Agreement" shall mean any settlement agreement with a Settling Asbestos Insurance Entity relating to any Asbestos PI Trust Claim, which is entered into by the Debtors with the consent of the Asbestos Claimants' Committee and the Future Claimants' Representative, and which has been approved by the Court.

### 1.1.25   Asbestos PI Trust

"Asbestos PI Trust" shall mean The Babcock & Wilcox Company, Diamond Power International, Inc., Babcock & Wilcox Construction Co., Inc., and Americon, Inc. Asbestos PI Trust established in accordance with the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures.

### 1.1.26   Asbestos PI Trust Agreement

"Asbestos PI Trust Agreement" shall mean the Asbestos PI Trust Agreement to be entered into by The Babcock & Wilcox Company, Diamond Power International, Inc., Babcock & Wilcox Construction Co., Inc., and Americon, Inc. in connection with the formation of the Asbestos PI Trust, substantially in the form of Exhibit A attached hereto.

### 1.1.27   Asbestos PI Trust Claims

"Asbestos PI Trust Claims" shall mean all Asbestos Personal Injury Claims and Indirect Asbestos PI Claims.

### 1.1.28   Asbestos PI Trust Distribution Procedures or Asbestos PI TDP

"Asbestos PI Trust Distribution Procedures" or "Asbestos PI TDP" shall mean The Babcock & Wilcox Company, Diamond Power International, Inc., Babcock & Wilcox Construction Co., Inc., and Americon, Inc. Asbestos PI Trust Distribution Procedures to be implemented by the Trustees pursuant to the terms and conditions of this Plan and the Asbestos PI Trust Agreement, to liquidate, determine, and pay claims of and distributions to holders of Asbestos PI Trust Claims as set forth in the Asbestos PI Trust Distribution Procedures, in the form attached as Exhibit B hereto (as the same may be amended from time to time in accordance with the terms thereof).

### 1.1.29   Asbestos Property Damage Claim or Asbestos PD Claim

"Asbestos Property Damage Claim" or "Asbestos PD Claim" shall mean a Claim, Demand, or remedy against, or any debt, liability, or obligation of, one or more of the Debtors or the Non-Debtor Subsidiaries, whether or not such Claim, Demand, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefore are known or unknown, and whether in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty, for, arising out of, resulting from, or attributable to, directly or indirectly, damage to property, including diminution in the value thereof or loss of use thereof, or environmental damage or economic loss, caused or allegedly caused, directly or indirectly, by the presence of, or exposure to asbestos − including asbestos-containing products, boiler systems, equipment, components, parts, improvements to real property, or materials engineered, designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any way used by one or more of the Debtors or any of their respective past or present Subsidiaries, or any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable − and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors, any of their respective past or present Subsidiaries, or any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries (**including any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors or any of their respective past or present Subsidiaries, or any conduct for which any of the Debtors, any of their respective past or present Subsidiaries, or any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries may be deemed to have strict liability under any applicable law**),

including all related claims, debts, obligations, or liabilities for compensatory (including general, special, and consequential damages) and punitive damages.

### 1.1.30  Asbestos Protected Party

"Asbestos Protected Party" shall mean any of the following parties:

(a)       the Debtors;

(b)       the Reorganized Debtors (except as to Class 7 Claims);

(c)       the Non-Debtor Subsidiaries;

(d)       the MII Indemnified Parties;

(e)       any Entity that, pursuant to this Plan or otherwise after the Effective Date, becomes a direct or indirect transferee of, or successor to, any of the Debtors, the Reorganized Debtors, the Non-Debtor Subsidiaries, the Non-Debtors Affiliates, or the MII Indemnified Parties, or any of their respective assets (but only to the extent that liability is asserted to exist as a result of its becoming such a transferee or successor);

(f)       any Entity that, pursuant to this Plan or otherwise after the Effective Date, makes a loan to any of the Debtors, the Reorganized Debtors, the Non-Debtor Subsidiaries, the Non-Debtor Affiliates, the MII Indemnified Parties, the Asbestos PI Trust, or to a successor to, or transferee of any of the respective assets of, the Debtors, the Reorganized Debtors, the Non-Debtor Subsidiaries, the Non-Debtor Affiliates, the MII Indemnified Parties, or the Asbestos PI Trust (but only to the extent that liability is asserted to exist by reason of such Entity's becoming such a lender or to the extent any pledge of assets made in connection with such a loan is sought to be upset or impaired);

(g)       each of the respective present and future Affiliates and Subsidiaries of each of the Debtors, each of the Reorganized Debtors, each of the Non-Debtor Subsidiaries, each of the Non-Debtor Affiliates, and each of the MII Indemnified Parties; or

(h)       each of the respective past, present, and future Representatives of each of the Debtors, each of the Reorganized Debtors, each of the Non-Debtor Subsidiaries, each of the Non-Debtor Affiliates, and each of the MII Indemnified Parties.

### 1.1.31  Ballot

"Ballot" shall mean the form or forms distributed to holders of impaired Claims and Equity Interests by which such parties may indicate acceptance or rejection of this Plan.

### 1.1.32  Bankruptcy Code

"Bankruptcy Code" shall mean title 11 of the United States Code, as applicable to the Chapter 11 Cases.

### 1.1.33  Bankruptcy Court

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the Eastern District of Louisiana.

### 1.1.34  Bankruptcy Rules

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

### 1.1.35 **Bar Date**

"Bar Date" shall mean, with respect to any type of Claim, the date, if any, that the Bankruptcy Court or the District Court established, by an order of such court, as the last day to file a proof of claim with respect to that type of Claim in the Chapter 11 Cases.

### 1.1.36 **Board of Directors**

"Board of Directors" shall mean the Board of Directors of the respective Debtor, or of the respective Reorganized Debtor, as the case may be, as it may exist from time to time.

### 1.1.37 **Business Day**

"Business Day" shall mean any day which is not a Saturday, Sunday or Federal holiday in the United States.

### 1.1.38 **BWICO**

"BWICO" shall mean Babcock & Wilcox Investment Company, a Delaware corporation and a Non-Debtor Affiliate.

### 1.1.39 **BWXT**

"BWXT" shall mean BWX Technologies, Inc., a Delaware corporation and a Non-Debtor Affiliate.

### 1.1.40 **BWXT Services**

"BWXT Services" shall mean "BWXT Services, Inc., a Delaware corporation and a Non-Debtor Affiliate.

### 1.1.41 **B&W**

"B&W" shall mean The Babcock & Wilcox Company.

### 1.1.42 **B&W Companies**

"B&W Companies" shall mean B&W and BWXT Services.

### 1.1.43 **B&W/McDermott Asset Value**

"B&W/McDermott Asset Value" shall mean the estimated value, as determined by the Court in its Amended Findings and Conclusions, of the B&W Common Stock, the MII Common Stock, the MII promissory notes, and the Tax Benefits (as those terms were defined in the Third Amended Plan and the Non-Debtor Affiliate Settlement Agreement attached as Exhibit F thereto) that were to be transferred to the Asbestos PI Trust pursuant to the Third Amended Plan.

### 1.1.44 **B&W Note**

"B&W Note" shall mean a five-year term promissory note, in the form of the B&W Note attached as Exhibit A to the Non-Debtor Affiliate Settlement Agreement, executed by B&W and guaranteed by BWICO and MII, in the original principal amount of $250 million, payable to the Asbestos PI Trust, which note shall bear interest at 7% per annum, accruing from and after December 1, 2006 and payable semi-annually commencing on June 30, 2007, and with level annual principal payments of $50 million each, commencing December 1, 2007, and thereafter on each anniversary thereof until the B&W Note is paid in full, with the guarantee obligations secured by a security interest in all of the issued and outstanding shares of Capital Stock of B&W held by BWICO as of the Effective Date, subject to (i) the satisfaction of the Payment Obligations Condition Precedent (as that term is defined in Section 2.1(b) of the Non-Debtor Affiliate Settlement Agreement), which shall be applicable to all payments other than the payment of $25 million of the principal amount thereof (all as more specifically provided in Section

10

2.1(b) of the Non-Debtor Affiliate Settlement Agreement), (ii) the Asbestos Resolution Legislation Set-off (as set forth in Section 7.2 of the Non-Debtor Affiliate Settlement Agreement), and (iii) such other terms and conditions as are set forth in Section 2.1(a) of the Non-Debtor Affiliate Settlement Agreement and in the form of the B&W Note attached as Exhibit A thereto.

### 1.1.45 **By-Laws**

"By-Laws" shall mean the By-Laws of the respective Debtor, as such By-Laws may be amended as of the Effective Date or thereafter.

### 1.1.46 **Capital Stock**

"Capital Stock" shall mean, with respect to: (i) any corporation, any share, or any depositary receipt or other certificate representing any share, of an equity ownership interest in that corporation; and (ii) any other Entity, any share, membership, or other percentage interest, unit of participation, or other equivalent (however designated) of any equity interest in that Entity.

### 1.1.47 **Cash**

"Cash" shall mean lawful currency of the United States of America and its equivalents.

### 1.1.48 **Cash Equivalents**

"Cash Equivalents" shall mean:  (a) securities issued or fully guaranteed or insured by the United States government or any agency thereof; (b) certificates of deposit, eurodollar time deposits, overnight bank deposits and bankers' acceptances of any commercial bank organized under the laws of the United States, any state thereof, the District of Columbia, any foreign bank, or its branches or agencies (fully protected against currency fluctuations) which, at the time of acquisition, are rated at least "A-1" by S&P or "P-1" by Moody's; (c) commercial paper of an issuer rated at least "A-1" by S&P or "P-1" by Moody's; and (d) shares of any money market fund that (i) has at least 95% of its assets invested continuously in the types of investments referred to in clauses (a) through (c) above, (ii) has net assets of not less than $500,000,000 and (iii) is rated at least "A-1" by S&P or "P-1" by Moody's; provided, however, that the maturities of all obligations of the type specified in clauses (a) through (c) above shall not exceed 180 days.

### 1.1.49 **Certificate of Incorporation**

"Certificate of Incorporation" shall mean the Certificate of Incorporation of the respective Debtor, as such Certificate of Incorporation may be amended as of the Effective Date or thereafter.

### 1.1.50 **Chapter 11 Cases**

"Chapter 11 Cases" shall mean the cases of the Debtors commenced by the filing by the Debtors of voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date.

### 1.1.51 **Claim**

"Claim" shall mean a right to: (a) payment from any of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

### 1.1.52 **Class**

"Class" shall mean any group of Claims or Equity Interests classified by this Plan pursuant to Section 1122(a)(1) of the Bankruptcy Code.

### 1.1.53 Class 7 Claims

"Class 7 Claims" shall mean all Asbestos PD Claims and Indirect Asbestos PD Claims.

### 1.1.54 Confirmation Date

"Confirmation Date" shall mean the first date as of which the Confirmation Order is signed by the District Court and entered on the District Court docket.

### 1.1.55 Confirmation Order

"Confirmation Order" shall mean the order entered on the Confirmation Date by the District Court confirming this Plan.

### 1.1.56 Contingent Claim

"Contingent Claim" shall mean any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened, or been triggered, as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the Debtor now or hereafter exists or previously existed.

### 1.1.57 Contingent Payment Right

"Contingent Payment Right" shall mean the Asbestos PI Trust's contingent right to receive, within 180 days of November 30, 2006, from MI or one of its Subsidiaries $355 million, plus interest at the rate of 7% per annum from December 1, 2006 to the date of payment, which right to payment shall be subject to (i) the satisfaction of the Payment Obligations Condition Precedent (as set forth in Section 2.1(b) of the Non-Debtor Affiliate Settlement Agreement), (ii) the Asbestos Resolution Legislation Set-off (as set forth in Section 7.2 of the Non-Debtor Affiliate Settlement Agreement), and (iii) such other applicable terms and conditions as are set forth in Section 2.1 of the Non-Debtor Affiliate Settlement Agreement.

### 1.1.58 Court

"Court" shall mean either the Bankruptcy Court or the District Court, as appropriate.

### 1.1.59 Cramdown

"Cramdown" shall mean the confirmation of this Plan over the dissent of an impaired class or classes of holders of Claims or Equity Interests pursuant to 11 U.S.C. § 1129(b).

### 1.1.60 Creditor

"Creditor" shall mean any Entity that holds a Claim against the Debtors or Debtors in Possession.

### 1.1.61 Debtor or Debtors

One or more of the Debtors, which include B&W, Americon, Diamond Power, and B&W Construction.

### 1.1.62 Debtor in Possession or Debtors in Possession

"Debtor in Possession" or "Debtors in Possession" shall mean one or more of the Debtors, in their capacity as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

### 1.1.63 Demand

"Demand" shall mean a demand for payment, present or future, that (i) was not a Claim during the Chapter 11 Cases; (ii) arises out of the same or similar conduct or events that gave rise to the Claims addressed by

the Asbestos PI Channeling Injunction or the Asbestos PD Channeling Injunction; and (iii) pursuant to this Plan, is to be paid by the Asbestos PI Trust (or the Reorganized Debtors in the case of Demands involving Asbestos PD Claims). Notwithstanding the foregoing, nothing in this Plan concedes the existence of Demands for Asbestos PD Claims as a matter of law.

### 1.1.64   Disallowed

"Disallowed" shall mean a Claim that is disallowed in its entirety by a Final Order of the Bankruptcy Court, District Court, or another court of competent jurisdiction or that is disallowed in its entirety pursuant to the Asbestos PI Trust Distribution Procedures.

### 1.1.65   Disputed

"Disputed" shall mean a Claim that is neither Allowed nor Disallowed, other than an Asbestos PI Trust Claim, which Claims will be Allowed or Disallowed pursuant to the Asbestos PI TDP, or otherwise by order of the Court.

### 1.1.66   Distribution

"Distribution" shall mean the payment, distribution, or assignment under this Plan by the Reorganized Debtors of property or interests in property (i) to any holder of an Allowed Claim (other than an Asbestos PI Trust Claim) and (ii) to the Asbestos PI Trust.

### 1.1.67   Distribution Date

"Distribution Date" shall mean, when used with respect to an Allowed Claim (other than an Asbestos PI Trust Claim), the date that is as soon as reasonably practicable after the later of (a) the Effective Date or (b) the first Business Day of the next calendar quarter after the date upon which the Claim becomes Allowed, unless the Claim becomes Allowed within fifteen Business Days before the first Business Day of the next calendar quarter, in which case the Distribution Date shall be the first Business Day of the next succeeding calendar quarter.

### 1.1.68   District Court

"District Court" shall mean the United States District Court for the Eastern District of Louisiana, having jurisdiction over the Chapter 11 Cases.

### 1.1.69   Effective Date

"Effective Date" shall mean the first Business Day after the date on which all of the conditions precedent to the effectiveness of this Plan specified in Section 7.13 have been satisfied or waived or, if a stay of the Confirmation Order is in effect on such date, the first Business Day after the expiration, dissolution, or lifting of such stay.

### 1.1.70   Encumbrance

"Encumbrance" shall mean with respect to any asset, any mortgage, lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such asset (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction).

### 1.1.71   Entity

"Entity" shall mean any individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof, or other person or entity.

### 1.1.72 Equity Interest or Interest

"Equity Interest" or "Interest" shall mean any interest in one or more of the Debtors pursuant to an "equity security" within the meaning of Section 101(16) of the Bankruptcy Code.

### 1.1.73 Estimated Amount

"Estimated Amount" shall mean the estimated dollar value of an Unliquidated Claim, Disputed Claim, or Contingent Claim pursuant to Section 502(c) of the Bankruptcy Code; provided that, in the event the Bankruptcy Court shall estimate one or more Unliquidated Claims, Disputed Claims, or Contingent Claims for purposes of allowance, such estimate (except with respect to Asbestos PI Trust Claims) shall constitute and represent the maximum amount in which such Claims may ultimately become Allowed Claims, either individually or in the aggregate.

### 1.1.74 Estimated Amount of Claims in Class 5

"Estimated Amount of Claims in Class 5" shall mean the sum of the Allowed Amount of Class 5 Claims and the Estimated Amount of any Class 5 Claims that have not yet been Allowed.

### 1.1.75 Estimated Amount of Claims in Class 6

"Estimated Amount of Claims in Class 6" shall mean the Estimated Amount of total present and future asbestos-related liability found by the Bankruptcy Court in its Amended Findings and Conclusions.

### 1.1.76 Estimated Amount of Claims in Class 7

"Estimated Amount of Claims in Class 7" shall mean the sum of the Allowed Amount of Class 7 Claims and the Estimated Amount of any Class 7 Claims that have not yet been Allowed.

### 1.1.77 Excluded Former Subsidiaries

"Excluded Former Subsidiaries" shall mean Hudson Products Corporation, a Texas corporation; BWX Technologies, Inc., a Delaware corporation; and McDermott Technology, Inc., a Delaware corporation; but such term excludes any predecessor business operations of any of those corporations.

### 1.1.78 Exit Financing

"Exit Financing" shall mean such financing agreement(s) or commitment(s) as the Debtors shall obtain: (1) to provide the Reorganized Debtors with letter of credit availability (including availability sufficient to meet the obligations of the Reorganized Debtors under the Non-Debtor Affiliate Settlement Agreement) and working capital availability; and (2) to satisfy outstanding obligations, existing as of the Effective Date, arising out of post-petition financing agreements of the Debtors.

### 1.1.79 Final Order

"Final Order" shall mean an order as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing by the Entity possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired.

### 1.1.80 Future Claimants' Representative or FCR

"Future Claimants' Representative" or "FCR" shall mean Eric Green (or any court-appointed successor), appointed by order of the Bankruptcy Court on October 5, 2000, as the legal representative for future

asbestos-related personal injury claimants for the purpose of protecting the interests of persons that may subsequently assert Demands channeled to the Asbestos PI Trust.

### 1.1.81  General Unsecured Claim

"General Unsecured Claim" shall mean any Claim that is not an Administrative Expense Claim, Tax Claim, Priority Claim, Secured Claim, Unsecured Trade Claim, Asbestos PI Trust Claim, Class 7 Claim, Apollo/Parks Township Claim, Intercompany Claim in Debtor Chain, Non-Debtor Affiliate Intercompany Claim, Equity Interest, or Workers' Compensation Claim.

### 1.1.82  General Unsecured Share Payment

"General Unsecured Share Payment" shall mean the product of (i) the B&W/McDermott Asset Value and (ii) a fraction, the numerator of which is the Estimated Amount of Claims in Class 5, and the denominator of which is the sum of the Estimated Amount of Claims in Class 5, the Estimated Amount of Claims in Class 6, and the Estimated Amount of Claims in Class 7.

### 1.1.83  Hall Action

"Hall Action" shall mean certain litigation pending in the United States District Court for the Western District of Pennsylvania entitled Hall, et al. v. Babcock & Wilcox Co., et al., Civil Action No. 94-951 (W.D. Pa.), as consolidated with Clowes, et al. v. Babcock & Wilcox Co., et al., Civil Action No. 94-2088 (W.D. Pa.).

### 1.1.84  Indirect Asbestos Personal Injury Claim

"Indirect Asbestos Personal Injury Claim" shall mean: (i) those cross-claims, contribution claims, subrogation claims, reimbursement claims, indemnity claims, and any and all other Claims, Demands, or remedies against, or any debt, liability, or obligation of one or more of the Debtors or the Non-Debtor Subsidiaries, whether or not such Claim, Demand, remedy, debt, liability or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity or any other theory of law, equity, or admiralty for, arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injuries or emotional injuries to persons caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to, asbestos – including asbestos-containing products, boiler systems, equipment, components, parts, improvements to real property, or materials engineered, designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any way used by one or more of the Debtors or any of their respective past or present Subsidiaries, any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries, or any Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable – and arising or allegedly arising, directly or indirectly from acts or omissions of one or more of the Debtors, any of their respective past or present Subsidiaries or any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries **(including any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors, any of their respective past or present Subsidiaries, or any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries, or any conduct for which any of the Debtors, any of their respective past or present Subsidiaries, or any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries may be deemed to have strict liability under any applicable law)**, including all related claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages) and punitive damages; (ii) any claim, demand or remedy against, or any debt, liability, or obligation of, one or more of the MII Indemnified Parties that is also asserted or could also be asserted against one or more of the Debtors or the Non-Debtor Subsidiaries and, if so asserted, would be an "Indirect Asbestos Personal Injury Claim" pursuant to clause (i) of this definition or an Asbestos Personal Injury Claim, provided that, notwithstanding the foregoing provisions of this clause (ii), no claim or demand against any of the MII Indemnified Parties in respect of any premises liability of any of the MII Indemnified Parties that is not derived in any way from or based upon or resulting from any affiliation with any of the Debtors or the Non-Debtor Subsidiaries shall be deemed an "Indirect Asbestos Personal Injury Claim" pursuant

to this clause (ii); and (iii) any right, claim, or cause of action, including for contribution or indemnity, brought by any Entity in, pursuant to, or in connection with an Insurer Misconduct Action.

### 1.1.85  Indirect Asbestos Property Damage Claim

"Indirect Asbestos Property Damage Claim" shall mean: (i) those cross-claims, contribution claims, subrogation claims, reimbursement claims, indemnity claims and any and all other Claims, Demands or remedies against, or any debt, liability, or obligation of, one or more of the Debtors or the Non-Debtor Subsidiaries, whether or not such Claim, Demand, remedy, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity or any other theory of law, equity, or admiralty for, arising out of, resulting from, or attributable to, directly or indirectly, damages to property, including diminution in the value thereof, or environmental damage or economic loss, caused or allegedly caused, directly or indirectly, by the presence of, or exposure to, asbestos − including asbestos-containing products, boiler systems, equipment, components, parts, improvements to real property or materials engineered, designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed or in any way used by one or more of the Debtors or any of their respective past or present Subsidiaries, or any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries, or any other Entity for whose products or operations any of the Debtors allegedly has liability or is otherwise liable − and arising or allegedly arising, directly or indirectly from acts or omissions of one or more of the Debtors, any of their respective past or present Subsidiaries, or any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries **(including any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors, any of their respective past or present Subsidiaries, or any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries, or any conduct for which any of the Debtors, any of their respective past or present Subsidiaries, or any of the predecessors of any of the Debtors or any of their respective past or present Subsidiaries may be deemed to have strict liability under any applicable law)**, including all related claims, debts, obligations, or liabilities for compensatory (including general, special, and consequential damages) and punitive damages; and (ii) any claim, demand, or remedy against, or any debt, liability, or obligation of, one or more of the MII Indemnified Parties that is also asserted or could also be asserted against one or more of the Debtors or the Non-Debtor Subsidiaries and, if so asserted, would be an "Indirect Asbestos Property Damage Claim" pursuant to clause (i) of this definition or an Asbestos Property Damage Claim.

### 1.1.86  Initial Distribution Date

"Initial Distribution Date" shall mean a date on or after the Effective Date that is selected by the Reorganized Debtors, but, in any event, is within thirty (30) days after the Effective Date, or such later date as the Bankruptcy Court may establish, upon request by the Reorganized Debtors for cause shown.

### 1.1.87  Insurance Contributors

"Insurance Contributors" shall mean MII and each Subsidiary of MII that is a party to the Asbestos Insurance Rights Assignment Agreement.

### 1.1.88  Insurer Misconduct Action

"Insurer Misconduct Action" shall mean any rights, claims, or causes of action asserted or that may be asserted by any Entity (other than an Asbestos Insurance Entity) in Wise v. Travelers Indemnity Co., (Circuit Court of Berkeley County, West Virginia 2001) ("Wise I"), Wise v. OneBeacon Insurance Group, (Circuit Court of Kanawha County, West Virginia 2002) ("Wise II"), or Cashman v. Travelers Indemnity Co., Civ. No. 02-2056-H (Superior Court of Suffolk County, Massachusetts 2002) ("Cashman") (collectively, "Wise/Cashman"), or any other rights, claims, or causes of action that are based on substantially similar legal theories, whether grounded in statute or common law, as those asserted in Wise/Cashman.

### 1.1.89  Intercompany Claims in Debtor Chain

"Intercompany Claims in Debtor Chain" shall mean any and all Claims by any Debtor against any other Debtor or Non-Debtor Subsidiary thereof or by a Non-Debtor Subsidiary of a Debtor against any Debtor that arose prior to the Effective Date.

### 1.1.90  Internal Revenue Code or IRC

"Internal Revenue Code" or "IRC" shall mean the Internal Revenue Code of 1986, as amended, and any applicable regulations (including temporary and proposed regulations) promulgated thereunder by the United States Treasury Department.

### 1.1.91  IRS

"IRS" shall mean the United States Internal Revenue Service.

### 1.1.92  McDermott Consideration

"McDermott Consideration" shall mean (i) Cash in the amount of $350 million; (ii) the B&W Note; (iii) the related guaranties by BWICO and MII and the related pledge and security interest in all of the issued and outstanding shares of Capital Stock of B&W held by BWICO as of the Effective Date; (iv) the Contingent Payment Right; and (v) the Asbestos PI Insurance Rights.

### 1.1.93  MI

"MI" shall mean McDermott Incorporated, a Delaware corporation and a Non-Debtor Affiliate.

### 1.1.94  MII

"MII" shall mean McDermott International, Inc., a Panamanian corporation and a Non-Debtor Affiliate.

### 1.1.95  MII Indemnified Parties

"MII Indemnified Parties" shall mean (i) MII, (ii) all Entities that Schedule 1.1(b) to the Non-Debtor Affiliate Settlement Agreement identifies as Affiliates of MII, (iii) all natural persons who are past or present Affiliates of MII or any of its Subsidiaries, (iv) all future Affiliates of MII or any of its Subsidiaries, (v) Hudson Products Corporation, a Delaware corporation, and all of its present Subsidiaries; (vi) all the respective Representatives of the Entities described in clauses (i) through (v) of this definition, (vii) all the respective past, present and future Representatives of any of B&W and its Subsidiaries, and (viii) all the respective successors (by operation of law or otherwise) of the Entities described in clauses (i) through (vii) of this definition.

### 1.1.96  Non-Debtor Affiliate

"Non-Debtor Affiliate" shall mean each of the MII Indemnified Parties and each of the Entities identified on a supplement to Schedule 1.1(b) of the Non-Debtor Affiliate Settlement Agreement included in the Plan Supplement.

### 1.1.97  Non-Debtor Affiliate Intercompany Claim

"Non-Debtor Affiliate Intercompany Claim" shall mean any Claim against any Debtor or any Non-Debtor Subsidiary by one or more of the Non-Debtor Affiliates.

### 1.1.98  Non-Debtor Affiliate Release

"Non-Debtor Affiliate Release" shall mean the releases by each of the Reorganized Debtors, the Debtors' respective estates, and the Asbestos PI Trust of each of the Non-Debtor Affiliates and each of the other MII Indemnified Parties effected pursuant to, or contemplated by, the Non-Debtor Affiliate Settlement Agreement.

### 1.1.99   Non-Debtor Affiliate Settlement Agreement

"Non-Debtor Affiliate Settlement Agreement" shall mean the settlement agreement among the Debtors, the ACC, the FCR, MII, MI, BWICO, and the Asbestos PI Trust in substantially the form of the draft attached as Exhibit C hereto.

### 1.1.100   Non-Debtor Subsidiary

"Non-Debtor Subsidiary" shall mean each of the Entities identified on Exhibit D attached hereto.

### 1.1.101   Non-Priority Secured Claim

"Non-Priority Secured Claim" shall mean all Secured Claims that are not also Priority Claims.

### 1.1.102   Parks Township Facility

"Parks Township Facility" shall mean the parcel or parcels of land and improvements currently or formerly containing nuclear fuel processing facilities and including, but not limited to, the Shallow Land Disposal Area (sometimes known as the "SLDA") located in Parks Township, Pennsylvania.

### 1.1.103   Petition Date

"Petition Date" shall mean February 22, 2000, the date on which the Debtors commenced the Chapter 11 Cases.

### 1.1.104   Plan

"Plan" shall mean this plan of reorganization, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time by the Plan Proponents, and the exhibits and schedules to the foregoing, as the same may be in effect from time to time.

### 1.1.105   Plan Documents

"Plan Documents" shall mean this Plan, the exhibits to this Plan, the Plan Supplement, the disclosure statement and all exhibits attached to the disclosure statement.

### 1.1.106   Plan Proponents

"Plan Proponents" shall mean the Debtors, the Asbestos Claimants' Committee, the Future Claimants' Representative, and MI.

### 1.1.107   Plan Supplement

"Plan Supplement" shall mean a supplement of plan related documents, which includes: (1) the Asbestos Insurance Rights Assignment Agreement; (2) the Subject Asbestos Insurance Policy schedule; (3) the schedule of Subject Asbestos Insurance Settlement Agreements; and (4) Debtors' Retained Claims and Causes of Action.

### 1.1.108   Priority Claim

"Priority Claim" shall mean any Claim to the extent such claim is entitled to priority in right of payment under Section 507 of the Bankruptcy Code, other than an Administrative Expense Claim or Tax Claim.

### 1.1.109   Pro Rata Share or Pro Rata

"Pro Rata Share" or "Pro Rata" means the proportionate share that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in such Class.

### 1.1.110 Quarterly Distribution Date

"Quarterly Distribution Date" shall mean the first Business Day of each calendar quarter following the Initial Distribution Date; provided, however, that the first Quarterly Distribution Date following the Initial Distribution Date shall be no less than ninety (90) days following such Initial Distribution Date.

### 1.1.111 Representatives

"Representatives" shall mean, with respect to any Entity, the directors, officers, employees, accountants (including independent certified public accountants), advisors, attorneys, consultants, or other agents of that Entity, or any other representatives of that Entity or of any of those directors, officers, employees, accountants (including independent certified public accountants), advisors, attorneys, consultants, or other agents.

### 1.1.112 Reorganized Debtor or Reorganized Debtors

"Reorganized Debtor" or "Reorganized Debtors" shall mean the Debtors, or any successors in interest thereto, from and after the Effective Date.

### 1.1.113 Schedules

"Schedules" shall mean the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors in Possession with the Bankruptcy Court, as required by Section 521 of the Bankruptcy Code and the Bankruptcy Rules, as such schedules and statements may be amended by the Debtors in Possession from time to time in accordance with Bankruptcy Rule 1009.

### 1.1.114 Secured Claim

"Secured Claim" shall mean (a) a Claim that is secured by a lien on a property in which the Debtors have an interest, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code, or (b) a Claim Allowed under this Plan as a Secured Claim.

### 1.1.115 Settling Asbestos Insurance Entity

"Settling Asbestos Insurance Entity" shall mean any Asbestos Insurance Entity that has entered into an Asbestos PI Insurance Settlement Agreement (which may also include an Asbestos PD Insurance Settlement Agreement) that is sufficiently comprehensive in the determination of the Asbestos Claimants' Committee, the Future Claimants' Representative, and the Debtors to warrant treatment under Section 524(g) of the Bankruptcy Code in the case of Asbestos PI Trust Claims or to warrant treatment under Section 105 of the Bankruptcy Code in the case of Class 7 Claims, and that is included on a schedule of Settling Asbestos Insurance Entities filed by the Plan Proponents prior to the Confirmation Date.

### 1.1.116 Subject Asbestos Insurance Policies

"Subject Asbestos Insurance Policies" shall mean:

(a)     the liability policies which are listed on a schedule to be included in the Plan Supplement;

(b)     any general liability policy, whether primary liability, umbrella liability, excess liability, or otherwise, whether presently known or unknown, which was issued for any coverage period in the period from April 1, 1979 through April 1, 1986, as to which the persons insured include any of the Debtors and/or one or more of the respective Subsidiaries of any Debtor, and which provides insurance coverage for Class 7 Claims and/or Asbestos PI Trust Claims;

(c)     any insurance policy issued prior to MI's acquisition of B&W, whether presently known or unknown, in which the persons insured include one or more of the Debtors and/or one

19

or more of the respective Subsidiaries of any Debtor and which provides insurance coverage for Class 7 Claims and/or Asbestos PI Trust Claims;

(d)     any insurance policy in which the persons insured include one or more Debtors and/or one or more of the respective Subsidiaries of any Debtor, but not any other Insurance Contributor, and which (i) was issued after B&W's acquisition by MI and (ii) provides insurance coverage for Class 7 Claims and/or Asbestos PI Trust Claims; and

(e)     any project-specific insurance policy as to which the persons insured include one or more Debtors and/or one or more of the respective Subsidiaries of any of the Debtors and which was placed for the benefit of said Debtor(s) and/or Subsidiary or Subsidiaries in connection with the performance of work by said Debtor(s) or Subsidiary or Subsidiaries on a particular project for a third-party customer, and which provides insurance coverage for Class 7 Claims and/or Asbestos PI Trust Claims.

Notwithstanding the foregoing, "Subject Asbestos Insurance Policies" shall not mean or include any insurance policy (including any reinsurance policy) issued by any captive insurance company owned directly or indirectly by MII, including the policy issued by Creole Insurance Company, Ltd. (Policy No. 22,007) for the period April 1, 1979 to April 1, 1980.

### 1.1.117 Subject Asbestos Insurance Settlement Agreements

"Subject Asbestos Insurance Settlement Agreements" shall mean those asbestos liability coverage settlement agreements listed on a schedule to be included in the Plan Supplement and any settlement agreement relating to insurance coverage for Class 7 Claims and/or Asbestos PI Trust Claims under any Subject Asbestos Insurance Policy.

### 1.1.118 Subsidiary

"Subsidiary" of any specified Entity at any time means any Entity a majority of the Capital Stock of which the specified Entity owns or controls at that time, directly or indirectly through another Subsidiary of the specified Entity.

### 1.1.119 Tax Claim

"Tax Claim" shall mean a Claim against the Debtors that is of a kind specified in Section 502(i) or 507(a)(8) of the Bankruptcy Code.

### 1.1.120 Third Amended Plan

"Third Amended Plan" shall mean the Third Amended Joint Plan Of Reorganization As Of June 25, 2003 With Technical Modifications As Of September 30, 2004.

### 1.1.121 Trust Advisory Committee or TAC

"Trust Advisory Committee" or "TAC" shall mean the Trust Advisory Committee established pursuant to the terms of the Asbestos PI Trust Agreement.

### 1.1.122 Trustee

"Trustee" shall mean any individual confirmed by the Bankruptcy Court named to serve as a trustee of the Asbestos PI Trust pursuant to the terms of the Asbestos PI Trust Agreement, or as subsequently may be appointed in and pursuant to the terms of the Asbestos PI Trust Agreement.

### 1.1.123 Trust Expenses

"Trust Expenses" shall mean any of the liabilities, costs, or expenses of, or imposed upon, or assumed by the Asbestos PI Trust (except for payments to holders of Asbestos PI Trust Claims on account of such Asbestos PI Trust Claims), as incurred in accordance with the provisions of the Asbestos PI Trust Agreement.

#### 1.1.124 Unliquidated Claim

"Unliquidated Claim" shall mean (i) any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be fixed or (ii) any Claim for which no Allowed Amount has been determined.

#### 1.1.125 Unsecured Creditors' Committee

"Unsecured Creditors' Committee" shall mean the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to Section 1102 of the Bankruptcy Code.

#### 1.1.126 Unsecured Trade Claim

"Unsecured Trade Claim" shall mean any Claim listed on Exhibit E, which arose from the provision of goods and services to the Debtors in the ordinary course of the Debtors' business.

#### 1.1.127 Voting Procedures Order

"Voting Procedures Order" shall mean an order(s) of the Bankruptcy Court approving (i) procedures relating to the solicitation and tabulation of votes with respect to this Plan; and (ii) providing or establishing the amount of any Claims for voting purposes.

#### 1.1.128 Workers' Compensation Claims

"Workers' Compensation Claims" shall mean Claims for benefits under a state mandated workers' compensation system, which a past, present, or future employee of the Debtors and their predecessors is receiving, or may in the future have a right to receive.

### 1.2  Other Terms/Interpretation.

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter.  When used in this Plan, the term "Claim" shall be broadly construed to include all manner and type of claim, whenever and wherever such claim may arise, and shall include, but not be limited to, Asbestos PI Trust Claims, Class 7 Claims and Apollo/Parks Township Claims.  Likewise, when used in this Plan, the terms "Asbestos PI Trust Claim," "Class 7 Claim" and "Apollo/Parks Township Claim" shall be broadly construed and shall include, but not be limited to, claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the Bankruptcy Code and demands that may or may not constitute "demands" within the meaning of Section 524(g)(5) of the Bankruptcy Code.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan. The word "including" (and, with correlative meaning, the word "include") means including, without limiting the generality of any description preceding that word, and the words "shall" and "will" are used interchangeably and have the same meaning.  An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.  The descriptive headings contained in this Plan are included for convenience of reference only and shall not affect in any way the meaning or interpretation of this Plan.  The language used in this Plan will be deemed to be the language that the Plan Proponents have chosen to express their mutual intent, and no rule of strict construction will be applied against any of them.

### 1.3  The Plan Documents.

The Plan Documents, once filed and as modified from time to time, shall also be available for review:

(i) in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court at the following address:

United States Bankruptcy Court
Eastern District of Louisiana
500 Poydras Street, Suite B-601
New Orleans, LA 70130-3386

(ii) on Business Days from 9:00 a.m. through 5:00 p.m. (Prevailing Central Time) at the following address:

Heller, Draper, Hayden, Patrick & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Attention: Jan M. Hayden, Esquire

or

(iii)  by download from the following website:

www.babcock.com/ppg/pr/reorganization.html.

Holders of Claims and Equity Interests may also obtain a copy of the Plan Documents following their filing with the Clerk of the Court from counsel for the Debtors by a written request sent to the above address.

**1.4  Ancillary Documents.**

The Non-Debtor Affiliate Settlement Agreement and all other exhibits to this Plan, for which there are forms attached to this Plan, and all documents included in the Plan Supplement are an integral part of this Plan and are hereby incorporated by reference and made a part of this Plan.

# ARTICLE 2.
## PROVISIONS FOR PAYMENT OF
## ADMINISTRATIVE EXPENSES AND TAX CLAIMS

**2.1  Payment of Allowed Administrative Expenses.**

Subject to the provisions of Sections 330(a), 331, and 503 of the Bankruptcy Code, the Allowed Amount of each Allowed Administrative Expense Claim shall be paid in full, in cash by the Reorganized Debtors, on the Effective Date or as soon as practicable thereafter, or upon such other terms as may be agreed upon by the holder of such Allowed Administrative Expense Claim and the Reorganized Debtors or otherwise established pursuant to an order of the Bankruptcy Court; provided, however, that Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors in Possession on or after the Petition Date or assumed by the Debtors in Possession pursuant to this Plan or an order of the Bankruptcy Court shall be paid by the Reorganized Debtors in accordance with the terms and conditions of the particular transactions and any agreements relating thereto or any order of the Bankruptcy Court.

**2.2  Tax Claims.**

Each holder of an Allowed Tax Claim shall be paid the Allowed Amount of its Allowed Tax Claim, at the option of the Reorganized Debtors, either (a) in full, in cash, on the Effective Date or as soon as practicable thereafter, or (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Tax Claim and the Reorganized Debtors, or (c) in equal quarterly cash payments on a Quarterly Distribution Date in an aggregate amount equal to such Allowed Tax Claim, together with interest at a fixed annual rate to be determined by the Bankruptcy Court or otherwise agreed to by (i) the Reorganized Debtors and (ii) such holder, over a period through the sixth anniversary date of the date of assessment of such Allowed Tax Claim, or upon such other terms determined by the Bankruptcy Court, which will provide the holder of such Allowed Tax Claim deferred cash payments having a value, as of the Effective Date, equal to such Allowed Tax Claim.

# ARTICLE 3.
## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND EQUITY INTERESTS

**3.1  Summary.**

Claims and Equity Interests are classified for all purposes, including voting, confirmation, and distribution pursuant to this Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code, as follows:

| CLASSIFICATION | DESCRIPTION | VOTING STATUS |
|---|---|---|
| Class 1 | Priority Claims | Unimpaired – not entitled to vote. |
| Class 2 | Non-Priority Secured Claims | Unimpaired – not entitled to vote. |
| Class 3 | Workers' Compensation Claims | Unimpaired – not entitled to vote. |
| Class 4 | Unsecured Trade Claims | Unimpaired – not entitled to vote. |
| Class 5 | General Unsecured Claims | Impaired – entitled to vote. |
| Class 6 | Asbestos PI Trust Claims | Impaired – entitled to vote. |
| Class 7 | Asbestos PD Claims and Indirect Asbestos PD Claims | Impaired – entitled to vote. |
| Class 8 | Apollo/Parks Township Claims | Unimpaired– not entitled to vote. |
| Class 9 | Intercompany Claims in Debtor Chain | Unimpaired – not entitled to vote. |
| Class 10 | Affiliate Intercompany Claims | Unimpaired – not entitled to vote. |
| Class 11A | Equity Interests in The Babcock & Wilcox Company | Impaired – entitled to vote. |
| Class 11B | Equity Interests in Diamond Power International, Inc. | Unimpaired – not entitled to vote. |
| Class 11C | Equity Interests in Babcock & Wilcox Construction Co., Inc. | Unimpaired – not entitled to vote. |
| Class 11D | Equity Interests in Americon, Inc. | Unimpaired – not entitled to vote. |

**3.2  Classification and Treatment.**

3.2.1  ***Class 1.   Priority Claims***

3.2.1.1   Classification

Class 1 consists of all Priority Claims against the Debtors.

3.2.1.2   Treatment

Each holder of an Allowed Priority Claim shall be paid the Allowed Amount of its Allowed Priority Claim, at the option of the Reorganized Debtors either (a) in full, in cash, on the later of (i) the Effective Date or as soon as practicable thereafter or (ii) the date such Allowed Priority Claim becomes an Allowed Priority Claim or (b) upon such other terms as may be mutually agreed upon between each holder of an Allowed Priority Claim and the Reorganized Debtors.

3.2.1.3   Status

Class 1 is unimpaired.  The holders of the Allowed Priority Claims in Class 1 are deemed to have accepted this Plan and, accordingly, are not entitled to vote to accept or reject this Plan.

### 3.2.2   *Class 2.   Non-Priority Secured Claims*

#### 3.2.2.1   Classification

Class 2 consists of all Non-Priority Secured Claims against the Debtors.

#### 3.2.2.2   Treatment

Each holder of an Allowed Non-Priority Secured Claim shall be paid the Allowed Amount of its Allowed Non-Priority Secured Claim at the option of the Reorganized Debtors, either (a) in full, in cash, on the Effective Date or as soon as practicable thereafter, (b) upon such other terms as may be mutually agreed upon between the holder of such Allowed Non-Priority Secured Claim and the Reorganized Debtors, or (c) notwithstanding any contractual provision or applicable law that entitles the holder of a Non-Priority Secured Claim to demand or receive payment thereof prior to the stated maturity from and after the occurrence of a default, by reinstatement in accordance with Sections 1124(2)(A)-(D) of the Bankruptcy Code.

#### 3.2.2.3   Status

Class 2 is unimpaired.  The holders of the Allowed Non-Priority Secured Claims in Class 2 are deemed to have accepted this Plan and, accordingly, are not entitled to vote to accept or reject this Plan.

### 3.2.3   **Class 3.   Workers' Compensation Claims**

#### 3.2.3.1   Classification

Class 3 consists of all Workers' Compensation Claims against the Debtors.

#### 3.2.3.2   Treatment

Each holder of an Allowed Workers' Compensation Claim in Class 3 shall be paid in the ordinary course pursuant to such rights that existed under any state workers' compensation system or laws applicable to such Claims.

#### 3.2.3.3   Status

Class 3 is unimpaired.  The holders of Allowed Workers' Compensation Claims in Class 3 are deemed to have accepted this Plan and, accordingly, are not entitled to vote on this Plan.

### 3.2.4   **Class 4.   Unsecured Trade Claims**

#### 3.2.4.1   Classification

Class 4 consists of all Unsecured Trade Claims against the Debtors.

#### 3.2.4.2   Treatment

Each holder of an Allowed Unsecured Trade Claim in Class 4 shall be paid at the option of the Reorganized Debtors either (a) in full, in cash, on the Effective Date or as soon as practicable thereafter, (b) upon such other terms as may be mutually agreed upon between the holder of such Allowed Unsecured Trade Claim and the Reorganized Debtors, or (c) notwithstanding any contractual provision or applicable law that entitles the holder of an Allowed Unsecured Trade Claim to demand or receive payment thereof prior to the stated maturity from and after the occurrence of a default, by reinstatement in accordance with Sections 1124(2)(A)-(D) of the Bankruptcy Code.

#### 3.2.4.3   Status

Class 4 is unimpaired. The holders of Allowed Unsecured Trade Claims in Class 4 are not entitled to vote to accept or reject this Plan.

### 3.2.5 Class 5.   General Unsecured Claims

#### 3.2.5.1   Classification

Class 5 consists of all General Unsecured Claims against the Debtors.

#### 3.2.5.2   Treatment

(a)      In the event Class 5 votes to accept this Plan, each holder of an Allowed General Unsecured Claim in Class 5 shall be paid a Pro Rata Share of the General Unsecured Share Payment, a Pro Rata Share of $250,000, and applicable liability insurance, if and only to the extent recoverable by the Reorganized Debtors for the payment of such claim, for such Allowed General Unsecured Claim.

(b)      In the event Class 5 does not vote to accept this Plan or votes to reject the Plan, each holder of an Allowed General Unsecured Claim in Class 5 shall be paid a Pro Rata Share of the General Unsecured Share Payment, and applicable liability insurance, if and only to the extent recoverable by the Reorganized Debtors for the payment of such claim, for such Allowed General Unsecured Claim.

In no event shall a holder of a Class 5 Claim receive more than 100% of such holder's Allowed Claim.

#### 3.2.5.3   Status

Class 5 is impaired.  The holders of the Claims in Class 5 are entitled to vote to accept or reject this Plan in the manner and to the extent provided in the Voting Procedures Order.

### 3.2.6 Class 6.   Asbestos PI Trust Claims

#### 3.2.6.1   Classification

Class 6 consists of all Asbestos PI Trust Claims against the Debtors.

#### 3.2.6.2   Treatment

All Allowed Asbestos PI Trust Claims shall be processed and paid pursuant to the terms, provisions, and procedures of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures.

#### 3.2.6.3   Asbestos PI Channeling Injunction

The sole recourse of the holder of an Asbestos PI Trust Claim on account of such claim shall be to the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Channeling Injunction and the Asbestos PI Trust Distribution Procedures and such holder shall have no right whatsoever at any time to assert its Asbestos PI Trust Claim against the Debtors, Reorganized Debtors, any other Asbestos PI Protected Party, any Settling Asbestos Insurance Entity, or any property or interest in property of the Debtors, the Reorganized Debtors, or any other Asbestos Protected Party.  Without limiting the foregoing, from and after the Effective Date, the Asbestos PI Channeling Injunction shall apply to all holders of Asbestos PI Trust Claims, and all such holders shall be permanently and forever stayed, restrained, and enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos PI Trust Claims other than from the Asbestos PI Trust in accordance with the Asbestos PI Channeling Injunction and pursuant to the Asbestos PI Trust Distribution Procedures, including:

(a)      commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party, any Settling Asbestos Insurance Entity, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity;

(b)     enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party, any Settling Asbestos Insurance Entity, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity;

(c)     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party, any Settling Asbestos Insurance Entity, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity;

(d)     setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party, any Settling Asbestos Insurance Entity, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity; and

(e)     proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos PI Trust, except in conformity and compliance therewith.

Except as provided in this Plan or in the Non-Debtor Affiliate Settlement Agreement, nothing contained in this Plan shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors, the Reorganized Debtors, or the Asbestos PI Trust may have against any Entity in connection with or arising out of or related to an Asbestos PI Trust Claim.

The Asbestos PI Trust shall, subject to the other provisions of the Plan Documents, receive the McDermott Consideration.  Holders of Asbestos PI Trust Claims shall receive payment in accordance with the Asbestos PI Trust Distribution Procedures.

### 3.2.6.4   Status

Class 6 is impaired.  Each holder of a Claim in Class 6 is entitled to vote to accept or reject this Plan in the manner and to the extent provided in the Voting Procedures Order.

### 3.2.7   Class 7.   Asbestos PD Claims and Indirect Asbestos PD Claims (Class 7 Claims)

### 3.2.7.1   Classification

Class 7 consists of all Asbestos PD Claims and Indirect Asbestos PD Claims against the Debtors.

### 3.2.7.2   Treatment

The holders of Class 7 Claims shall be paid by the Reorganized Debtors.

(a)     If Class 7 votes to accept this Plan, the holders of Class 7 Claims shall receive a Pro Rata Share of the Asbestos PD Share Payment, a Pro Rata Share of $250,000, and  proceeds of Asbestos PD Insurance Settlement Agreements up to $700,000.

(b)     If Class 7 does not vote to accept this Plan, or votes to reject this Plan, the holders of Class 7 Claims will receive only a Pro Rata Share of the Asbestos PD Share Payment and proceeds of Asbestos PD Insurance Settlement Agreements up to $700,000.

(c)     Notwithstanding the foregoing, the amount distributed to Allowed Class 7 Claims in the aggregate shall in no event exceed the aggregate value of Class 7 Claims, as estimated by the Bankruptcy Court, applicable solely to settlement payments or judgments (but not to defense costs).

In no event shall any holder of a Class 7 Claim receive more than 100% of such holder's Allowed Claim.

3.2.7.3   Asbestos PD Channeling Injunction

The sole recourse of the holder of a Class 7 Claim on account of such Class 7 Claim shall be to the Reorganized Debtors pursuant to the provisions of the Asbestos PD Channeling Injunction and this Plan, and such holder shall have no right whatsoever at any time to assert its Class 7 Claim against any other Asbestos Protected Party, any Settling Asbestos Insurance Entity, the Asbestos PI Trust, or any property or interest in property of the Debtors or any other Asbestos Protected Party.  Without limiting the foregoing, from and after the Effective Date, the Asbestos PD Channeling Injunction shall apply to all holders of Class 7 Claims, and all such holders shall be permanently and forever stayed, restrained, and enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Class 7 Claim other than from the Reorganized Debtors in accordance with the Asbestos PD Channeling Injunction, including:

(a)   commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Asbestos Protected Party (other than the Reorganized Debtors), any Settling Asbestos Insurance Entity, the Asbestos PI Trust, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity;

(b)   enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Protected Party (other than the Reorganized Debtors), any Settling Asbestos Insurance Entity, the Asbestos PI Trust, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity;

(c)   creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Asbestos Protected Party (other than the Reorganized Debtors), any Settling Asbestos Insurance Entity, the Asbestos PI Trust, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity;

(d)   setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Asbestos Protected Party (other than the Reorganized Debtors), any Settling Asbestos Insurance Entity, the Asbestos PI Trust, or any property or interests in property of any Asbestos Protected Party or any Settling Asbestos Insurance Entity; and

(e)   proceeding in any other manner with regard to any matter involving one or more Class 7 Claims, except in conformity and compliance with this Plan.

Except as provided in this Plan or in the Non-Debtor Affiliate Settlement Agreement, nothing contained in this Plan shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors or the Reorganized Debtors may have against any Entity in connection with or arising out of or related to a Class 7 Claim.

3.2.7.4   Status

Class 7 is impaired.  Each holder of a Claim in Class 7 will be entitled to vote to accept or reject this Plan in the manner and to the extent provided in the Voting Procedures Order.

3.2.8   **Class 8.   Apollo/Parks Township Claims**

3.2.8.1   Classification

Class 8 consists of all Apollo/Parks Township Claims against the Debtors.

27

### 3.2.8.2   Treatment

All Class 8 Claims shall not be discharged by confirmation of the Plan.  The legal, equitable, and contractual rights of the holders of Class 8 Claims shall be unaltered by the confirmation of this Plan, and from and after the Effective Date, holders of Class 8 Claims shall be permitted to assert their Claims against the Reorganized Debtors on the same terms and subject to the same defenses of the Debtors as existed without regard to the filing of the Debtors' Chapter 11 Cases.  No Class 8 Claims asserted by the plaintiffs in the Hall Action, and no Class 8 Claims asserted by ARCO, shall be subject to the claims objection procedures set forth in section 5.1 of this Plan.

### 3.2.8.3   Status

Class 8 is unimpaired and is therefore not eligible to vote on this Plan.

### 3.2.9   **Class 9.   Intercompany Claims in Debtor Chain**

### 3.2.9.1   Classification

Class 9 consists of all Allowed Intercompany Claims in Debtor Chain.

### 3.2.9.2   Treatment

Allowed Intercompany Claims in Debtor Chain shall not be discharged by confirmation of this Plan and shall be settled and/or treated in accordance with the ordinary procedures in place prior to the Petition Date.

### 3.2.9.3   Status

Class 9 is unimpaired.  Each holder of a Claim in Class 9 shall not be entitled to vote to accept or reject this Plan.

### 3.2.10   **Class 10. Non-Debtor Affiliate Intercompany Claims**

### 3.2.10.1 Classification

Class 10 consists of all Non-Debtor Affiliate Intercompany Claims.

### 3.2.10.2 Treatment

All Non-Debtor Affiliate Intercompany Claims will be satisfied in full pursuant to the Non-Debtor Affiliate Settlement Agreement.

### 3.2.10.3 Status

Class 10 is unimpaired.  The holders of the Claims in Class 10 are deemed to have accepted this Plan and, accordingly, are not entitled to vote to accept or reject this Plan.

### 3.2.11   **Class 11. Equity Interests**

### 3.2.11.1 Classification

Class 11A consists of all Equity Interests in The Babcock & Wilcox Company.

Class 11B consists of all Equity Interests in Diamond Power International, Inc.

Class 11C consists of all Equity Interests in Babcock & Wilcox Construction Co., Inc.

Class 11D consists of all Equity Interests in Americon, Inc.

### 3.2.11.2 Treatment

On the Effective Date, holders of Class 11A Equity Interests in B&W shall retain such interests, subject to the pledge and security interest in all of the issued and outstanding shares of Capital Stock of B&W held by BWICO as of the Effective Date, to secure the guaranties provided by BWICO and MII with respect to B&W's payment obligations under the B&W Note.  B&W will retain its Class 11B Equity Interests in Diamond Power and Class 11D Equity Interests in Americon.  Americon will retain its Class 11C Equity Interests in B&W Construction.

### 3.2.11.3 Status

Class 11A is impaired. To the extent and in the manner provided in the Voting Procedures Order, each holder of an Equity Interest in Class 11A shall be entitled to vote to accept or reject this Plan.

Classes 11B through 11D are unimpaired.  The holders of the Equity Interests in Classes 11B through 11D are deemed to have accepted this Plan and, accordingly, are not entitled to vote to accept or reject this Plan.

# ARTICLE 4.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### 4.1  Modification of the Plan/Amendment of Plan Documents.

#### 4.1.1   Modification of the Plan.

The Plan Proponents, acting together, may alter, amend, or modify this Plan under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date so long as this Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code.  After the Confirmation Date and prior to the Effective Date, the Plan Proponents, acting together, may alter, amend, or modify this Plan in accordance with Section 1127(b) of the Bankruptcy Code.

#### 4.1.2   Amendment of Plan Documents.

From and after the Effective Date, the authority to amend, modify, or supplement the Plan Documents will be as provided in such documents.

### 4.2  Revocation or Withdrawal.

#### 4.2.1   Right to Revoke

This Plan may be revoked or withdrawn by the Plan Proponents, acting together, prior to the Confirmation Date.

#### 4.2.2   Effect of Withdrawal or Revocation

Subject to the provisions of Section 11.20 herein, if this Plan is revoked or withdrawn prior to the Effective Date, this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or defenses, or an admission or statement against interest by the Plan Proponents, or any other Entity or to prejudice in any manner the rights of the Plan Proponents or any Entity in any further proceedings involving the Debtors.

### 4.3  Disallowed Claims and Disallowed Interests.

On and after the Effective Date, the Debtors shall be fully and finally discharged of any liability or obligation on a disallowed Claim or a disallowed Interest, and any order creating a disallowed Claim or a disallowed Interest that is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such order pursuant to Section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.  The Confirmation Order, except as otherwise provided herein, or unless the Court orders otherwise, shall constitute an order: (a) disallowing all Claims (other than Asbestos PI Trust Claims and Apollo/Parks Township Claims) and Equity Interests to the extent such

Claims and Equity Interests are not allowable under any provision of Section 502 of the Bankruptcy Code, including time-barred Claims and Equity Interests, and Claims for unmatured interest, and (b) disallowing or subordinating, as the case may be, any Claims, or portions of Claims, for penalties or non- compensatory damages.

# ARTICLE 5.
## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

**5.1  Objections to Claims; Prosecution of Disputed Claims.**

The Reorganized Debtors shall object to the allowance of Claims filed with the Bankruptcy Court (other than Asbestos PI Trust Claims that may be objected to by the Asbestos PI Trust) or any other Claims to be resolved by the Reorganized Debtors pursuant to any provisions of this Plan with respect to which the Reorganized Debtors dispute liability, in whole or in part.  The Debtors' pending objections to any Claims not transferred to the Asbestos PI Trust shall be transferred to the Reorganized Debtors for final resolution.  All objections that are filed and prosecuted by the Reorganized Debtors as provided herein shall be litigated to Final Order by the Reorganized Debtors or compromised and settled in accordance with the business judgment of the Reorganized Debtors without the necessity of any Court approval of such compromise or settlement.  Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Reorganized Debtors to Claims shall be served and filed no later than 180 days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court.  Such further order may be obtained by the Reorganized Debtors without a hearing or notice.  The Plan Proponents reserve the right, acting jointly, to amend this Plan to designate Disputed Claims on or before the Confirmation Date.

**5.2  Distribution on Account of Disputed Claims.**

Notwithstanding Section 5.1 hereof, a Distribution shall be made to the holder of a Disputed Claim only when, and to the extent that, such Disputed Claim becomes Allowed and pursuant to the appropriate provisions of this Plan covering the class of which such Disputed Claim is a part.  No Distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof in the manner prescribed by Section 5.1 hereof.  The Reorganized Debtors shall set aside a reserve of a portion of the General Unsecured Share Payment in order to account for General Unsecured Claims that are Disputed.

**5.3  General Unsecured Claims – Distributions by the Reorganized Debtors.**

On the Effective Date, the Reorganized Debtors shall reserve the General Unsecured Share Payment, and additionally, if Class 5 votes to accept this Plan, the Reorganized Debtors shall reserve $250,000 for Allowed Claims in Class 5.  All Distributions required hereunder to holders of Class 5 Claims shall be made by the Reorganized Debtors.

**5.4  Asbestos PI Trust Claims.**

All Asbestos PI Trust Claims shall be satisfied in accordance with the Asbestos PI Trust Distribution Procedures.

**5.5  Class 7 Claims.**

All Allowed Class 7 Claims shall be satisfied by the Reorganized Debtors.

# ARTICLE 6.
## ACCEPTANCE OR REJECTION OF THE PLAN

**6.1  Impaired Classes to Vote.**

Each holder of a Claim in an impaired class of Claims is entitled to vote to accept or reject this Plan to the extent and in the manner provided herein or in the Voting Procedures Order.

**6.2  Acceptance by Impaired Classes of Claims.**

Acceptance of this Plan by any impaired class of Claims shall be determined in accordance with the Voting Procedures Order and the Bankruptcy Code.

**6.3  Presumed Acceptance of Plan.**

Classes 1, 2, 3, 4, 8, 9, 10, 11B, 11C, and 11D of Claims and Interests are unimpaired.  Under Section 1126(f) of the Bankruptcy Code, the holders of Claims and Interests in such Classes are conclusively presumed to have voted to accept this Plan.

**6.4  Acceptance Pursuant to Section 524(g) of the Bankruptcy Code.**

This Plan shall have been voted upon favorably as required by Section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code to the extent that at least 75% of those voting in Class 6 vote to accept this Plan.

**6.5  Nonconsensual Confirmation.**

6.5.1  *Cramdown*

With respect to impaired Equity Interests and any impaired class of Claims, including classes of Claims created pursuant to amendments to this Plan, that fail to accept this Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Plan Proponents intend to request that the Court confirm this Plan in accordance with Section 1129(b) of the Bankruptcy Code with respect to such non-accepting classes, in which case this Plan shall constitute a motion for such relief.

6.5.2  *General Reservation of Rights*

Should this Plan fail to be accepted by the requisite number and amount of the holders of Claims and Equity Interests required to satisfy Sections 524(g) and 1129 of the Bankruptcy Code, then, notwithstanding any other provision of this Plan to the contrary, the Plan Proponents, acting together, reserve the right to amend this Plan.

# ARTICLE 7.
## IMPLEMENTATION OF THE PLAN

**7.1  Corporate Governance of B&W and the Other Debtors.**

7.1.1  *Amendment of Certificate of Incorporation of B&W*

The Certificate of Incorporation of B&W shall be amended in its entirety as of the Effective Date substantially in the form to be included in the Plan Supplement to, among other things, (a) prohibit the issuance of nonvoting equity securities as required by Section 1123(a)(6) of the Bankruptcy Code, and subject to further amendment as permitted by applicable law, and (b) effectuate any other provisions of this Plan.

7.1.2  *Amendment of By-Laws of B&W*

The By-Laws of B&W may be amended in their entirety as of or after the Effective Date pursuant to their terms to, among other things, effectuate the provisions of this Plan.

**7.2  The Asbestos PI Trust.**

7.2.1  **Creation of the Asbestos PI Trust**

Upon the entry of the Confirmation Order, effective as of the Effective Date, the Asbestos PI Trust shall be created.  The Asbestos PI Trust shall be a "qualified settlement fund" within the meaning of regulations issued pursuant to Section 468B of the IRC.  The purpose of the Asbestos PI Trust shall be to, among other things, (a) process, liquidate, and pay all Asbestos PI Trust Claims in accordance with this Plan, the Asbestos PI Trust Agreement, the Asbestos PI Trust Distribution Procedures, and the Confirmation Order; (b) preserve, hold, manage,

and maximize the assets of the Asbestos PI Trust for use in paying and satisfying Asbestos PI Trust Claims; (c) prosecute, settle, and manage the disposition of the Asbestos PI Insurance Rights; and (d) prosecute, settle, and manage actions arising out of or based on Asbestos PI Insurance Rights.

### 7.2.2   Appointment of Trustees

On the Confirmation Date, effective as of the Effective Date, the Bankruptcy Court shall appoint the three individuals named in the Asbestos PI Trust Agreement to serve as Trustees of the Asbestos PI Trust.

### 7.2.3   Transfer of McDermott Consideration

On the Effective Date, the McDermott Consideration (other than any payment that may become payable pursuant to the Contingent Payment Right) shall be transferred to the Asbestos PI Trust. Subject to the satisfaction of the condition precedent set forth in Section 2.1(b) of the Non-Debtor Affiliate Settlement Agreement and the Asbestos Resolution Legislation Set-off set forth in Section 7.2 of the Non-Debtor Affiliate Settlement Agreement, any amount payable pursuant to the Contingent Payment Right shall be paid to the Asbestos PI Trust at such time as shall be required pursuant to Section 2.1(b) of the Non-Debtor Affiliate Settlement Agreement.

### 7.2.4   Transfer of Asbestos PI Insurance Rights to the Asbestos PI Trust

Upon the Effective Date, each of the assigning parties shall execute and deliver the Asbestos Insurance Rights Assignment Agreement attached in a form to be included in the Plan Supplement, and such Asbestos Insurance Rights Assignment Agreement shall thereupon be the valid, binding, and enforceable obligation of each party thereto in accordance with the terms thereof. To the extent the Asbestos Insurance Rights Assignment Agreement is determined to be invalid by a court of competent jurisdiction, upon request by the Asbestos PI Trust and at the cost of the Asbestos PI Trust, an Insurance Contributor or the Reorganized Debtors, as applicable, shall (i) take all reasonable actions to pursue any of the Asbestos PI Insurance Rights for the benefit and to the extent reasonably requested by the Asbestos PI Trust and (ii) immediately transfer any amounts recovered under or on account of any of the Asbestos PI Insurance Rights to the Asbestos PI Trust; provided, however, that while any such amounts are held by or under the control of an Insurance Contributor, such amounts shall be held for the benefit of the Asbestos PI Trust.

### 7.2.5   Transfer to and Assumption of Claims by the Asbestos PI Trust

On the Effective Date, all liabilities, obligations, and responsibilities relating to all Asbestos PI Trust Claims will be transferred to and assumed by the Asbestos PI Trust.

### 7.2.6   Books and Records

On the Effective Date or as soon thereafter as is practicable, the Reorganized Debtors shall enter into a cooperation agreement with the Asbestos PI Trust pursuant to which the Reorganized Debtors will provide to the Asbestos PI Trust the books and records of the Debtors and the Reorganized Debtors that pertain directly to Asbestos PI Trust Claims and to the Asbestos PI Insurance Rights. The Plan Proponents will file the draft of the cooperation agreement prior to the Effective Date and will seek an order from the Court that the providing of books and records under such cooperation agreement will not result in the destruction or waiver of any applicable privileges pertaining to such books and records.

### 7.2.7   Discharge of Liabilities to Holders of Asbestos PI Trust Claims

Except as provided in the Plan Documents and Confirmation Order, the transfer to, vesting in, and assumption by the Asbestos PI Trust of the McDermott Consideration to be delivered on the Effective Date (1) shall discharge the Debtors and the Reorganized Debtors for and in respect of all Asbestos PI Trust Claims and (2) discharge, release, and extinguish all obligations and liabilities of the Asbestos Protected Parties for and in respect of all Asbestos PI Trust Claims.

### 7.2.8   Institution and Maintenance of Legal and Other Proceedings

As of the Effective Date, the Asbestos PI Trust will be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos PI Trust.  The Asbestos PI Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all actions arising from or related to Asbestos PI Insurance Rights.  The Reorganized Debtors shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all actions arising from or related to Asbestos PI Insurance Rights if the Asbestos PI Insurance Rights Assignment is deemed invalid by a court of competent jurisdiction, and the Reorganized Debtors become obligated to pursue the Asbestos PI Insurance Rights as permitted or required under Section 7.2.4 of this Plan and the Asbestos Insurance Rights Assignment Agreement.  Prior to the Effective Date, with the consent of the ACC and the FCR, the Debtors shall have authority to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all actions arising from or related to Asbestos PI Insurance Rights.

### 7.2.9   Indemnification by the Asbestos PI Trust

The Asbestos PI Trust shall defend, indemnify, and hold harmless each of the Asbestos Protected Parties as provided in, and to the extent set forth in the Non-Debtor Affiliate Settlement Agreement, and the indemnification provisions set forth in Section 3.2 of the Non-Debtor Affiliate Settlement Agreement will be binding on the Asbestos PI Trust with the same force and effect as if the Asbestos PI Trust was a party to the Non-Debtor Affiliate Settlement Agreement.  The Asbestos PI Trust also shall defend, indemnify, and hold harmless each of (i) the Reorganized Debtors and their Subsidiaries, (ii) the respective past, present and future parent Entities and Subsidiaries of each of the Reorganized Debtors and their Subsidiaries, and (iii) the respective past, present, and future Representatives of the Entities described in the immediately preceding clauses (i) and (ii) to the same extent as the Asbestos PI Trust is required to defend, indemnify and hold harmless the MII Indemnified Parties pursuant to the provisions referred to in the immediately preceding sentence.

## 7.3   Insurer Misconduct Actions.

Notwithstanding anything in this Plan, nothing in this Plan or any related documents (or in any release documents executed by holders of Asbestos PI Trust Claims) shall extinguish, settle, waive, impair, enjoin, channel, or relinquish any Insurer Misconduct Action against any Asbestos Insurance Entity, except as otherwise provided in the Confirmation Order.

## 7.4   Asbestos Insurance Entity Injunction.

### 7.4.1   Purpose and Provisions

In order to protect the Asbestos PI Trust and to preserve its assets, pursuant to the equitable jurisdiction and power of the Court under Section 105(a) of the Bankruptcy Code, the Court shall issue the Asbestos Insurance Entity Injunction as described in Section 7.4.2 of this Plan; provided, however, that, except as otherwise provided in the Confirmation Order, (i) the Asbestos Insurance Entity Injunction shall not impair in any way the Insurer Misconduct Actions; (ii) the Asbestos PI Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the Asbestos Insurance Entity Injunction with respect to any Asbestos Insurance Entity upon express written notice to such Asbestos Insurance Entity; and (iii) the Asbestos Insurance Entity Injunction is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos Insurance Entity is a third-party beneficiary of the Asbestos Insurance Entity Injunction.

### 7.4.2   Terms

Subject to the provisions of Sections 7.3 and 7.4.1 of this Plan, all Entities (not including the Asbestos PI Trust, the Asbestos Insurance Entities, the Reorganized Debtors and the Insurance Contributors) that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim, Demand or cause of action (including any Asbestos PI Trust Claim or any Claim or Demand for or respecting any Trust Expenses) against any Asbestos Insurance Entity based upon, relating to, arising out of, or in any way connected with any Claim, Demand, Asbestos PI Insurance Rights, Subject Asbestos Insurance Policies, or Subject Asbestos Insurance Settlement Agreements whenever and wherever arisen or asserted (including all Claims in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty) shall be stayed, restrained, and

enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim, Demand, or cause of action, including:

(a) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, Demand, or cause of action against any Asbestos Insurance Entity, or against the property of any Asbestos Insurance Entity, with respect to any such Claim, Demand, or cause of action;

(b) enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Insurance Entity, or against the property of any Asbestos Insurance Entity, with respect to any such Claim, Demand, or cause of action;

(c) creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance against any Asbestos Insurance Entity, or the property of any Asbestos Insurance Entity, with respect to any such Claim, Demand, or cause of action; and

(d) except as otherwise specifically provided in this Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Asbestos Insurance Entity, or against the property of any Asbestos Insurance Entity, with respect to any such Claim, Demand or cause of action;

provided, however, that except, as otherwise provided in the Confirmation Order, (i) the Asbestos Insurance Entity Injunction shall not impair in any way the Insurance Misconduct Actions; (ii) the Asbestos PI Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the Asbestos Insurance Entity Injunction with respect to any Asbestos Insurance Entity upon express written notice to such Asbestos Insurance Entity; and (iii) the Asbestos Insurance Entity Injunction is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos Insurance Entity is a third-party beneficiary of the Asbestos Insurance Entity Injunction.

### 7.4.3   Reservations

Notwithstanding anything to the contrary above, this Asbestos Insurance Entity Injunction shall not enjoin:

(a)   the rights of Entities to the treatment accorded them under Articles 2 and 3 of this Plan, as applicable, including the rights of Entities with Asbestos PI Trust Claims or Class 7 Claims to assert such Asbestos PI Trust Claims or Class 7 Claims against the Asbestos PI Trust or the Reorganized Debtors, as applicable, in accordance with the Asbestos PI Trust Distribution Procedures or the Asbestos PD Channeling Injunction and the terms of this Plan;

(b)   the rights of Entities to assert any Claim, debt, obligation, or liability for payment of Trust Expenses against the Asbestos PI Trust;

(c)   the rights of the Asbestos PI Trust and the Reorganized Debtors and the Insurance Contributors to prosecute any action based on or arising from Asbestos PI Insurance Rights;

(d)   the rights of the Asbestos PI Trust and the Reorganized Debtors to assert any claim, debt, obligation, or liability for payment against an Asbestos Insurance Entity based on or arising from Asbestos PI Insurance Rights; and

(e)   the rights of Entities to assert any claim, debt, right, obligation, or liability that (i) arises or relates to any insurance policy that is not a Subject Asbestos Insurance Policy, (ii) has not been released or otherwise extinguished by a Subject Asbestos Insurance Settlement Agreement, and (iii) is not subject to the Asbestos PI Channeling Injunction and/or the Asbestos PD Channeling Injunction.

**7.5 The Class 7 Claims.**

### 7.5.1 Additional Consideration for Class 7 Claims

Upon the Effective Date, the Reorganized Debtors shall also make available the Asbestos PD Share Payment for Class 7 Claims and $250,000 for Class 7 Claims.

### 7.5.2 Claims Responsibility of the Reorganized Debtors

On the Effective Date, all liabilities, obligations, and responsibilities relating to Class 7 Claims will be the exclusive obligations of the Reorganized Debtors, but only to the extent provided in this Plan.

### 7.5.3 Discharge of Liabilities By Holders of Class 7 Claims

Except as provided in the Plan Documents and Confirmation Order, the consideration provided shall (1) discharge the Debtors and (2) discharge, release, and extinguish all obligations and liabilities of the Asbestos Protected Parties for and in respect of all Class 7 Claims.

### 7.5.4 Institution and Maintenance of Legal and Other Proceedings

As of the Effective Date, the Reorganized Debtors shall have the sole and exclusive power to initiate, prosecute, defend, and settle or otherwise conclude all legal actions and other proceedings related to any asset, liability, or responsibility involving Class 7 Claims.

### 7.5.5 Indemnification

The Reorganized Debtors shall defend, indemnify, and hold harmless the MII Indemnified Parties as provided in, and to the extent set forth in, the Non-Debtor Affiliate Settlement Agreement, and the indemnification provisions set forth in Section 3.2 of the Non-Debtor Affiliate Settlement Agreement will be binding on the Reorganized Debtors. The Reorganized Debtors also shall defend, indemnify, and hold harmless each of (i) the Subsidiaries of the Reorganized Debtors, (ii) the respective past, present and future parent Entities and Subsidiaries of each of the Reorganized Debtors and their Subsidiaries, and (iii) the respective past, present, and future Representatives of the Entities described in the immediately preceding clauses (i) and (ii) to the same extent as the Reorganized Debtors are required to defend, indemnify and hold harmless the MII Indemnified Parties pursuant to the provisions referred to in the immediately preceding sentence.

**7.6 Rights Against Non-Debtors Under Environmental Laws.**

Notwithstanding anything to the contrary contained herein, the injunctions set forth in this Article 7 shall not impair the rights or causes of action of the United States of America against non-debtor parties under applicable environmental laws, and such rights and causes of action shall not be discharged or otherwise adversely affected by this Plan.

**7.7 Non-Debtor Affiliate Release.**

Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, in consideration of, among other things, (i) the execution and delivery by the MII Indemnified Parties of the Non-Debtor Affiliate Settlement Agreement and other documents to be executed and delivered thereunder, (ii) MII causing all of its Subsidiaries that are listed in the Asbestos Insurance Rights Assignment Agreement as parties thereto, to execute and deliver to the Asbestos PI Trust the Asbestos Insurance Rights Assignment Agreement, (iii) the MII Indemnified Parties and the B&W Entities delivering, on the Effective Date, the McDermott Consideration to be delivered on the Effective Date to the Asbestos PI Trust, and (iv) other good and valuable consideration, without which this Plan could not be confirmed and consummated, on the Effective Date, the Reorganized Debtors and the Asbestos PI Trust shall be conclusively and irrevocably deemed to have released any and all claims contemplated by Section 3.1 and 5.1 of the Non-Debtor Affiliate Settlement Agreement. The Confirmation Order shall constitute an order approving as a compromise and settlement pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code the foregoing releases and the respective releases of the Reorganized Debtors and the Asbestos PI Trust contained in the Non-Debtor Affiliate Settlement Agreement and the execution and delivery by the Reorganized Debtors and the Asbestos PI Trust of the Non-Debtor Affiliate Settlement Agreement which contains the foregoing releases.

**7.8   The Asbestos PI Channeling Injunction and the Asbestos PD Channeling Injunction.**

Pursuant to and either as part of or in connection with the Confirmation Order, the District Court shall enter the Asbestos PI Channeling Injunction and the Asbestos PD Channeling Injunction.

**7.9   Distributions Under the Plan.**

### 7.9.1   Plan Distributions

The Reorganized Debtors shall make all Distributions required under this Plan (other than Distributions to holders of Asbestos PI Trust Claims).  With respect to all Claims, except for Asbestos PI Trust Claims, each Distribution shall be made on a Distribution Date (unless otherwise provided herein or ordered by the Bankruptcy Court).  Distributions to be made on the Distribution Date shall be deemed actually made on the Distribution Date if made either (a) on the Distribution Date or (b) as soon as practicable thereafter.  With respect to Asbestos PI Trust Claims, Distributions to holders of Asbestos PI Trust Claims will be made in accordance with the terms of the Asbestos PI Trust Distribution Procedures.

### 7.9.2   Timing of Plan Distributions

Whenever any Distribution to be made under this Plan (other than Asbestos PI Trust Claims, which may be distributed pursuant to the Asbestos PI Trust Distribution Procedures) shall be due on a day other than a Business Day, such Distribution shall instead be made, without the accrual of any additional interest on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.  For federal income tax purposes, a Distribution will be allocated to the principal amount of a Claim first and then, to the extent the Distribution exceeds the principal amount of the Claim, to any accrued but unpaid interest.

**7.10  Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

### 7.10.1  Delivery of Distributions in General

Distributions to holders of Allowed Claims shall be made at the address of the holder of such Claim as indicated on records of the Debtors.

### 7.10.2  Undeliverable Distributions

Any Cash, assets, and other properties to be distributed under this Plan that remain unclaimed (including by an Entity's failure to negotiate a check issued to such Entity) or otherwise not deliverable to the Entity entitled thereto before the later of (a) one year after distribution or (b) 120 calendar days after an order allowing such Entity's Claim becomes a Final Order, shall become vested in, and delivered to, (i) the Asbestos PI Trust in the case of unclaimed distributions from the Asbestos PI Trust; or (ii) the Reorganized Debtors in the case of all remaining unclaimed distributions.  In such event, such Entity's Claim shall no longer be deemed to be Allowed, and such Entity shall be deemed to have waived its rights to such payments or distributions under this Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further Claim in respect of such distribution, and shall not participate in any further distributions under this Plan with respect to such Claim.

**7.11  Manner of Payment Under the Plan.**

Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Reorganized Debtors or the Asbestos PI Trust shall be made, at the election of the Reorganized Debtors or the Asbestos PI Trust, as applicable, by check drawn on a domestic bank or by wire transfer from a domestic bank.

**7.12  Occurrence of the Confirmation Date.**

The following shall constitute conditions to confirmation of this Plan:

7.12.1  The Court shall have made the following findings of fact and/or conclusions of law, among others, substantially to the effect as follows, in connection with the confirmation of this Plan, each of which shall be expressly set forth in the Confirmation Order:

(a)     The Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, and the Asbestos Insurance Entity Injunction are to be implemented in connection with this Plan and the Asbestos PI Trust;

(b)     As of the Petition Date, the Debtors have been named as defendants in personal injury, wrongful death, or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(c)     The Asbestos PI Trust is to be funded in part by securities of the Debtors and by the obligations of the Debtors to make future payments;

(d)     The Asbestos PI Trust, on the Effective Date, will be entitled, if specified contingencies occur, to own a majority of the voting shares of B&W, in its capacity as a Debtor and in its capacity as the direct or indirect parent corporation of all of the other Debtors.

(e)     The Asbestos PI Trust is to use its assets and income to pay Asbestos PI Trust Claims;

(f)     The Debtors are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos PI Trust Claims, which are addressed by the Asbestos PI Channeling Injunction and the Asbestos Insurance Entity Injunction;

(g)     The actual amounts, numbers, and timing of Demands cannot be determined;

(h)     Pursuit of Demands outside the procedures prescribed by this Plan is likely to threaten this Plan's purpose to deal equitably with:  Asbestos PI Claims; Asbestos PD Claims; Indirect Asbestos Personal Injury Claims; and Indirect Asbestos Property Damage Claims;

(i)     The terms of the Asbestos Insurance Entity Injunction, the Asbestos PI Channeling Injunction, and the Asbestos PD Channeling Injunction including any provisions barring actions against third parties, are set out in this Plan and in the Disclosure Statement;

(j)     Pursuant to court orders or otherwise, the Asbestos PI Trust shall operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos PI Trust Claims, or other comparable mechanisms that provide reasonable assurance that the Asbestos PI Trust shall value, and be in a financial position to pay, Asbestos PI Trust Claims that involve similar Asbestos PI Trust Claims in substantially the same manner;

(k)     The Future Claimants' Representative was appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction for the purpose of, among other things, protecting the rights of persons that might subsequently assert Demands of the kind that are addressed in the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction and transferred to the Asbestos PI Trust;

(l)     In light of the benefits provided, or to be provided, to the Asbestos PI Trust on behalf of each Asbestos Protected Party, the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction are fair and equitable with respect to the persons that might subsequently assert Demands against any Asbestos Protected Party;

(m)     In light of the benefits provided, or to be provided, by the Reorganized Debtors on account of Class 7 Claims, the Asbestos PD Channeling Injunction is fair and equitable with respect to the persons that might subsequently assert Demands against any Asbestos Protected Party other than the Reorganized Debtors;

(n)     This Plan complies with Section 524(g) of the Bankruptcy Code;

37

(o)     The terms of this Plan and the Asbestos Insurance Rights Assignment Agreement do not violate any obligation of the Debtors or any Insurance Contributor under any consent-to-assignment provision of any Subject Asbestos Insurance Policy or Subject Asbestos Insurance Settlement Agreement;

(p)     The terms of this Plan and the Asbestos Insurance Rights Assignment Agreement do not violate any obligation of the Debtors or any Insurance Contributor under any consent-to-settlement, cooperation, management-of-claims, or no-action provision of any Subject Asbestos Insurance Policy or Subject Asbestos Insurance Settlement Agreement;

(q)     The Asbestos PI Insurance Rights Assignment does not materially increase any insurer's risk of providing coverage for asbestos-related liabilities under the relevant insurance policies as compared to the risk that was otherwise being borne by the insurers prior to the Effective Date;

(r)     The Asbestos Insurance Entity Injunction, the Asbestos PI Channeling Injunction, and the Asbestos PD Channeling Injunction are essential to this Plan and the Debtors' reorganization efforts;

(s)     An identity of interests exists among the Debtors and the Asbestos Protected Parties such that a claim asserted against any of the Asbestos Protected Parties gives rise to a claim against the Debtors, including by the operation of the law of indemnity and/or contribution;

(t)     The McDermott Consideration and other benefits provided in this Plan for payment of Claims, including Asbestos PI Trust Claims, constitute both (1) substantial assets of this Plan and the reorganization; and (2) a fair, reasonable, and equitable settlement of all claims asserted against any party, including BWICO, MI, and MII, in the action captioned The Asbestos Claimants' Committee, on behalf of All Asbestos Personal Injury Claimants, and on behalf of The Estate of Babcock & Wilcox v. Babcock & Wilcox Investment Co., et al., Adv. No. 01-1155 (E.D. La. 2001);

(u)     The duties and obligations of the Asbestos Insurance Entities under the Subject Asbestos Insurance Policies and Subject Asbestos Insurance Settlement Agreements are not diminished, reduced or eliminated by (1) the discharge, release, and extinguishment of the obligations and liabilities of the Asbestos Protected Parties (other than the Reorganized Debtors respecting Class 7 Claims) for and in respect of all Asbestos PI Trust Claims and Class 7 Claims; (2) the assumption of responsibility and liability for all Asbestos PI Trust Claims and Class 7 Claims; or (3) the assignment of the Asbestos Insurance Rights pursuant to this Plan and the Asbestos Insurance Rights Assignment Agreement;

(v)     The Asbestos PI Trust shall have the exclusive authority as of the Effective Date to defend all Asbestos PI Trust Claims involving Asbestos PI Insurance Rights; provided, however, that the Asbestos PI Trust may, in its sole discretion, afford any Entity, including any Asbestos Insurance Entity, the opportunity to participate in the resolution of any Asbestos PI Trust Claim;

(w)     Prior to the Effective Date, the Debtors shall have the authority to prosecute and defend all Class 7 Claims involving Asbestos PD Insurance Rights.  As of the Effective Date, the Reorganized Debtors shall have the sole and exclusive authority to prosecute and defend all Class 7 Claims involving Asbestos PD Insurance Rights;

(x)     From and after the Effective Date, holders of Class 8 Claims shall be permitted to assert their Claims against the Reorganized Debtors on the same terms and subject to the same defenses of the Debtors as existed without regard to the filing of the Debtors' Chapter 11 Cases.

(y)     All of the Debtors' insurers who are affording insurance coverage that is the subject of the Asbestos PI Insurance Rights Assignment have been given notice and an opportunity to be heard;

(z)     Upon confirmation and consummation of this Plan, the Non-Debtor Affiliate Settlement Agreement and the Non-Debtor Affiliate Release shall be in full force and effect.

7.12.2  The Court has entered an order that the Estimated Amount of Claims in Class 7 is not greater than $700,000.

7.12.3  The Court has entered an order that the Estimated Amount of Claims in Class 5 is not greater than $1 million.

7.12.4  The Confirmation Order shall be, in form and substance, acceptable to the Plan Proponents.

7.12.5  The Court has entered an order in form and substance acceptable to the Plan Proponents approving the Non-Debtor Affiliate Settlement Agreement and authorizing the Debtors to enter into such agreement.

This Plan shall not be confirmed and the Confirmation Order shall not be entered until and unless each of the foregoing conditions to Confirmation is either satisfied or waived by each of the Plan Proponents.

**7.13 Occurrence of the Effective Date.**

The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur, and this Plan shall be of no force and effect, until the Effective Date.  The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent, any of which may be waived by the Plan Proponents acting together:

7.13.1  The Confirmation Order shall have been issued or affirmed by the District Court and entered on the District Court docket, and the Confirmation Order shall have become a Final Order; provided, however, that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the option of the Plan Proponents acting together unless the effectiveness of the Confirmation Order has been stayed or vacated, in which case the Effective Date may be, at the option of the Plan Proponents acting together, the first Business Day immediately following the expiration or other termination of any stay of effectiveness of the Confirmation Order.

7.13.2  The District Court shall have entered or affirmed an order or orders (either as part of or in connection with the Confirmation Order) entering the Asbestos Insurance Entity Injunction, the Asbestos PI Channeling Injunction, and the Asbestos PD Channeling Injunction.

7.13.3  The Court shall have entered or affirmed an order or orders approving this Plan and all Plan Documents and such order or orders shall have become Final Orders.

7.13.4  No proceedings to estimate any Claims shall be pending.

7.13.5  The Asbestos Insurance Entity Injunction, the Asbestos PI Channeling Injunction, and  the Asbestos PD Channeling Injunction shall be in full force and effect.

7.13.6  The Debtors and all applicable Trustees shall have executed the Asbestos PI Trust Agreement.

7.13.7  Each of the Plan Proponents shall have approved all of the Plan Documents.

7.13.8  The Insurance Contributors shall have executed the Asbestos Insurance Rights Assignment Agreement.

7.13.9 The Insurance Contributors shall have made their Asbestos PI Insurance Rights Assignment and shall have delivered all funds to the Asbestos PI Trust contemplated under this Plan due on the Effective Date.

7.13.10 The McDermott Consideration shall have been delivered to the Asbestos PI Trust on the Effective Date.

7.13.11 All parties to the Non-Debtor Affiliate Settlement Agreement and the Non-Debtor Affiliate Release shall have executed and delivered counterparts of same and any supplements thereto.

7.13.12 The Exit Financing, in an amount and on such terms reasonably satisfactory to the Reorganized Debtors and MI, shall be in full force and effect and available immediately upon the occurrence of the Effective Date and after all necessary parties have executed the documentation relating thereto.

7.13.13 The Debtors shall have obtained either (i) a private letter ruling establishing that the Asbestos PI Trust is a "qualified settlement fund" pursuant to regulations issued pursuant to Section 468B of the IRC, or (ii) other decisions, opinions, or assurances regarding the tax consequences of this Plan to be included in the Plan Supplement.

7.13.14 The Asbestos Claimants' Committee and the Future Claimants' Representative shall have dismissed with prejudice their appeal from the decision in the adversary proceeding relating to the 1998 Transfers.

7.13.15 The Non-Debtor Affiliate Settlement Agreement, and the settlement contemplated by the Non-Debtor Affiliate Settlement Agreement, shall have been duly approved by the Board of Directors of MII, provided that such approval shall be as of a date not more than 30 days prior to the Effective Date.

7.13.16 The Court shall have entered a finding that the cooperation agreement entered into between the Reorganized Debtors and the Asbestos PI Trust does not result in the destruction, impairment, or waiver of any applicable privileges pertaining to the books and records subject thereto.

7.13.17 On or before January 31, 2006, the Non-Debtor Affiliate Settlement Agreement  shall have been duly and unconditionally approved by a majority of the voting power of the outstanding shares of MII Common Stock present in person or represented by proxy at the MII Special Meeting of Stockholders (as defined in the Non-Debtor Affiliate Settlement Agreement), and the total number of shares for which votes shall have been cast at the MII Special Meeting of Stockholders on the proposal to so approve the Non-Debtor Affiliate Settlement Agreement shall have represented at least 50% of the voting power of all of the outstanding shares of MII Common Stock entitled to vote on such proposal (provided that this stockholder approval condition may be satisfied through the approval (in the manner contemplated by the foregoing provisions) of a draft of the Non-Debtor Affiliate Settlement Agreement, coupled with an acknowledgment that the Board of Directors of MII shall have the authority to approve any modifications thereto as may be mutually agreed among the parties thereto).

7.13.18 On or before January 31, 2006, the Non-Debtor Affiliate Settlement Agreement, and the settlement contemplated by the Non-Debtor Affiliate Settlement Agreement, as modified pursuant to the terms of this Plan, shall have been duly approved by the Board of Directors of each of MII, BWICO and B&W.

7.13.19 The Non-Debtor Affiliate Settlement Agreement shall not have been terminated pursuant to the provisions of Section 8.3 thereof.

7.13.20 The Debtors shall have filed a notice of occurrence of the Effective Date with the Bankruptcy Court reflecting (i) that the foregoing conditions have been satisfied or waived by the unanimous agreement of all Plan Proponents, (ii) the date of the Effective Date, and (iii) acknowledging that the Effective Date has occurred on and as of said date.

The Effective Date shall not occur unless and until each of the foregoing conditions is either satisfied or waived by the unanimous agreement of the Plan Proponents.

**7.14 Management of the Reorganized Debtors.**

On and after the Effective Date, the business and affairs of the Reorganized Debtors will be managed by the board of directors of the Reorganized Debtors. Upon the Effective Date, the board of directors of each of the Reorganized Debtors shall be composed of at least two directors. The members of the board of directors of each of the Reorganized Debtors upon the Effective Date shall be persons identified to the Court prior to the Confirmation Order. The directors of each Reorganized Debtor appointed upon the Effective Date shall serve without replacement other than as a consequence of resignation, death, or removal or replacement by shareholder action or by action of the remaining members of such board of directors in accordance with the applicable provisions of its charter and by-laws (as the same may be amended from time to time).

**7.15 Corporate Action.**

On the Effective Date, B&W shall adopt an amendment to the Certificate of Incorporation of B&W (substantially in the form included in the Plan Supplement) and may adopt restated By-Laws of B&W, and such corporate actions shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order, or rule, including any action by the stockholders or directors of B&W, the Debtors in Possession, or the Reorganized Debtors. On the Effective Date or as soon thereafter as is practicable, B&W shall file with the Secretary of State of the State of Delaware, in accordance with the applicable Delaware statutes, rules, and regulations, such amendment to its Certificate of Incorporation. On the Effective Date, the approval and effectiveness of matters provided under this Plan involving the corporate structure of the Reorganized Debtors or corporate action by the Reorganized Debtors shall be deemed to have occurred and to have been authorized, and shall be in effect from and after the Effective Date without requiring further action under applicable law, regulation, order, or rule, including any action by the stockholders or directors of the Debtors, the Debtors in Possession, or the Reorganized Debtors. Notwithstanding the foregoing, nothing in this Section shall excuse the Debtors or the Debtors in Possession from timely performing their obligations under this Plan.

**7.16 Plan Documents.**

All Plan Documents shall be in form and substance satisfactory to each of the Plan Proponents.

**7.17 Effectuating Documents and Further Transactions.**

Each of the officers of the Debtors and the Reorganized Debtors is authorized, in accordance with his or her authority under the resolutions of the Board of Directors and By-Laws of the Debtors and the Reorganized Debtors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtors and the Reorganized Debtors, to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

**7.18 Allocation of Plan Distributions Between Principal and Interest.**

To the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the accrued but unpaid interest.

**7.19 Term of Certain Injunctions and Automatic Stay.**

7.19.1 All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Cases, whether pursuant to Section 105, Section 362, or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to Confirmation shall remain in full force and effect until the injunctions set forth in this Plan become effective, and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms. In addition, on and after Confirmation, the Reorganized Debtors may seek such further orders as they may deem necessary or appropriate to preserve the status quo during the time between Confirmation and the Effective Date.

7.19.2 Each of the injunctions provided for in this Plan shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by this Plan. Notwithstanding

anything to the contrary contained in this Plan, all actions in the nature of those to be enjoined by such injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

**7.20 No Successor Liability.**

Except as otherwise expressly provided in this Plan, the Debtors, the Reorganized Debtors, the Asbestos Claimants' Committee, the Future Claimants' Representative, and the Non-Debtor Affiliates will not, pursuant to this Plan or otherwise, assume, agree to perform, pay, or indemnify creditors or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any of the Debtors' past or present Subsidiaries relating to or arising out of the operations of or assets of the Debtors or any of the Debtors' past or present Subsidiaries, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Confirmation Date. Neither the Non-Debtor Affiliates, the Reorganized Debtors, nor the Asbestos PI Trust is, or shall be, a successor to the Debtors or any of the Debtors' past or present Subsidiaries by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that the Reorganized Debtors and the Asbestos PI Trust shall assume the obligations specified in this Plan and the Confirmation Order.

**7.21 Nondischargeable Environmental Liability Affecting Rights of Governmental Units.**

Nothing herein shall be deemed as discharging or otherwise affecting the rights of governmental units, as that term is defined in Section 101(27) of the Bankruptcy Code, to assert claims or causes of action against the Reorganized Debtors on account of or arising under applicable environmental laws, to the extent that such rights are not (i) otherwise dischargeable under the provisions of the Bankruptcy Code or (ii) subject to the Asbestos PI Channeling Injunction or the Asbestos PD Channeling Injunction.

**7.22 Deemed Consolidation of Debtors for Plan Purposes Only.**

Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated under this Plan. Each and every Claim filed or to be filed against any of the Debtors shall be deemed filed against the deemed consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under this Plan and as set forth above in this Section) affect: (i) the legal and organizational structure of the Debtors; (ii) any guarantees, liens, and security interests that are required to be maintained under this Plan (A) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed, (B) pursuant to this Plan, or (C) in connection with any financing entered into by the Reorganized Debtors on the Effective Date; (iii) the Debtors' Asbestos PI Insurance Rights and Asbestos PD Insurance Rights; (iv) the Asbestos PI Insurance Rights Assignment; (v) the Non-Debtor Affiliate Settlement Agreement; and (vi) distributions out of any insurance policies or proceeds of such policies.

Notwithstanding anything contained in this Plan to the contrary, the deemed consolidation of the Debtors shall not have any effect on any of the Claims being reinstated and left unimpaired under this Plan, and the legal, equitable, and contractual rights to which the holders of any such Claims are entitled shall be left unaltered by this Plan.

# ARTICLE 8.
## EXECUTORY CONTRACTS, UNEXPIRED LEASES, CORPORATE GUARANTIES, INDEMNITY AGREEMENTS, AND POST PETITION CONTRACTS

**8.1  Assumption of Executory Contracts and Unexpired Leases.**

8.1.1   Except for executory contracts that the Debtors reject prior to the Effective Date or designate as being subject to rejection in connection with the Effective Date, all executory contracts and unexpired leases not previously assumed by the Debtors pursuant to Section 365 of the Bankruptcy Code shall be deemed to have been assumed by the Reorganized Debtors on the Effective Date, and this Plan shall constitute a motion to assume such executory contracts and unexpired leases as of the Effective Date. Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Clerk of the Court shall constitute approval of such

assumptions pursuant to Section 365(a) of the Bankruptcy Code and a finding by the Court that each such assumption is in the best interests of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases. With respect to each such executory contract or unexpired lease assumed by the Reorganized Debtors, unless otherwise determined by the Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, any defaults of the Debtors with respect to such assumed executory contracts or leases existing as of the Effective Date shall be cured in the ordinary course of the Reorganized Debtors' business promptly after any such default becomes known to the Debtors and, if disputed, established pursuant to applicable law, and the assumed executory contracts or leases shall be binding upon and enforceable upon the parties thereto, subject to any rights and defenses existing thereunder under applicable non-bankruptcy laws.

8.1.2   Executory Contracts and unexpired leases previously assumed by the Debtors during the case pursuant to Section 365 of the Bankruptcy Code shall be governed by and subject to the provisions of the order of the Court authorizing the assumption thereof.

8.1.3   The filing of proofs of claim for rejection damages related to the rejection of executory contracts or leases shall be made within 30 days of the later of (i) the Effective Date of this Plan or (ii) the entry of an order rejecting such executory contracts or leases, or such claims shall be forever barred, discharged, or otherwise enjoined from being brought against the Reorganized Debtors.

**8.2   Reservation of Insurance Rights.**

Subject to the Asbestos Insurance Rights Assignment, nothing contained in this Plan or any negotiations leading up to this Plan, including this Section 8.2, shall constitute a waiver of any Claim, right, or cause of action that any Insurance Contributor has or may have against any Asbestos Insurance Entity, including under any Subject Asbestos Insurance Policy or Subject Asbestos Insurance Settlement Agreement.  The Debtors' discharge and the Insurance Contributors' release from all Claims as provided herein shall not diminish, reduce or eliminate the duties or obligations of any Asbestos Insurance Entity under any Subject Asbestos Insurance Policy or Subject Asbestos Insurance Settlement Agreement.  The Asbestos PI Trust shall be bound to the provisions of the Asbestos Insurance Settlement Agreements with the same force and effect as if the Asbestos PI Trust were a party to the Asbestos PI Insurance Settlement Agreements.  The Asbestos PI Trust shall be bound to the provisions of the Amended and Restated Insurance Escrow Agreement by and among the Insurance Contributors and Babcock &Wilcox Canada Limited ("Insurance Escrow Agreement"), with the same force and effect as if the Asbestos PI Trust were a party to the Insurance Escrow Agreement, and the Asbestos Insurance Rights Assignment shall be subject to the Insurance Escrow Agreement.

**8.3   Compensation and Benefits Program.**

Unless otherwise  agreed to by the affected parties, or modified by order of the Court, all of the Debtors' obligations under employment and severance policies, and all compensation and benefit plans, policies, and programs shall be treated as though they are executory contracts that are deemed assumed under this Plan.

**8.4   Letters of Credit, Surety Bonds, Corporate Guaranties of Construction Contracts, and Certain Indemnity Agreements, and Post-Petition Contracts.**

Unless otherwise designated in writing by the Debtors prior to the Effective Date, agreed to in writing by the affected parties, or modified by order of the Court, the Debtors' obligations under letters of credit, surety bonds, corporate guaranties of construction contracts, and written indemnity agreements with respect to letters of credit, surety bonds and corporate guaranties of construction contracts existing as of the Effective Date and post-petition contracts entered by the Debtors after the Petition Date shall survive confirmation of this Plan, remain unaffected thereby (except as provided in this paragraph), and not be discharged in accordance with Section 1144 of the Bankruptcy Code.  The Reorganized Debtors shall have the right to cure any defaults existing as of the Effective Date under any such letters of credit, surety bonds, corporate guaranties of construction contracts,  and written indemnity agreements with respect to letters of credit, surety bonds, and corporate guaranties of construction contracts existing as of the Effective Date, or post-petition contracts in the ordinary course of the Reorganized Debtors' business promptly after any such default becomes known to the Reorganized Debtors and, if disputed, established pursuant to applicable law.  All letters of credit, surety bonds, corporate guaranties of construction contracts, and written indemnity agreements with respect to letters of credit, surety bonds and corporate guaranties of construction contracts existing as of the Effective Date, and post-petition contracts of the Debtors shall be deemed reinstated on the Effective Date notwithstanding any default therein by the Debtors, any delay in the cure thereof by

the Debtors, or the filing or existence of the Chapter 11 Cases, or any action taken in connection therewith, and shall be binding upon, and enforceable against, all parties thereto, subject to any rights and defenses existing thereunder under applicable non-bankruptcy laws.

Nothing in Sections 8.1 through 8.4, however, shall (1) constitute a reinstatement, continuation or assumption of any warranty provision, guaranty or any other contractual or other obligation, Demand or Claim by the Reorganized Debtors to the extent that the Claim, Demand or obligation constitutes an Asbestos Property Damage Claim, an Asbestos Personal Injury Claim, an Indirect Asbestos PI Claim, an Indirect Asbestos PD Claim, or an Apollo/Parks Township Claim or (2) limit, restrict or otherwise impair the releases afforded to the MII Indemnified Parties that are granted elsewhere in the Plan or Plan Documents.

# ARTICLE 9.
## RETENTION OF JURISDICTION

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Court shall retain and shall have exclusive jurisdiction to the fullest extent provided by applicable law over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or this Plan, or (c) that relates to the following:

### 9.1  Asbestos PI Trust Agreement and Distribution Procedures.

To interpret, enforce, and administer the terms of the Asbestos PI Trust Agreement (including the Asbestos PI Trust Distribution Procedures and all other annexes and exhibits thereto);

### 9.2  Executory Contracts and Unexpired Leases.

To hear and determine any and all motions or applications pending on the Confirmation Date for the assumption and/or assignment or rejection of executory contracts or unexpired leases to which the Debtors are parties or with respect to which the Debtors may be liable, and to review and determine all Claims resulting from the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date;

### 9.3  Trustee Causes of Action.

To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Asbestos PI Trust after the Effective Date, including any claims to avoid any preferences, fraudulent transfers, or other voidable transfers, or otherwise to recover assets for the benefit of the Debtors' estates that have not otherwise been waived pursuant to the terms of this Plan;

### 9.4  Disputed Claims Allowance/Disallowance.

To hear and determine any objections to the allowance of Claims (except those involving Asbestos PI Trust Claims), including, but not limited to, any objections to the classification of any Claim, and to allow or disallow any Disputed Claim in whole or in part;

### 9.5  Enforcement/Modification of the Plan.

9.5.1  To issue such orders in aid of execution of this Plan to the extent authorized or contemplated by Section 1142 of the Bankruptcy Code;

9.5.2  To consider any modifications of this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Court, including the Confirmation Order;

9.5.3  To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan Documents or their interpretation, implementation, enforcement, or consummation;

9.5.4  To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Non-Debtor Affiliate Settlement Agreement;

9.5.5    To hear and determine all objections to the termination of the Asbestos PI Trust;

9.5.6    To determine such other matters that may be set forth in this Plan, the Confirmation Order, the Asbestos Insurance Entity Injunction, the Asbestos PI Channeling Injunction, or the Asbestos PD Channeling Injunction, or that may arise in connection with this Plan, the Confirmation Order, the Asbestos Insurance Entity Injunction, the Asbestos PI Channeling Injunction, or the Asbestos PD Channeling Injunction;

9.5.7    To hear and determine any proceeding that involves the validity, application, construction, enforceability, or modification of the Asbestos Insurance Entity Injunction, the Asbestos PI Channeling Injunction, or the Asbestos PD Channeling Injunction;

9.5.8    To enter an order or final decree closing the Chapter 11 Cases;

9.5.9    To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of all orders entered by the Court in the Chapter 11 Cases;

9.5.10    To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded by Section 524(g) of the Bankruptcy Code or Section 105 of the Bankruptcy Code to the Settling Asbestos Insurance Entities; and

9.5.11    To determine whether (i) the satisfaction of the Payment Obligations Condition Precedent (as set forth in Section 2.1(b) of the Non-Debtor Affiliate Settlement Agreement) has occurred, (ii) the Asbestos Resolution Legislation Set-off (as set forth in Section 7.2 of the Non-Debtor Affiliate Settlement Agreement) is applicable, and (iii) a Challenge Proceeding (as defined in Section 2.1(b) of the Non-Debtor Affiliate Settlement Agreement) has been initiated and, if initiated, has been resolved.

**9.6    Compensation of Professionals.**

To hear and determine all applications for allowances of compensation and reimbursement of expenses of professionals under Sections 330, 331, and 503 of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under this Plan;

**9.7    Settlements.**

To the extent that Court approval is required, to consider and act on the compromise and settlement of any Claim or cause of action by or against the Debtors' estates;

**9.8    Taxes.**

To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors or Debtors in Possession may be liable, directly or indirectly, in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

**9.9    Specific Purposes.**

To hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order; and

**9.10    Insurance Matters.**

To hear and determine matters concerning insurance; provided, however, that the Court shall have nonexclusive jurisdiction over such matters.

Notwithstanding anything in this Article 9, the satisfaction of Asbestos PI Trust Claims and the forum in which such claims will be determined will be governed by the Asbestos PI Trust Distribution Procedures.

# ARTICLE 10.
## PROPERTY HELD IN TRUST AND AUTHORITY OF THE DEBTORS

### 10.1 Certain Property Held in Trust by the Reorganized Debtors.

If, and to the extent that, any property of the Reorganized Debtors specified herein, under applicable law or any binding contractual provision, cannot be effectively transferred and assigned to the appropriate party pursuant to any Section herein, or if for any reason after the Effective Date, the Reorganized Debtors shall retain or receive any property that is owned by the Reorganized Debtors or the Debtors (as the case may be) and is to be transferred to another party pursuant to any Section herein, then the Reorganized Debtors shall hold such property (and any proceeds thereof) for the benefit of the appropriate party and shall take such actions with respect to such property (and any proceeds thereof) as such party shall direct in writing.

### 10.2 Authority of the Plan Proponents.

On the Confirmation Date, the Plan Proponents shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement effectively (i) the provisions of this Plan and (ii) the creation of the Asbestos PI Trust.

# ARTICLE 11.
## MISCELLANEOUS PROVISIONS

### 11.1 Payment of Statutory Fees.

All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Court at the hearing on confirmation of this Plan, shall be paid by the Debtors on or before the Effective Date.

### 11.2 Discharge of the Debtors; Effect of the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, and the Asbestos Insurance Entity Injunction.

Except as otherwise provided in this Plan, the rights afforded in this Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against the Debtors and the Debtors in Possession, or their assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims against and Equity Interests in the Debtors and the Debtors in Possession **(including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors, or any conduct for which any of the Debtors may be deemed to have strict liability under any applicable law)** shall be satisfied, discharged, and released in full.  The Reorganized Debtors shall not be responsible for any obligations of the Debtors or the Debtors in Possession except (1) those expressly assumed by the Reorganized Debtors pursuant to this Plan and (2) those claims that pass through this Plan unimpaired pursuant to Section 3.2.8 herein.  All Entities shall be precluded and forever barred from asserting against the Debtors, the Reorganized Debtors, the Asbestos Protected Parties, Settling Asbestos Insurance Entities, or their assets, properties, or interests in property any other or further Claims or Demands based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except as expressly provided in this Plan.

With respect to all Asbestos PI Trust Claims, the entry of the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction shall stay, enjoin, and restrain any Entity from taking any of the actions prohibited by the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos PI Trust Claim against an Asbestos Protected Party or Settling Asbestos Insurance Entity, as set forth in the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction.  Without limiting the generality of the foregoing, the sole and exclusive remedy on account of Asbestos PI Trust Claims shall be against the Asbestos PI Trust, and no Asbestos PI Trust Claim may be asserted against any Asbestos Protected Party or Settling Asbestos Insurance Entity, except as specified in the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction.

46

With respect to all Class 7 Claims, the entry of the Asbestos Insurance Entity Injunction and the Asbestos PD Channeling Injunction shall stay, enjoin, and restrain any Entity from taking any of the actions prohibited by the Asbestos Insurance Entity Injunction and the Asbestos PD Channeling Injunction for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Class 7 Claim against an Asbestos Protected Party (other than the Reorganized Debtors) or Settling Asbestos Insurance Entity, as set forth in the Asbestos Insurance Entity Injunction and the Asbestos PD Channeling Injunction.  Without limiting the generality of the foregoing, the sole and exclusive remedy on account of Class 7 Claims shall be against the Reorganized Debtors, and no Class 7 Claim may be asserted against any Asbestos Protected Party or Settling Asbestos Insurance Entity, except as specified in the Asbestos Insurance Entity Injunction and the Asbestos PD Channeling Injunction.

### 11.3 Reduction of Insurance Judgments.

Any right, claim or cause of action that an Asbestos Insurance Entity may have been entitled to assert against any Settling Asbestos Insurance Entity but for the Asbestos PI Channeling Injunction, if any such rights, claims, or causes of action exist under applicable non-bankruptcy law, shall be channeled to and become a right, claim, or cause of action solely as an offset claim against the Asbestos PI Trust and not against or in the name of the Settling Asbestos Insurance Entity in question.  Any such right, claim, and cause of action to which an Asbestos Insurance Entity may be entitled, if any, shall be solely a setoff against any recovery of the Asbestos PI Trust from that Asbestos Insurance Entity and, under no circumstances, shall that Asbestos Insurance Entity receive an affirmative recovery of funds from the Asbestos PI Trust or any Settling Asbestos Insurance Entity for such right, claim, or cause of action.  Any setoff in favor of an Asbestos Insurance Entity shall not constitute a classified or unclassified Claim under this Plan and shall not be subject to or impaired by this Plan.  Instead, any setoff shall be determined, calculated and applied solely as a matter of applicable non-bankruptcy law without regard to this Plan or any bankruptcy law or decision.

Any right, claim or cause of action that an Asbestos Insurance Entity may have been entitled to assert against any Settling Asbestos Insurance Entity but for the Asbestos PD Channeling Injunction, if any such rights, claims or causes of action exist under applicable non-bankruptcy law, shall be channeled to and become a right, claim, or cause of action solely as an offset claim against the Reorganized Debtors and not against or in the name of the Settling Asbestos Insurance Entity in question.  Any such right, claim, and cause of action to which an Asbestos Insurance Entity may be entitled, if any, shall be solely a setoff against any recovery by the Reorganized Debtors from that Asbestos Insurance Entity and, under no circumstances, shall that Asbestos Insurance Entity receive an affirmative recovery of funds from the Reorganized Debtors or any Settling Asbestos Insurance Entity for such right, claim, or cause of action.  Any setoff in favor of an Asbestos Insurance Entity shall not constitute a classified or unclassified Claim under this Plan and shall not be subject to or impaired by this Plan.  Instead, any setoff shall be determined, calculated and applied solely as a matter of applicable non-bankruptcy law without regard to this Plan or any bankruptcy law or decision.

### 11.4 Rights of Action.

Except to the extent released pursuant to this Plan or the Non-Debtor Affiliate Settlement Agreement, any rights, claims, or causes of action accruing to the Debtors or the Debtors in Possession pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including any avoidance or recovery actions under Sections 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, any rights to, claims, or causes of action for recovery under any policies of insurance issued to or on behalf of the Debtors or the Debtors in Possession, and any rights, claims, and causes of action against third parties related to or arising out of Allowed Claims including, without limitation to, any rights, claims, and causes of actions described in Exhibit F hereto, except Asbestos PI Trust Claims, shall, pursuant to this Plan, be retained and resolved by the Reorganized Debtors.

Any rights, claims, and causes of action against third parties arising out of Class 7 and Class 8 Claims shall remain assets of the Debtors' estates and, on the Effective Date, shall be assets of the Reorganized Debtors.

Except to the extent inconsistent with the Non-Debtor Affiliate Settlement Agreement or otherwise inconsistent with this Plan, the Reorganized Debtors shall be deemed the appointed representatives to, and may, pursue, litigate, and compromise and settle any such rights, claims, or causes of action, as appropriate, in accordance with the best interests of and for the benefit of the Reorganized Debtors except as to Asbestos PI Trust Claims, for which the Asbestos PI Trust shall be deemed the appointed representative to, and may, pursue, litigate,

and compromise and settle any such rights, claims, or causes of action related to Asbestos PI Trust Claims as appropriate, in accordance with the best interests of the Asbestos PI Trust.

Nothing in this Section shall be deemed to be a transfer by the Debtors and the Reorganized Debtors of any claims, causes of action, or defenses relating to assumed executory contracts or otherwise which are required by the Reorganized Debtors to conduct their businesses in the ordinary course subsequent to the Effective Date. Moreover, except as otherwise expressly contemplated by this Plan or the Non-Debtor Affiliate Settlement Agreement, from and after the Effective Date, the Reorganized Debtors shall have and retain any and all rights, claims, causes of action, or defenses against any parties, including Creditors and holders of Equity Interests, which are not otherwise treated under this Plan.

**11.5 Third-Party Agreements.**

The Distributions to the various classes of Claims hereunder will not affect the right of any Entity to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise. All of such rights and any agreements relating thereto will remain in full force and effect.

**11.6 Dissolution of the Unsecured Claimants' Committee and the Asbestos Claimants' Committee; Retention of the Future Claimants' Representative; Creation of the Trust Advisory Committee.**

On the Effective Date, the Unsecured Creditors' Committee and the Asbestos Claimants' Committee shall thereupon be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Cases, and those committees shall be deemed dissolved; provided, however, that (i) in the event that the Effective Date occurs prior to the Confirmation Order becoming a Final Order, the Unsecured Creditors' Committee and the Asbestos Claimants' Committee may, at their option, continue to serve and function for the purpose of participating in any appeal of the Confirmation Order until such time as the Confirmation Order becomes a Final Order; and (ii) if the Effective Date occurs prior to the conclusion of any outstanding litigation or adversary proceedings in the Chapter 11 Cases or prior to the entry of a Final Order with respect to final fee applications of professionals retained by order of the Bankruptcy Court during the Chapter 11 Cases, the Unsecured Creditors' Committee and the Asbestos Claimants' Committee may, at their option, continue to serve until a Final Order is entered with respect to such proceedings. Upon the Effective Date, the Trust Advisory Committee shall be appointed pursuant to the Asbestos PI Trust Agreement.

The Future Claimants' Representative shall continue to serve through the termination of the Asbestos PI Trust in order to perform the functions required by the Asbestos PI Trust Agreement. Upon termination of the Asbestos PI Trust, the Trust Advisory Committee for the Asbestos PI Trust and the Future Claimants' Representative shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 Cases. The Trust Advisory Committee for the Asbestos PI Trust shall be deemed dissolved and the Future Claimants' Representative's employment shall be deemed terminated. All reasonable and necessary post-Effective Date fees and expenses of the professionals retained by the Trust Advisory Committee for the Asbestos PI Trust and the Future Claimants' Representative shall be paid by the Asbestos PI Trust in accordance with the terms of the Asbestos PI Trust Agreement. If any dispute regarding the payment of such fees and expenses arises, the parties shall attempt to resolve such dispute in good faith. If they fail to resolve such dispute, they shall submit the dispute to the Bankruptcy Court for resolution.

**11.7 Exculpation and Indemnity.**

11.7.1  **Exculpation.**

None of the Reorganized Debtors, the Debtors, the Non-Debtor Subsidiaries, the Non-Debtor Affiliates, the MII Indemnified Parties, the Trustees of the Asbestos PI Trust, the Asbestos Claimants' Committee, the Unsecured Creditors' Committee, the Future Claimants' Representative, the Apollo FCR or any of their respective Representatives are to have or incur any liability to any Entity for any act or omission in connection with or arising out of the negotiation of this Plan or the settlement provided in the Non-Debtor Affiliate Settlement Agreement, the pursuit of confirmation of this Plan, the consummation of this Plan or the settlement provided in the Non-Debtor Affiliate Settlement Agreement, or the administration of this Plan or the property to be distributed under this Plan (including any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities based on conduct that constituted or may have constituted ordinary or gross negligence or reckless, willful, or

wanton misconduct – but not, in the case of any natural person included among the Entities to which this Section 11.7 applies, any claims against that person based on intentional misconduct of that person that directly resulted in the unjust enrichment of that person – of any of the Debtors, the Non-Debtor Subsidiaries, the Non-Debtor Affiliates, the MII Indemnified Parties, the Trustees of the Asbestos PI Trust, the Asbestos Claimants' Committee, the Unsecured Creditors' Committee, the Future Claimants' Representative, the Apollo FCR or any of their respective Representatives or any conduct for which any of those Entities may be deemed to have strict liability under any applicable law).  In all respects, they will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.  Nothing in the Plan or the Confirmation Order shall diminish, impair, restrict or discharge the Order on Ex Parte Motion to Provide Administrative Expense Claim and Related Protection to Apollo Future Claimants' Representative signed on September 19, 2003.

### 11.7.2  Indemnities.

The following indemnities will be provided: (a) the Reorganized Debtors shall defend, hold harmless, and indemnify: (i) their own Representatives;  (ii) the MII Indemnified Parties; (iii) the Unsecured Creditors' Committee and its Representatives and (iv) the Apollo FCR and his Representatives; and (b) the Asbestos PI Trust shall defend, hold harmless, and indemnify: (i) the Asbestos Claimants' Committee and its Representatives, and (ii) the Future Claimants' Representative and his Representatives, in each case with respect to any such claim or liability, and, in connection therewith, if and whenever any indemnified party described in clauses (a) and (b) of this sentence is, or is threatened to be made, a party to any action, suit, arbitration, investigation, or other proceeding that might give rise to a right of indemnification under this Section 11.7, the indemnifying party shall, to the extent permitted by applicable law, advance to that indemnified party all expenses (including attorneys' fees) reasonably incurred by or on behalf of that indemnified party in connection therewith within ten days after the indemnifying party receives a statement or statements from that indemnified party requesting an advance or advances from time to time, whether prior to or after final disposition of such action, suit, arbitration, investigation, or other proceeding. Nothing in the Plan or the Confirmation Order shall diminish, impair, restrict or discharge the Order on Ex Parte Motion to Provide Administrative Expense Claim and Related Protection to Apollo Future Claimants' Representative signed  on September 19, 2003.

### 11.8  Additional Releases and Indemnification.

#### 11.8.1  Officers and Directors

##### 11.8.1.1  *Release of Representatives of the Debtors and Non-Debtor Affiliates*

Except as otherwise specifically provided in this Plan, and without limiting or restricting any other releases granted elsewhere in the Plan or the Plan Documents, all current and former Representatives of the Debtors, and all current and former Representatives of the Non-Debtor Affiliates, on and after the Effective Date, will be released from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that any Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Entity, based in whole or in part, upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date for claims or liabilities resulting from their services as officers or directors of the Debtors or, to the extent such claims or liabilities relate to the business, operations, or management of any of the Debtors prior to the Effective Date or any of the matters referred to in Section 11.7, any of the Non-Debtor Affiliates (**including any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities based on conduct that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct – but not, in the case of any natural person included among the Entities purported to be released pursuant to this Section 11.8.1.1, any claims against that person based on intentional misconduct of that person that directly resulted in the unjust enrichment of that person – or any conduct for which any of those Entities may be deemed to have strict liability under any applicable law**).

##### 11.8.1.2  *Indemnification of Representatives of the Debtors and Non-Debtor Affiliates*

Except as otherwise specifically provided in this Plan, the Reorganized Debtors will defend, indemnify, and hold harmless to the fullest extent permitted by applicable law, all current and former Representatives of the Debtors, and all current and former Representatives of the Non-Debtor Affiliates, on and after the Effective Date for all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities

whatsoever that are purported to be released pursuant to Section 11.8.1.1 herein.  In connection with the indemnification provided to indemnified parties pursuant to this Section 11.8.1.2, if and whenever any such indemnified party is, or is threatened to be made, a party to any action, suit, arbitration, investigation, or other proceeding that might give rise to a right of indemnification under this Section 11.8.1.2, the Reorganized Debtors shall, to the extent permitted by applicable law, advance to that indemnified party all expenses (including attorneys' fees) reasonably incurred by or on behalf of that indemnified party in connection therewith within ten days after the Reorganized Debtors receive a statement or statements from that indemnified party requesting an advance or advances from time to time, whether prior to or after final disposition of such action, suit, arbitration, investigation, or other proceeding.

### 11.8.2  MII Indemnified Parties

The Reorganized Debtors and the Asbestos PI Trust will indemnify and hold harmless each of the MII Indemnified Parties and B&W Entities pursuant to the provisions of, and to the extent set forth in, the Non-Debtor Affiliate Settlement Agreement and, in addition, to the extent provided in the Plan and Plan Documents.  As to the current and former Representatives of the Debtors, and the current and former Representatives of the Non-Debtor Affiliates, the indemnification rights under this Section 11.8.2 are in addition to the indemnification rights under Section 11.8.1.2 and, to the extent provided in the Plan and Plan Documents.

### 11.8.3  Intercompany Accounts and Other Claims

Subject to the provisions of the Non-Debtor Affiliate Settlement Agreement, effective as of the Effective Date, MII and its Subsidiaries (other than the Debtors), on the one hand, and the Debtors, on the other hand, will each release the other from the intercompany accounts and claims identified in the Non-Debtor Affiliate Settlement Agreement as accounts and claims to be so released.

### 11.8.4  Specific Releases by Holders of Claims

Except as otherwise specifically provided in this Plan, on and after the Effective Date, each holder of a Claim (i) who has accepted this Plan, or (ii) who is entitled to receive a Distribution of property under this Plan shall be deemed to have unconditionally released the Debtors, the Reorganized Debtors, the Unsecured Creditors' Committee, the Asbestos Claimants' Committee, the Future Claimants' Representative, the Non-Debtor Affiliates, the MII Indemnified Parties, and the Apollo FCR from any and all claims (as defined in Section 101(5) of the Bankruptcy Code), obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtors or the Reorganized Debtors, the Chapter 11 Cases, or the negotiation, formulation, and preparation of this Plan or any related agreements, instruments, or other documents **(including any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities based on conduct that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors, the Reorganized Debtors, the Non-Debtor Subsidiaries, the Non-Debtor Affiliates, the MII Indemnified Parties, the Trustees of the Asbestos PI Trust, the Asbestos Claimants' Committee, the Unsecured Creditors' Committee, the Future Claimants' Representative, the Apollo FCR, or any of their respective Representatives or any conduct for which any of those Entities may be deemed to have strict liability under any applicable law)**.

### 11.9 Pension Plans.

Notwithstanding the foregoing, this Plan does not release claims, if any, of the Retirement Plan for Employees of McDermott Incorporated and Participating Subsidiary Affiliated Companies or the separate single-employer plan sponsored by The Babcock & Wilcox Company (the "Babcock & Wilcox Company Retirement Plan") (taken together, the "Pension Plan") or any pension plan spunoff from the Pension Plan for breach of fiduciary duties under Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), that may exist at the Effective Date of this Plan.

Notwithstanding any provision in this Plan to the contrary, the Pension Plan, and any pension plan that may be spun-off from the Pension Plan, may be terminated lawfully only in accordance with the applicable provisions of Title IV of ERISA.

As of the Effective Date: (1) the Debtors will be required to satisfy the minimum funding obligations under ERISA § 302 and Internal Revenue Code § 412 and to pay the statutory insurance premiums under ERISA § 4007, 29 U.S.C. § 1307, with respect to the Babcock & Wilcox Company Retirement Plan.

**11.10    Title to Assets; Discharge of Liabilities.**

Except as otherwise provided in this Plan, on the Effective Date, title to all of the Debtors' assets and properties and interests in property shall vest in the Reorganized Debtors free and clear of all Claims, Equity Interests, Encumbrances, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors.

**11.11    Notice.**

Any notices, requests, and demands required or permitted to be provided under this Plan, in order to be effective, must be in writing (including by facsimile transmission), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made (i) if personally delivered or if delivered by facsimile or courier service, when actually received by the Entity to whom notice is sent or (ii) if deposited with the United States Postal Service (whether actually received or not), at the close of business on the third business day following the day when placed in the mail, postage prepaid, certified or registered with return receipt requested, addressed to the appropriate Entity or Entities, at the address of such Entity or Entities set forth below (or at such other address as such Entity may designate by written notice to all other Entities listed below in accordance with this Section 11.11):

| | |
|---|---|
| **If to the Debtors:** | Kirkland & Ellis LLP<br>153 East 53rd Street<br>New York, NY 10022<br>Attn: Theodore L. Freedman, Esq.<br><br>- and -<br><br>Heller, Draper, Hayden, Patrick & Horn, L.L.C.<br>650 Poydras Street, Suite 2500<br>New Orleans, LA 70130<br>Attn: William H. Patrick, Esq. |
| **With a copy to:** | The Babcock & Wilcox Company<br>1450 Poydras Street, 22nd Floor<br>New Orleans, LA 70112<br>Attn: David L. Keller |
| **If to McDermott Incorporated:** | Jenner & Block LLP<br>One IBM Plaza<br>Chicago, IL 60611<br>Attn: Daniel R. Murray, Esq.<br><br>- and-<br><br>Adams & Reese LLP<br>4500 One Shell Square<br>New Orleans, LA 70139<br>Attn: John M. Duck, Esq. |
| **With a copy to:** | McDermott, Inc.<br>1450 Poydras Street, 22nd Floor<br>New Orleans, LA 70112<br>Attn: Liane K. Hinrichs, Esq. |

| If to the Asbestos Claimants' Committee: | Caplin & Drysdale, Chartered<br>375 Park Avenue, 35th Floor<br>New York, NY 10022-4614<br>Attn: Elihu Inselbuch, Esq.<br><br>- and -<br><br>Caplin & Drysdale, Chartered<br>One Thomas Circle, N.W.<br>Washington, D.C. 20005<br>Attn: Peter Van N. Lockwood, Esq. |
|---|---|
| With a copy to: | Baldwin & Haspel<br>2200 Energy Centre<br>1100 Poydras Street<br>New Orleans, LA 70163<br>Attn: James P. Magee, Esq. |
| If to the Future Claimants' Representative: | Resolutions LLC<br>155 Federal Avenue<br>Boston, MA 02110<br>Attn: Eric D. Green, Esq. |
| With a copy to: | Young Conaway Stargatt & Taylor, LLP<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19801<br>Attn: James L. Patton, Jr., Esq.<br><br>- and -<br><br>Sessions, Fishman & Nathan, L.L.P.<br>201 St. Charles Avenue<br>Suite 3500<br>New Orleans, LA 70170-3500<br>Attn: J. David Forsyth, Esq. |
| If to the Unsecured Creditors' Committee: | Blakeley & Blakeley, L.L.P.<br>650 Town Center Drive<br>6th Floor<br>Costa Mesa, CA 92660<br>Attn: Scott E. Blakeley, Esq. |
| With a copy to: | Steffes, Vingiello & McKenzie<br>3029 South Sherwood Forest Boulevard<br>Suite 100<br>Baton Rouge, Louisiana 70816<br>Attn: William E. Steffes, Esq. |

**11.12    Headings.**

The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

**11.13    Reformation and Severability.**

If any provision of this Plan, the Confirmation Order, the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Asbestos Insurance Entity Injunction, or any of the other Plan Documents is determined to be prohibited, unenforceable, or invalid by a court of competent jurisdiction or any other governmental Entity with appropriate jurisdiction, the Reorganized Debtors, the Trustees of the Asbestos PI Trust, the FCR, and MI shall negotiate in good faith to modify such provision so as to effect the original intent of the Plan Proponents as closely as possible in a mutually acceptable manner in order that the provisions of this Plan and the

other Plan Documents are effected as originally contemplated to the fullest extent possible; provided, however, that if such modification is not possible, such provision shall, as to any jurisdiction in which such provision is prohibited, unenforceable, or invalidated, be ineffective to the extent of such prohibition, unenforceability, or invalidation without invalidating the effectiveness of the remaining provisions of this Plan, the Confirmation Order, the Asbestos PI Channeling Injunction, the Asbestos PD Channeling Injunction, the Asbestos Insurance Entity Injunction, the other Plan Documents or affecting the validity or enforceability of such provision in any other jurisdiction.

### 11.14    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Louisiana, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

### 11.15    Filing of Additional Documents and Amendments to Plan Documents.

On or before the Effective Date, the Debtors, the Asbestos Claimants' Committee, and the Future Claimants' Representative shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, and shall file with the Court such amendments, if any, to existing Plan Documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### 11.16    Compliance with Tax Requirements.

In connection with this Plan, the Debtors, the Reorganized Debtors, and the Asbestos PI Trust will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements.

### 11.17    Exemption from Transfer Taxes.

Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under this Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan shall be exempt from all taxes as provided in such Section 1146(c).

### 11.18    Further Assurances.

The Debtors, the Reorganized Debtors, the Asbestos PI Trust, and all holders of Claims receiving Distributions under this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other action consistent with the terms of this Plan as may be necessary to effectuate the provisions and intent of this Plan, with each such Entity to bear its own costs incurred in connection therewith.

### 11.19    Further Authorizations.

The Plan Proponents, if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan, with each such Entity to bear its own costs in connection therewith.

### 11.20    Deemed Withdrawal of the Plan.

If the Effective Date has not occurred by February 22, 2006, or such other date as may be agreed to by the Plan Proponents, then this Plan shall be deemed withdrawn, and the Plan Proponents shall be restored to the status quo ante that existed before September 28, 2005 with respect to the Third Amended Plan and all proceedings related thereto.

Dated:   January 17, 2006

KIRKLAND & ELLIS LLP

/s/Theodore L. Freedman
John Donley
Theodore L. Freedman
Deanna D. Boll
200 East Randolph Drive
Chicago, IL 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

National Counsel for the Debtors
  and Debtors In Possession

CAPLIN & DRYSDALE, CHTD.

/s/ Elihu Inselbuch
Elihu Inselbuch
Peter Van N. Lockwood
Julie W. Davis
Nathan D. Finch
375 Park Avenue, 35th Floor
New York, NY 10022
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

National Counsel for the
Asbestos Claimants Committee

BALDWIN & HASPEL, LLC

/s/ James P. Magee
James P. Magee (#01203)
Dennis M. Laborde (#17979)
1100 Poydras Street
New Orleans, LA 70163-2200
Telephone: (504) 585-7711
Facsimile: (504) 585-7751

Louisiana Counsel for the Asbestos
Claimants' Committee

JENNER & BLOCK LLP

/s/ Daniel R. Murray
Daniel R. Murray, Esq.
One IBM Plaza
Chicago, IL 60611
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

National Counsel for
McDermott Incorporated

HELLER, DRAPER, HAYDEN,
  PATRICK & HORN, L.L.C.

/s/  Jan M. Hayden
Jan M. Hayden
William H. Patrick, III
Warren Horn
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 568-1888
Facsimile: (504) 522-0949

Louisiana Counsel for the Debtors
  and Debtors In Possession

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP

/s/ Edwin J. Harron
James L. Patton, Jr.
Richard H. Morse
Edwin J. Harron
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
Telephone (302) 571-6600
Facsimile: (302) 571-1253

Counsel to the Legal Representative for
Future Asbestos-Related Claimants

SESSIONS, FISHMAN & NATHAN, LLP

/s/ J. David Forsyth
J. David Forsyth (Bar No. 5719)
201 St. Charles Avenue
Suite 3500
New Orleans, LA 70170
Telephone: (504) 582-1521
Facsimile: (504) 582-1564

Counsel to the Legal Representative for
Future Asbestos-Related Claimants

ADAMS & REESE

/s/ John M. Duck
John M. Duck, Esq.
4500 One Shell Square
New Orleans, LA 70139
Telephone: (504) 585-0226
Facsimile: (504) 566-0210

Louisiana Counsel for
McDermott Incorporated

**<u>EXHIBIT D</u>**
**Final Decree Order**

# EXHIBIT "C"

May. 15. 2006 7:06AM                                    No. 1149 P. 1/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 86 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-1   Filed 01/17/2006   Page 1 of 22

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| In Re: | ) | CIVIL ACTION NO. 00-558 |
|  | ) |  |
| THE BABCOCK & WILCOX COMPANY, | ) | HONORABLE SARAH S. VANCE |
| DEBTOR. | ) | MAGISTRATE ALMA L. CHASEZ |
|  | ) |  |
| Jointly Administered with | ) | FROM BANKRUPTCY CASE NOs. |
|  | ) | (00-10992 - 00-10995) |
| DIAMOND POWER INTERNATIONAL, | ) | Section "R" (5) |
| INC., BABCOCK & WILCOX | ) |  |
| CONSTRUCTION CO., INC., AMERICON, | ) |  |
| INC. | ) |  |
|  | ) |  |

## ORDER CONFIRMING THE JOINT PLAN OF REORGANIZATION AS OF SEPTEMBER 28, 2005, AS AMENDED THROUGH JANUARY 17, 2006, PROPOSED BY THE DEBTORS, THE ASBESTOS CLAIMANTS' COMMITTEE, THE FUTURE ASBESTOS-RELATED CLAIMANTS' REPRESENTATIVE, AND MCDERMOTT INCORPORATED AND ISSUING INJUNCTIONS

This matter is before the Court for entry of an order confirming the Joint Plan of

Reorganization as of September 28, 2005, as amended through January 17, 2006 (and as

thereafter amended), proposed by the Debtors, the Asbestos Claimants' Committee (the "ACC")

the Future Asbestos-Related Claimants' Representative ("FCR"), and McDermott Incorporated

(the "Sept. 28 Plan").[1]

After considering the record of the confirmation hearing held before the Bankruptcy

Court on December 22, 2005, the Bankruptcy Court's Findings of Fact and Conclusions of Law

With Respect to Core Matters and Proposed Findings of Fact and Conclusions of Law With

Respect to Non-Core Matters ("Findings of Fact and Conclusions of Law"), and the Bankruptcy

Court's Order Recommending Confirmation of the Joint Plan of Reorganization as of September

---

[1]     Capitalized terms used herein and not otherwise defined shall have the meanings ascribed
to such terms in the Sept. 28 Plan or Exhibits thereto.

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

May. 15. 2006 7:07AM                                    No. 1149  P. 2/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 87 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-1.   Filed 01/17/2006   Page 2 of 22

28, 2005, as Amended Through December 22, 2005 (And As Thereafter Amended), Proposed by

the Debtors, the Asbestos Claimants' Committee (the "ACC"), the Future Asbestos-Related

Claimants' Representative (the "FCR"), and McDermott Incorporated ("MI"), finding that due

and proper notice of the Motion for Order Confirming the Joint Plan of Reorganization As of

September 28, 2005, As Amended Through November 10, 2005 (With Technical Modifications

As of December 22, 2005) Pursuant to Section 524(g) of the United States Bankruptcy Code has

been given to all parties in interest, it is hereby ordered as follows:

    1.    The record of the Confirmation Hearing, as made before the Bankruptcy Court, is

closed.

    2.    The Bankruptcy Court's proposed Findings of Fact and Conclusions of Law,

including those findings specifically required by Sections 524(g) and 105(a) for implementation

of the injunctions set forth in Paragraphs 32, 35, 37, and 39, are hereby adopted as the findings

and conclusions of this Court pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 52.

This Confirmation Order shall constitute the judgment of this Court pursuant to Fed. R. Civ. P.

58.

    3.    The Sept. 28 Plan is hereby confirmed in its entirety, and each and every

provision contained therein is approved in its entirety. Without limiting the preceding, all

technical modifications to the Sept. 28 Plan are hereby approved in all respects and are

incorporated into the Sept. 28 Plan to the extent that they were not already approved by prior

order of the Bankruptcy Court.

    4.    The holders of impaired Class 5, Class 6, Class 7 and Class 11A Claims have

voted to accept the Sept. 28 Plan in the numbers and amounts required by section 1126(b) of the

Bankruptcy Code. The holders of Class 6 Claims also have voted to accept the Sept. 28 Plan in

May. 15. 2006 7:07AM                                        No. 1149   P. 3/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 88 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-1   Filed 01/17/2006   Page 3 of 22

sufficient numbers to meet the requirements of section 524(g)(2)(B)(ii)(iv)(bb) of the Bankruptcy Code.

5.      All other Classes of Claims are unimpaired under the Sept. 28 Plan and are exclusively presumed to have accepted the Sept. 28 Plan pursuant to section 1126(f) of the Bankruptcy Code.

6.      The Plan Documents as they exist on the record as of the time of the entry of this Confirmation Order, including, without limitation, the documents related to the Asbestos PI Trust, together with all amendments, modifications, and supplements thereto, and all annexes, exhibits, and schedules thereto, and all terms and conditions thereof, are hereby approved.

7.      The Non-Debtor Affiliate Settlement Agreement, in substantially the form attached to the Sept. 28 Plan as Exhibit C, is hereby approved in form and substance. The Debtors are hereby authorized to enter into the Non-Debtor Affiliate Settlement Agreement in substantially such form, as amended and modified in order to complete such document and effect the terms of the Sept. 28 Plan.

8.      All of the objections to the confirmation of the Sept. 28 Plan were withdrawn or overruled prior to or on the record at the Confirmation Hearing, and all objections to confirmation of the Sept. 28 Plan or the entry of this Confirmation Order are hereby overruled.

9.      Except as otherwise provided in this Order, all payments made or to be made by the Debtors, or by any Entity to the extent, if any, that such Entity issues or delivers securities or acquires property under or pursuant to the Sept. 28 Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Sept. 28 Plan and incident to the Chapter 11 Cases, are hereby approved as reasonable.

May. 15. 2006 7:07AM                                    No. 1149   P. 4/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 89 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-1   Filed 01/17/2006   Page 4 of 22

10.    The Effective Date of the Sept. 28 Plan constitutes the date on which the Sept. 28
Plan is substantially consummated, all conditions of the Effective Date set forth in Section 7.13
of the Sept. 28 Plan have been satisfied or waived, and the injunctions set forth in Paragraphs 32,
35, 37, and 39 shall become effective. The Effective Date shall be February 22, 2006, or such
other date as may be agreed upon in writing by the Plan Proponents. Notice of the occurrence of
the Effective Date, specifying the date on which the Effective Date occurred, shall be filed in
both this Court (Civil Action No. 00-558) and the Bankruptcy Court (Case Nos. 00-10992 - 00-
10995) within one day following the occurrence of the Effective Date. If the Effective Date does
not occur pursuant to the terms of the Sept. 28 Plan, the terms of this Confirmation Order and all
Findings of Fact and Conclusions of Law shall be vacated and be null and void, the injunctions
set forth in Paragraphs 32, 35, 37, and 39 shall not become effective, and the Debtors and holders
of Claims and Equity Interests shall stand in the same position in which such Entities would have
stood if this Confirmation Order had not been entered.

11.    The provisions of section 7.12.1 of the Sept. 28 Plan are incorporated herein and
this Court specifically makes the findings and determinations stated therein.

12.    The president, vice president, secretary, treasurer, or any other officer of the
Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments,
settlement agreements, releases, indentures, and other agreements or documents and to take or
direct such actions as may be necessary or appropriate on behalf of the Debtors or Reorganized
Debtors to effectuate and further evidence the terms and conditions of the Sept. 28 Plan and Plan
Documents, all of which are consistent with the Debtors' constituent documents. The secretary
or any other officer of the Debtors shall be authorized to certify or attest to any of the foregoing
actions.

May. 15. 2006  7:07AM                                              No. 1149   P. 5/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 90 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-1   Filed 01/17/2006   Page 5 of 22

13.     All matters provided for under the Sept. 28 Plan involving any corporate action to

be taken by, or required of, the Debtors or the Reorganized Debtors, shall be deemed to have

occurred and be effective as provided in the Sept. 28 Plan, and shall be authorized and approved

in all respects without any requirement for further action by the stockholders or directors of any

such entities. This Confirmation Order constitutes all authority, if any, required by the General

Corporation Law of the State of Delaware, as applicable, and any other applicable business

corporation, trust, and other laws of the applicable Governmental Units with respect to the

implementation and consummation of the Sept. 28 Plan.

14.     On and after the Effective Date and until their respective successors are duly

elected or appointed and qualified, the business and affairs of the Reorganized Debtors will be

managed by the board of directors and officers of the Debtors set forth in the Notice Pursuant to

11 U.S.C. § 1129(a)(5)(A)(i) of Proposed Officers and Directors of the Reorganized Debtors.

15.     On the Effective Date, the Reorganized Debtors, respectively, shall be vested with

all of the assets and property of their former Bankruptcy Estates, free and clear of all Claims,

liens, charges, and other interests of holders of Claims or Equity Interests, except to the extent

specifically provided herein, in another order of this Court or the Bankruptcy Court, in the Sept.

28 Plan, or pursuant to the collateral arrangements entered into by the Reorganized Debtors in

connection with the Exit Financing, and may operate their businesses free of any restrictions

imposed by the Bankruptcy Code.

16.     Except as provided in section 11.4 of the Sept. 28 Plan, as of the Effective Date,

the Asbestos PI Trust shall be empowered to initiate, prosecute, defend, and resolve all legal

actions and other proceedings related to any asset, liability, or responsibility of the Asbestos PI

Trust, including, without limitation, the Asbestos Insurance Rights. Subject to the Sept. 28 Plan

May. 15. 2006 7:07AM                                      No. 1149    P. 6/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 91 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-1   Filed 01/17/2006   Page 6 of 22

and the other Plan Documents, the Asbestos PI Trust shall be responsible for the payment of all

damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred by or

on behalf of the Asbestos PI Trust subsequent to the Effective Date arising from, or associated

with, any legal action or other proceeding that is the subject of this paragraph. The Insurance

Contributors shall be empowered to initiate, prosecute, defend, settle, maintain, administer,

preserve, pursue, and resolve all actions arising from or related to their respective insurance

rights to the extent permitted or required by the Asbestos Insurance Rights Assignment

Agreement and the Sept. 28 Plan. Pursuant to the Sept. 28 Plan and the Asbestos Insurance

Rights Assignment Agreement, at the reasonable direction and request of the Asbestos PI Trust,

and at the expense of the Asbestos PI Trust, an Insurance Contributor, or the Reorganized

Debtors, as applicable, shall pursue any Asbestos Insurance Rights for the benefit of and to the

fullest extent required by the Asbestos PI Trust, by negotiation or, if necessary, by the initiation

and prosecution of all appropriate and necessary legal action to secure such Asbestos Insurance

Rights and shall take such other action as the Asbestos PI Trust may reasonably request,

including granting a security interest in the Asbestos Insurance Rights.

17.     All causes of action which remain property of or are revested in the Reorganized

Debtors pursuant to the Sept. 28 Plan may be pursued or compromised as deemed fit by the

Reorganized Debtors in their sole discretion without need for this Court's approval, and

confirmation of the Sept. 28 Plan does not constitute a discharge or release by the Reorganized

Debtors of any such preserved causes of action.

18.     Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or

exchange of any of the securities issued, transferred, or exchanged under, or the transfer of any

other assets or property pursuant to, or in connection with, the Sept. 28 Plan, or the making or

delivery of an instrument of transfer under, or in connection with, the Sept. 28 Plan shall not be
taxed under any law imposing a stamp tax, transfer tax, or other similar tax.

19.     Upon the satisfaction of the conditions set forth in Article VI of the Non-Debtor
Affiliate Settlement Agreement, the McDermott Consideration shall be transferred to the
Asbestos PI Trust as specified in Section 2.1 of the Non-Debtor Affiliate Settlement Agreement.
The Asbestos PI Trust shall be a "qualified settlement fund" within the meaning of regulations
issued pursuant to section 468B of the IRC. The purpose of the Asbestos PI Trust shall be to,
among other things, assume all Asbestos PI Trust Claims and to use the Asbestos PI Trust Assets
to pay holders of Asbestos PI Trust Claims in accordance with the Asbestos PI Trust Agreement
and the Asbestos PI TDP.

20.     The Asbestos PI Trust shall, subject to the other provisions of the Plan
Documents, receive the McDermott Consideration. Holders of Asbestos PI Trust Claims shall
receive payment in accordance with the Asbestos PI TDP.

21.     The initial trustees of the Asbestos PI Trust shall be Judge James McMonagle,
Phil Pahigian, and Victor Busey. Effective as of the Effective Date, the Trustees shall serve in
accordance with the Asbestos PI Trust Agreement.

22.     The initial members of the Trust Advisory Commitee shall be J. Burton LeBlanc,
Mark C. Meyer, Steven Kazan, Joseph F. Rice, Perry Weitz, Steven D. Wolens, and Peter A.
Kraus. Effective as of the Effective Date, the initial members of the Trust Advisory Committee
shall serve in accordance with the Asbestos PI Trust Agreement.

23.     Eric D. Green shall continue to serve as the FCR on and after the Effective Date
pursuant to Section 6 of the Asbestos PI Trust Agreement unless and until a successor is duly
appointed.

24.     On the Effective Date, Basile Uddo, the Apollo FCR, shall be deemed to have completely fulfilled all of his duties in his capacity as Apollo FCR, and his appointment as Apollo FCR shall automatically terminate as of the Effective Date, without any further action or formality. Nothing in the Sept. 28 Plan, any other Plan Documents, or this Order shall diminish, impair, restrict or discharge the Order on Ex Parte Motion to Provide Administrative Expense Claim and Related Protection to Apollo Future Claimants' Representative signed on September 19, 2003, which shall remain in full force and effect.

25.     Notwithstanding anything to the contrary in the Sept. 28 Plan, any other Plan Documents (including any other provision that purports to be preemptory or supervening), or this Confirmation Order, nothing in any such document shall in any way operate to impair, or have the effect of impairing, the Apollo/Parks Township Insurers'[2] legal, equitable or contractual rights, if any, in any respect. The rights of the Apollo/Parks Township Insurers shall be determined under the Apollo/Parks Township Insurance Policies as interpreted under applicable non-bankruptcy law.

26.     Nothing in the Sept. 28 Plan, the Plan Documents or this Confirmation Order shall preclude any Entity from asserting in any proceeding any and all claims, defenses, rights or causes of action that it has or may have under or in connection with any of the Apollo/Parks Township Insurance Policies. Nothing in the Sept. 28 Plan, the Plan Documents or this Confirmation Order shall be deemed to waive or impair any claims, defenses, rights or causes of action that any Entity has or may have under the provisions, terms, conditions, defenses, and/or

---

[2]     "Apollo/Parks Township Insurers" and "Apollo/Parks Township Insurance Policies" as used in this paragraph and the following paragraph shall have the meanings ascribed to those terms in Article I of the Apollo/Parks Township Settlement Agreement that was Exhibit A to the Third Amended Joint Plan of Reorganization filed on June 25, 2003 With Technical Modifications as of June 21, 2004.

May. 15. 2006 7:08AM                                    No. 1149   P. 9/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 94 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-1   Filed 01/17/2006   Page 9 of 22

exclusions contained in any of the Apollo/Parks Township Insurance Policies. Nothing in the

Sept. 28 Plan, the Plan Documents or this Confirmation Order is intended to or shall be deemed

to be a finding, conclusion, or determination regarding (i) the merits of any one or more of the

Apollo/Parks Township Claims for insurance coverage purposes, (ii) whether any settlement of

any Apollo/Parks Township Claim is reasonable or appropriate for insurance coverage purposes,

or (iii) any issue of fact or law relating to insurance coverage (if any) for any settlement of any

Apollo/Parks Township Claim approved pursuant to Bankruptcy Rule 9019. Nothing in the

Sept. 28 Plan, the Plan Documents or this Confirmation Order is intended to or shall be deemed

to have any preclusive effect (whether by *res judicata*, collateral estoppel or any other doctrine

of preclusion) as against the Apollo/Parks Township Insurers in any proceeding.

27.     Except as specifically provided in the Sept. 28 Plan, the Plan Documents or in this

Confirmation Order, the rights afforded in the Sept. 28 Plan and Plan Documents and the

treatment of all Claims and Equity Interests therein shall be in exchange for and in complete

satisfaction, discharge and release of all Claims, Demands and Equity Interests of any nature

whatsoever, against the Debtors, the Debtors in Possession, and the Reorganized Debtors, or

their assets, properties, or interests in property. Except as otherwise provided in the Sept. 28

Plan, the Plan Documents or in this Confirmation Order, on the Effective Date all Claims against

and Equity Interests in the Debtors, the Debtors in Possession, and the Reorganized Debtors shall

be satisfied, discharged, and released in full. Except as otherwise provided in the Sept. 28 Plan,

the Plan Documents or this Confirmation Order, the Reorganized Debtors shall not be

responsible for any obligations of the Debtors or the Debtors in Possession except those

expressly assumed by the Reorganized Debtors pursuant to the Sept. 28 Plan and the other Plan

Documents and such settlement agreements relating to objections to confirmation as are

expressly approved by this Court, and those claims that pass through the Sept. 28 Plan

unimpaired pursuant to section 3.2.8 therein. To the extent provided in the Sept. 28 Plan and/or

Plan Documents, all Entities shall be precluded and forever barred from asserting, against the

Asbestos PI Trust and the Asbestos Protected Parties, or their assets, properties, or interests in

property any other or further Claims or Demands based upon any act or omission, transaction, or

other activity, event, or occurrence of any kind or nature that occurred prior to the Effective

Date, whether or not the facts of or legal bases therefor were known or existed prior to the

Effective Date, except as expressly provided in the Sept. 28 Plan and Plan Documents or in this

Confirmation Order.

28.     To the extent provided in the Sept. 28 Plan and the other Plan Documents, the

transfer to, vesting in, and assumption by the Asbestos PI Trust of the McDermott Consideration

as contemplated by the Sept. 28 Plan, the Non-Debtor Affiliate Settlement Agreement and the

Asbestos Insurance Rights Assignment Agreement shall, among other things, on the Effective

Date (a) discharge the Debtors and the Reorganized Debtors for and in respect of all Asbestos PI

Trust Claims and (b) release and extinguish all obligations and liabilities of the Released Parties

for and in respect of all Asbestos PI Trust Claims. On the Effective Date, subject to the terms of

the Sept. 28 Plan and the other Plan Documents, the Asbestos PI Trust shall assume all Asbestos

PI Trust Claims and shall evaluate, determine and pay (if and to the extent entitled to payment)

Asbestos PI Trust Claims, in accordance with the Asbestos PI Trust Agreement and the Asbestos

PI TDP.

29.     On and after the Effective Date, the Debtors shall be fully and finally discharged

of any liability or obligation on a Disallowed Claim, and any order creating a Disallowed Claim

which is not a final order as of the Effective Date solely because of an Entity's right to move for

reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a final order on the Effective Date for the purpose of, and shall then be, subject to appeal.

## Injunctions

### *Asbestos PI Channeling Injunction*

30.     In connection with the creation of the Asbestos PI Trust and to supplement the injunctive relief of a discharge under section 524 of the Bankruptcy Code, the Asbestos PI Channeling Injunction, set forth in Paragraph 32 of this Confirmation Order, shall be, and hereby is, issued and approved as of the Effective Date pursuant to sections 105(a) and 524(g) of the Bankruptcy Code. The Asbestos PI Channeling Injunction applies to all Asbestos PI Trust Claims.

31.     The sole recourse of the holder of an Asbestos PI Trust Claim on account of such claim shall be to the Asbestos PI Trust pursuant to the provisions of the Asbestos PI Channeling Injunction, set forth in Paragraph 32 of this Confirmation Order, and the Asbestos PI Trust Distribution Procedures and such holder shall have no right whatsoever at any time to assert its Asbestos PI Trust Claim against the Debtors, Reorganized Debtors, any other Asbestos Protected Party, any Settling Asbestos Insurance Entity, or any property or interest in property of the Debtors, the Reorganized Debtors, or any other Asbestos Protected Party. The definitions of Debtors, Reorganized Debtors, Asbestos Protected Parties, and Settling Asbestos Insurance Entities are found in the Sept. 28 Plan and reproduced in Exhibit A hereto.

32.     Without limiting the foregoing, from and after the Effective Date, all holders of Asbestos PI Trust Claims shall be permanently and forever enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving

May. 15. 2006 7:08AM                                                      No. 1149   P. 12/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 97 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-1   Filed 01/17/2006   Page 12 of 22

payment of, on, or with respect to any Asbestos PI Trust Claims other than from the Asbestos PI

Trust in accordance with the Asbestos PI Trust Distribution Procedures, including:

    (a)    commencing, conducting, or continuing in any manner, directly or indirectly, any

    suit, action, or other proceeding (including a judicial, arbitration, administrative,

    or other proceeding) in any forum against or affecting any Asbestos Protected

    Party, any Settling Asbestos Insurance Entity, or any property or interests in

    property of any Asbestos Protected Party or Settling Asbestos Insurance Entity;

    (b)    enforcing, levying, attaching (including any prejudgment attachment), collecting,

    or otherwise recovering by any means or in any manner, whether directly or

    indirectly, any judgment, award, decree, or other order against any

    Asbestos Protected Party, any Settling Asbestos Insurance Entity, or any property

    or interests in property of any Asbestos Protected Party or Settling Asbestos

    Insurance Entity;

    (c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly,

    any Encumbrance against any Asbestos Protected Party, any Settling Asbestos

    Insurance Entity, or any property or interests in property of any

    Asbestos Protected Party or Settling Asbestos Insurance Entity;

    (d)    setting off, seeking reimbursement of, contribution from, or subrogation against,

    or otherwise recouping in any manner, directly or indirectly, any amount against

    any liability owed to any Asbestos Protected Party, any Settling Asbestos

    Insurance Entity, or any property or interests in property of any Asbestos

    Protected Party or Settling Asbestos Insurance Entity; and

(e)     proceeding in any manner in any place with regard to any matter that is subject to

resolution pursuant to the Asbestos PI Trust, except in conformity and compliance

therewith.

Except as provided in the Sept. 28 Plan, the Non-Debtor Affiliate Settlement Agreement,

or this Confirmation Order, nothing contained in the Sept. 28 Plan or this Confirmation Order

shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors, the

Reorganized Debtors, or the Asbestos PI Trust may have against any Entity in connection with or

arising out of or related to an Asbestos PI Trust Claim, all of which claims, rights, or causes of

action are reserved.

### *Asbestos PD Channeling Injunction*

33.     The Asbestos PD Channeling Injunction, set forth in Paragraph 35 of this

Confirmation Order, shall be, and hereby is, issued and approved as of the Effective Date

pursuant to section 105(a) of the Bankruptcy Code. The Asbestos PD Channeling Injunction

applies to all Class 7 Claims.

34.     The sole recourse of the holder of a Class 7 Claim on account of such Class 7

Claim shall be to the Reorganized Debtors pursuant to the provisions of the Asbestos PD

Channeling Injunction, set forth in Paragraph 35 of this Confirmation Order, and the Sept. 28

Plan, and such holder shall have no right whatsoever at any time to assert its Class 7 Claim

against any other Asbestos Protected Party, any Settling Asbestos Insurance Entity, the Asbestos

PI Trust, or any property or interest in property of the Debtors, the Reorganized Debtors, or any

other Asbestos Protected Party. The definitions of Debtors, Reorganized Debtors, Asbestos

Protected Parties, and Settling Asbestos Insurance Entities are found in the Sept. 28 Plan and

reproduced in Exhibit A hereto.

May. 15. 2006 7:08AM                                         No. 1149   P. 14/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 99 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-1   Filed 01/17/2006   Page 14 of 22

35.    Without limiting the foregoing, from and after the Effective Date, all holders of

Class 7 Claims shall be permanently and forever enjoined from taking any of the following

actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of,

on, or with respect to any Class 7 Claim other than from the Reorganized Debtors, including:

(a)    commencing, conducting, or continuing in any manner, directly or indirectly, any

suit, action, or other proceeding (including a judicial, arbitration, administrative,

or other proceeding) in any forum against or affecting any Asbestos Protected

Party (other than the Reorganized Debtors), any Settling Asbestos Insurance

Entity, the Asbestos PI Trust, or any property or interests in property of any

Asbestos Protected Party or Settling Asbestos Insurance Entity;

(b)    enforcing, levying, attaching (including any prejudgment attachment), collecting,

or otherwise recovering by any means or in any manner, whether directly or

indirectly, any judgment, award, decree, or other order against any

Asbestos Protected Party (other than the Reorganized Debtors), any Settling

Asbestos Insurance Entity, the Asbestos PI Trust, or any property or interests in

property of any Asbestos Protected Party or Settling Asbestos Insurance Entity;

(c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly,

any Encumbrance against any Asbestos Protected Party (other than the

Reorganized Debtors), any Settling Asbestos Insurance Entity, the Asbestos PI

Trust, or any property or interests in property of any Asbestos Protected Party or

Settling Asbestos Insurance Entity;

(d)    setting off, seeking reimbursement of, contribution from, or subrogation against,

or otherwise recouping in any manner, directly or indirectly, any amount against

> any liability owed to any Asbestos Protected Party (other than the Reorganized
> Debtors), any Settling Asbestos Insurance Entity, the Asbestos PI Trust, or any
> property or interests in property of any Asbestos Protected Party or Settling
> Asbestos Insurance Entity; and

(e)   proceeding in any other manner with regard to any matter involving one or more
      Class 7 Claims except in conformity and compliance with the Sept. 28 Plan.

Except as provided in the Sept. 28 Plan, the Non-Debtor Affiliate Settlement Agreement,
or this Confirmation Order, nothing contained in the Sept. 28 Plan or this Confirmation Order
shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors or
the Reorganized Debtors may have against any Entity in connection with or arising out of or
related to a Class 7 Claim, all of which claims, rights, or causes of action are reserved.

### *Asbestos Insurance Entity Injunction*

36.   In order to protect the Asbestos PI Trust and to preserve its assets, as described in
Section 7.4.2 of the Sept. 28 Plan, the Asbestos Insurance Entity Injunction, set forth in
Paragraph 37 of this Confirmation Order, shall be, and hereby is, issued and approved as of the
Effective Date pursuant to the equitable jurisdiction and power of this Court under Section
105(a) of the Bankruptcy Code; provided, however, that, except as otherwise provided in this
Confirmation Order or any Asbestos PI Settlement Agreement, (i) the Asbestos Insurance Entity
Injunction shall not impair in any way the Insurer Misconduct Actions; (ii) the Asbestos PI Trust
shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope
of, the Asbestos Insurance Entity Injunction with respect to any Asbestos Insurance Entity upon
express written notice to such Asbestos Insurance Entity; and (iii) the Asbestos Insurance Entity

Injunction is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos

Insurance Entity is a third-party beneficiary of the Asbestos Insurance Entity Injunction.

37.    Subject to the provisions of Sections 7.3 and 7.4.1 of the Sept. 28 Plan and

Paragraph 43 of this Confirmation Order, from and after the Effective Date, all Entities (not

including the Asbestos PI Trust, the Asbestos Insurance Entities, the Reorganized Debtors and

the Insurance Contributors) that have held or asserted, that hold or assert, or that may in the

future hold or assert any Claim, Demand or cause of action (including any Asbestos PI Trust

Claim or any Claim or Demand for or respecting any Trust Expenses) against any Asbestos

Insurance Entity, as this term is defined in the Sept. 28 Plan and includes, among others, the

Settling Asbestos Insurance Entities that are listed on Exhibit A hereto, based upon, relating to,

arising out of, or in any way connected with any Claim, Demand, Asbestos PI Insurance Rights,

Subject Asbestos Insurance Policies, or Subject Asbestos Insurance Settlement Agreements

whenever and wherever arisen or asserted (including all Claims in the nature of or sounding in

tort, or under contract, warranty, or any other theory of law, equity, or admiralty) shall be

enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or

receiving payments, satisfaction, or recovery with respect to any such Claim, Demand, or cause

of action, including:

     (a)    commencing, conducting, or continuing, in any manner, directly or indirectly, any

suit, action, or other proceeding of any kind (including a judicial, arbitration,

administrative, or other proceeding) in any forum with respect to any such Claim,

Demand, or cause of action against any Asbestos Insurance Entity, or against the

property of any Asbestos Insurance Entity, with respect to any such Claim,

Demand, or cause of action;

- 16 -

May. 15. 2006  7:09AM                                                    No. 1149   P. 17/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 102 of 135
Case 2:00-cv-00558-SSV-ALC    Document 192-1    Filed 01/17/2006    Page 17 of 22

(b)    enforcing, levying, attaching, collecting, or otherwise recovering, by any means
       or in any manner, whether directly or indirectly, any judgment, award, decree, or
       other order against any Asbestos Insurance Entity, or against the property of any
       Asbestos Insurance Entity, with respect to any such Claim, Demand, or cause of
       action;

(c)    creating, perfecting, or enforcing in any manner, directly or indirectly, any
       encumbrance against any Asbestos Insurance Entity, or the property of any
       Asbestos Insurance Entity, with respect to any such Claim, Demand, or cause of
       action; and

(d)    except as otherwise specifically provided in the Sept. 28 Plan, asserting or
       accomplishing any setoff, right of subrogation, indemnity, contribution, or
       recoupment of any kind, directly or indirectly, against any obligation of any
       Asbestos Insurance Entity, or against the property of any Asbestos Insurance
       Entity, with respect to any such Claim, Demand or cause of action;

provided, however, that except as otherwise provided in this Confirmation Order or any Asbestos
PI Settlement Agreement, (i) the Asbestos Insurance Entity Injunction, set forth in this Paragraph
37, shall not impair in any way the Insurance Misconduct Actions; (ii) the Asbestos PI Trust
shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope
of, the Asbestos Insurance Entity Injunction with respect to any Asbestos Insurance Entity upon
express written notice to such Asbestos Insurance Entity; and (iii) the Asbestos Insurance Entity
Injunction is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos
Insurance Entity is a third-party beneficiary of the Asbestos Insurance Entity Injunction.

38.     Notwithstanding anything to the contrary above, the Asbestos Insurance Entity
Injunction, set forth in Paragraph 37 of this Confirmation Order shall not enjoin:

(a)     the rights of Entities to the treatment accorded them under Articles 2 and 3 of the
Sept. 28 Plan, as applicable, including the rights of Entities with Asbestos PI
Trust Claims or Class 7 Claims to assert such Asbestos PI Trust Claims or Class 7
Claims against the Asbestos PI Trust or the Reorganized Debtors, as applicable, in
accordance with the Asbestos PI Trust Distribution Procedures or the Asbestos
PD Channeling Injunction and the terms of the Sept. 28 Plan;

(b)     the rights of Entities to assert any Claim, debt, obligation, or liability for payment
of Trust Expenses against the Asbestos PI Trust;

(c)     the rights of the Asbestos PI Trust and the Reorganized Debtors and the Insurance
Contributors (to the extent permitted or required under the Sept. 28 Plan or the
Asbestos Insurance Rights Assignment Agreement) to prosecute any action based
on or arising from Asbestos PI Insurance Rights;

(d)     the rights of the Asbestos PI Trust and the Reorganized Debtors to assert any
claim, debt, obligation, or liability for payment against an Asbestos Insurance
Entity based on or arising from Asbestos PI Insurance Rights; and

(e)     the rights of Entities to assert any claim, debt, right, obligation, or liability that (i)
arises under or relates to any insurance policy that is not a Subject Asbestos
Insurance Policy, (ii) has not been released or otherwise extinguished by a Subject
Insurance Settlement Agreement, and (iii) is not subject to the Asbestos PI
Channeling Injunction, set forth in Paragraph 32 of this Confirmation Order

- 18 -

May. 15. 2006 7:09AM                                              No. 1149   P. 19/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 104 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-1   Filed 01/17/2006   Page 19 of 22

and/or the Asbestos PD Channeling Injunction, set forth in Paragraph 35 of this

Confirmation Order.

**Other Injunctions**

39.     In accordance with section 346 of the Bankruptcy Code, for purposes of any state

or local law imposing a tax, income will not be realized by the Debtors or Reorganized Debtors

by reason of forgiveness or discharge of indebtedness resulting from the consummation of the

Sept. 28 Plan. As a result, each state or local taxing authority that was provided with or is

chargeable with notice of this proceeding is permanently enjoined, after the Confirmation Date,

from commencing, continuing, or taking any act to impose, collect, or recover in any manner any

tax against the Debtors or Reorganized Debtors arising by reason of the forgiveness or discharge

of indebtedness under the Sept. 28 Plan.

**Other Provisions Relating To Injunctions**

40.     All of the injunctions and/or automatic stays provided for, in or in connection

with the Chapter 11 Cases, whether pursuant to sections 105 and 362 of the Bankruptcy Code, or

any other provision of the Bankruptcy Code or other applicable law, in existence immediately

prior to the Confirmation Date shall remain in full force and effect until the injunctions

contemplated by the Sept. 28 Plan and set forth in Paragraphs 32, 35, 37, and 39 become

effective subject to Paragraph 43 hereof. In addition, on and after the Confirmation Date, the

Reorganized Debtors may seek such further orders as they may deem necessary or appropriate to

preserve the status quo during the time between the Confirmation Date and the Effective Date.

41.     Each of the injunctions contemplated by the Sept. 28 Plan and set forth in

Paragraphs 32, 35, 37, and 39 of this Confirmation Order shall become effective on the Effective

Date and shall continue in effect at all times thereafter except as otherwise provided by the Sept. 28 Plan or herein.

42.    Notwithstanding anything to the contrary contained in the Sept. 28 Plan, all actions in the nature of those to be enjoined by the injunctions set forth in Paragraphs 32, 35, 37, and 39 shall be enjoined during the period between the Confirmation Date and the Effective Date.

## Other Provisions

43.    Notwithstanding any other provision of the Sept. 28 Plan or this Confirmation Order to the contrary (other than this Paragraph 43), nothing in the Sept. 28 Plan or this Confirmation Order shall have the effect of (i) limiting or prejudicing in any way the rights of Citgo Petroleum Corporation and its subrogated insurers ("Citgo"), PDV Midwest Refining L.L.C. ("PDVMR") or Lloyd's Intervenors as identified in that certain Joint Stipulation and Accord among those parties, The Babcock & Wilcox Company ("B&W"), McDermott International, Inc., and other McDermott Entities dated December 21, 2005, (the "Joint Stipulation"), as approved by the Bankruptcy Court on December 22, 2005, or (ii) precluding or hindering Citgo, PDVMR or Lloyd's Intervenors from pursuing claims against the Reorganized Debtors, any of their insurers or any third parties as set forth in the Joint Stipulation. Without limiting the generality of the foregoing, (A) any and all rights of Citgo, PDVMR and Lloyd's Intervenors against insurers or under insurance policies relating to their respective claims asserted in or arising out of the litigation styled *Citgo Petroleum Corp., et al. v. McDermott Int'l, Inc., et al.,* Cause No. 03-L 009812 and pending before the Circuit Court of Cook County, Illinois (the "Illinois Lawsuit," and the claims of Citgo, PDVMR and Lloyd's Intervenors asserted therein or arising therefrom, the "Illinois Lawsuit Claims"), are hereby fully preserved

May. 15. 2006  7:09AM                                    No. 1149    P. 21/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 106 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-1   Filed 01/17/2006   Page 21 of 22

(subject to the Joint Stipulation) and shall not under any circumstances be deemed enjoined,

discharged or modified in any way by the terms of the Sept. 28 Plan or this Confirmation Order

and (B) notwithstanding the Sept. 28 Plan or this Confirmation Order or any of the injunctions

contemplated by the Sept. 28 Plan or set forth in Paragraphs 32, 35, 37, and 39 of this

Confirmation Order, B&W and the other Reorganized Debtors may be pursued as defendants in

the Illinois Lawsuit with respect to the Illinois Lawsuit Claims pursuant to the terms of the Joint

Stipulation, and Citgo, PDVMR and Lloyd's Intervenors may pursue any and all of their rights

under the applicable insurance policies of B&W and the Reorganized Debtors consistent with the

terms of the Joint Stipulation. Nothing in this Confirmation Order, the Sept. 28 Plan or the Joint

Stipulation shall constitute or be deemed a release of any entity which has provided,

underwritten, issued or subscribed to any of the policies relating to or covering the Illinois

Lawsuit Claims with respect to such entity's obligations under such policies, which policies are

referenced in the Joint Stipulation. This Paragraph 43 shall not reduce, limit or eliminate the

effects of the Asbestos PI Channeling Injunction, set forth in Paragraph 32 of this Confirmation

Order, the Asbestos Insurance Entity Injunction, set forth in Paragraph 37 of this Confirmation

Order, and/or the Asbestos PD Channeling Injunction, set forth in Paragraph 35 of this

Confirmation Order with respect to any Asbestos PI Trust Claim or Class 7 Claim under or

against any Subject Asbestos Insurance Policy or any Settling Asbestos Insurance Entity.

     44.    Upon the Effective Date, the Asbestos PI Trust shall be bound by the terms of the

Certain Law Firms' Settlement Agreement dated as of December 22, 2005, and the trustees of

the Asbestos PI Trust shall execute an assumption and acknowledgment of the Asbestos PI

Trust's obligations under the Certain Law Firms' Settlement Agreement.

May. 15. 2006  7:09AM                                No. 1149   P. 22/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 107 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-1   Filed 01/17/2006   Page 22 of 22

45.     Except for executory contracts that the Debtors reject prior to the Effective Date

or designate as being subject to rejection in connection with the Effective Date, as set forth in

section 8.1 of the Sept. 28 Plan, and in accordance with section 1123(b)(2) of the Bankruptcy

Code, all executory contracts and unexpired leases not previously assumed by the Debtors

pursuant to section 365 of the Bankruptcy Code shall be deemed to have been assumed by the

Reorganized Debtors on the Effective Date, provided that nothing in Article 8 of the Sept. 28

Plan shall (1) constitute a reinstatement, continuation or assumption of any warranty provision,

guaranty or any other contractual or other obligation, Demand or Claim by the Reorganized

Debtors to the extent that the Claim, Demand or obligation constitutes an Asbestos Property

Damage Claim, an Asbestos Personal Injury Claim, an Indirect Asbestos PI Claim, an Indirect

Asbestos PD Claim, or an Apollo/Parks Township Claim or (2) limit, restrict or otherwise impair

the releases afforded to the MII Indemnified Parties that are granted elsewhere in the Sept. 28

Plan or other Plan Documents.

46.     Professionals or other Entities requesting compensation or reimbursement of

expenses pursuant to sections 327, 328, 330, 331, and 503(b) of the Bankruptcy Code (including

compensation requested pursuant to section 503(b)(3) and (4) of the Bankruptcy Code by any

professional or other Entity for making a substantial contribution in the Chapter 11 Cases) must

file and serve on the Reorganized Debtors and on such Entities who are designated by the

Bankruptcy Rules an application for final allowance of compensation and reimbursement of

expenses no later than forty-five (45) days after the last date of the calendar month in which the

Effective Date occurs.

47.     Holders of Administrative Expense Claims based on obligations incurred by the

Debtors in the ordinary course of their businesses shall not be required to file or serve any

request for payment of such Claims and, to the extent such Administrative Expense Claims are due and owing, they shall be paid in full by the Debtors or such obligations shall be performed by the Reorganized Debtors, when due in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, if any.

48.     If the rejection of an executory contract or unexpired lease pursuant to section 8.1 of the Sept. 28 Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claims shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, their respective successors or their respective properties unless a Proof of Claim is filed on or before the later to occur of: (a) thirty (30) days after the date of entry of an order approving such rejection; or (b) thirty (30) days after the Effective Date of the Sept. 28 Plan. Objections to Claims filed as a result of the rejection of an executory contract or unexpired lease may be filed by the Reorganized Debtors within such reasonable period of time as the Court may order.

49.     Except as otherwise provided in this Confirmation Order or the Sept. 28 Plan, all Claims shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, their respective successors, or their respective properties.

50.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have jurisdiction in accordance with the Sept. 28 Plan and the other Plan Documents. The Bankruptcy Court shall also retain and have jurisdiction over the adversary proceeding captioned *Babcock & Wilcox Company v. McGriff Seibels & Williams, Inc. et al*, Adv. No. 05-01225, E.D. La. Bankr., filed Sept. 1, 2005.

May. 15. 2006  7:09AM                                                                No. 1149   P. 24/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 109 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-2   Filed 01/17/2006   Page 2 of 24

51.     The Asbestos PI Trust shall be subject to the continuing jurisdiction of the

Bankruptcy Court in accordance with the requirements of section 468B of the IRC and the

regulations issued pursuant thereto.

52.     None of the Reorganized Debtors, the Debtors, the Non-Debtor Subsidiaries, the

Non-Debtor Affiliates, the MII Indemnified Parties, the Trustees of the Asbestos PI Trust, the

Asbestos Claimants' Committee, the Unsecured Creditors' Committee, the Future Claimants'

Representative, the Apollo FCR or any of their respective Representatives are to have or incur

any liability to any Entity for any act or omission in connection with or arising out of the

negotiation of the Sept. 28 Plan or the settlement provided in the Non-Debtor Affiliate

Settlement Agreement, the pursuit of confirmation of the Sept. 28 Plan, the consummation of the

Sept. 28 Plan or the settlement provided in the Non-Debtor Affiliate Settlement Agreement, or

the administration of the Sept. 28 Plan or the property to be distributed under the Sept. 28 Plan

(including any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and

liabilities based on conduct that constituted or may have constituted ordinary or gross negligence

or reckless, willful, or wanton misconduct – but not, in the case of any natural person included

among the Entities to which Section 11.7 of the Sept. 28 Plan applies, any claims against that

person based on intentional misconduct of that person that directly resulted in the unjust

enrichment of that person – of any of the Debtors, the Non-Debtor Subsidiaries, the Non-Debtor

Affiliates, the MII Indemnified Parties, the Trustees of the Asbestos PI Trust, the Asbestos

Claimants' Committee, the Unsecured Creditors' Committee, the Future Claimants'

Representative, the Apollo FCR or any of their respective Representatives or any conduct for

which any of those Entities may be deemed to have strict liability under any applicable law). In

May. 15. 2006  7:10AM                                                          No. 1149    P. 25/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 110 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-2   Filed 01/17/2006   Page 3 of 24

all respects, they will be entitled to rely upon the advice of counsel with respect to their duties
and responsibilities under the Sept. 28 Plan.

53.     Except as otherwise specifically provided in the Sept. 28 Plan, on and after the
Effective Date, and subject to Paragraph 43 hereof, each holder of a Claim (i) who has accepted
the Sept. 28 Plan, or (ii) who is entitled to receive a Distribution of property under the Sept. 28
Plan shall be deemed to have unconditionally released the Debtors, the Reorganized Debtors, the
Unsecured Creditors' Committee, the Asbestos Claimants' Committee, the Future Claimants'
Representative, the Non-Debtor Affiliates, the MII Indemnified Parties, and the Apollo FCR
from any and all claims (as defined in Section 101(5) of the Bankruptcy Code), obligations,
rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or
unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that
such Entity would have been legally entitled to assert (whether individually or collectively),
based in whole or in part upon any act or omission, transaction, agreement, event, or other
occurrence taking place on or before the Effective Date in any way relating or pertaining to, the
Debtors or the Reorganized Debtors, the Chapter 11 Cases, or the negotiation, formulation, and
preparation of the Sept. 28 Plan or any related agreements, instruments, or other documents
(including any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and
liabilities based on conduct that constituted or may have constituted ordinary or gross negligence
or reckless, willful, or wanton misconduct of any of the Debtors, the Reorganized Debtors, the
Non-Debtor Subsidiaries, the Non-Debtor Affiliates, the MII Indemnified Parties, the Trustees of
the Asbestos PI Trust, the Asbestos Claimants' Committee, the Unsecured Creditors' Committee,
the Future Claimants' Representative, the Apollo FCR, or any of their respective Representatives

- 25 -

or any conduct for which any of those Entities may be deemed to have strict liability under any applicable law).

54.   Effective as of the Effective Date, except as otherwise provided in this Confirmation Order, the MII Indemnified Parties and the Non-Debtor Subsidiaries shall be released from all claims to the extent provided in the Sept. 28 Plan and the Non-Debtor Affiliate Settlement Agreement.

55.   Effective as of the Effective Date, the Asbestos PI Trust and the Reorganized Debtors shall have all of the obligations to indemnify the MII Indemnified Parties pursuant to and in accordance with the Non-Debtor Affiliate Settlement Agreement.

56.   On the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable it to implement effectively: (a) the provisions of the Sept. 28 Plan; and (b) the creation of the Asbestos PI Trust.

57.   On the Effective Date, the ACC and the Unsecured Creditors' Committee shall be released and discharged as provided in section 11.6 of the Sept. 28 Plan.

58.   On or before the Effective Date, all fees payable pursuant to 28 U.S.C. § 1930(a)(6), will be paid by the applicable Debtors or Reorganized Debtors. All fees payable pursuant to 28 U.S.C. § 1930(a)(6) will thereafter be paid by the Reorganized Debtors in accordance with applicable law until the Chapter 11 Cases are converted, dismissed, closed or final decreed pursuant to 11 U.S.C. § 350. In addition, the Reorganized Debtors shall file any and all post-confirmation reports in accordance with Bankruptcy Rule 2015, the United States trustee guidelines and any other applicable law.

May. 15. 2006  7:10AM                                              No. 1149   P. 27/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 112 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-2   Filed 01/17/2006   Page 5 of 24

59.    Except as otherwise expressly provided in the Sept. 28 Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty, or late charge arising after the Petition Date shall be Allowed on any Claim or Equity Interest.

60.    No attorneys' fees, Non-Compensatory Damages, penalties, or interest shall be paid with respect to any Claim or Equity Interest except as Allowed by a Final Order of the Bankruptcy Court or in accordance with the terms of the Asbestos PI TDP.

61.    On or before the Effective Date, the applicable Debtors, Reorganized Debtors and their respective subsidiaries are authorized to enter into agreements and other documents evidencing the Exit Financing and to grant liens and security interests in substantially all of their assets to the applicable secured parties as contemplated by such agreements and documents, and such agreements, documents, liens and security interests are hereby approved. All fees, costs and expenses paid or to be paid by B&W to Credit Suisse and the other agents and lenders in connection with the Exit Financing are hereby ratified and approved. In the event any of the agreements and other documents evidencing the Exit Financing are entered into by the Debtors prior to the Effective Date, they shall be deemed assumed by the Reorganized Debtors as of the Effective Date. Notwithstanding anything in the Sept. 28 Plan to the contrary, the Bankruptcy Court's retention of jurisdiction pursuant to this Confirmation Order shall not extend to the enforcement of the agreements and other documents evidencing the Exit Financing or ancillary thereto or any rights or remedies relating thereto after the Effective Date.

62.    The failure to reference or discuss any particular provision of the Sept. 28 Plan in this Confirmation Order shall have no effect on the validity, binding effect, and enforceability of such provision and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Sept. 28 Plan.

63.     Unless this Confirmation Order is stayed pending appeal, its reversal or modification shall not affect the validity of the Sept. 28 Plan, the Plan Documents, or any other agreement, document, instrument, or action authorized by this Confirmation Order or under the Sept. 28 Plan as to the Debtors, Reorganized Debtors, the Asbestos PI Trust or any other Entity acting in good faith, whether or not that Entity knows of the appeal.

64.     Notwithstanding any closing of the Chapter 11 Cases, any of the Debtors, the Reorganized Debtors, the Asbestos PI Trust, the Trust Advisory Committee, or the FCR may move, on notice to those persons on the Bankruptcy Rule 2002 Service List, to reopen the Chapter 11 Cases for the purpose of seeking relief pursuant to the retained jurisdiction of the Bankruptcy Court provided herein, in the Sept. 28 Plan or under applicable law.

65.     In the event of any inconsistency between the Sept. 28 Plan and any other agreement, instrument, or document intended to implement the provisions of the Sept. 28 Plan, the provisions of the Sept. 28 Plan shall govern unless otherwise expressly provided for in such agreements, instruments or documents or this Confirmation Order. In the event of any inconsistency between and/or among the Sept. 28 Plan and this Confirmation Order, the provisions of this Confirmation Order shall govern. This Confirmation Order shall supersede any orders of this Court and the Bankruptcy Court issued prior to the Effective Date that may be inconsistent herewith.

### Insurer-Specific Provisions

#### *Provisions Relating to Settling Asbestos Insurance Entities*

66.     Certain Asbestos Insurance Entities have entered into settlement agreements with the Debtors, which have been approved by the Bankruptcy Court by Final Order. Those approved settlements satisfy the requirements for such settling insurers to be Settling Asbestos

Insurance Entities as defined in the Sept. 28 Plan because such settlement agreements: (a) are

sufficiently comprehensive to warrant treatment under Section 524(g) of the Bankruptcy Code in

the case of Asbestos PI Trust Claims or to warrant treatment under Section 105 of the

Bankruptcy Code in the case of Class 7 Claims, and (b) such settling insurers have been listed on

the schedule of Settling Asbestos Insurance Entities that is part of Exhibit A attached hereto.

      67.     Certain other Asbestos Insurance Entities have entered into settlement agreements

with the Debtors, which are pending final execution and/or approval by Final Order of the

Bankruptcy Court and/or the Ontario Superior Court of Justice (Commercial List) in the Matter

of Babcock & Wilcox Canada (Court File No. 00-CL-3667). Subject to, and conditioned on,

such final execution and final court approvals, those settlement agreements will satisfy the

requirements for those settling insurers to be Settling Asbestos Insurance Entities as defined in

the Sept. 28 Plan because such settlement agreements: (a) are sufficiently comprehensive to

warrant treatment under Section 524(g) of the Bankruptcy Code in the case of Asbestos PI Trust

Claims or to warrant treatment under Section 105 of the Bankruptcy Code in the case of Class 7

Claims, and (b) such insurers have been listed on the schedule of Settling Asbestos Insurance

Entities that is part of Exhibit A attached hereto.

      68.     Accordingly, the Entities identified on the Schedule of Settling Asbestos

Insurance Entities that is part of Exhibit A attached hereto, are Settling Asbestos Insurance

Entities (subject to any limitations and conditions identified thereon), entitled to all rights,

protections, and benefits provided to Settling Asbestos Insurance Entities under the Sept. 28

Plan, including any and all rights, protections and benefits provided to Settling Asbestos

Insurance Entities under the Asbestos PI Channeling Injunction, set forth in Paragraph 32 of this

May. 15. 2006 7:10AM                                                                No. 1149    P. 30/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 115 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-2   Filed 01/17/2006   Page 8 of 24

Confirmation Order, the Asbestos PD Channeling Injunction, set forth in Paragraph 35 of this

Confirmation Order, and the Asbestos Insurance Entity Injunction, set forth in Paragraph 37 of

this Confirmation Order.

69.    No ruling, proceeding or other matter in connection with the Sept. 28 Plan or the

Chapter 11 Cases will impair, affect or modify the rights and obligations under any Asbestos PI

Insurance Settlement Agreement of any party thereto.

### *Provisions Relating to Travelers Settlement Agreement[3]*

70.    The Asbestos PI Channeling Injunction, set forth in Paragraph 32 of this

Confirmation Order, applies in full to Travelers with respect to Asbestos PI Trust Claims.

Travelers is entitled to all of the benefits of the Asbestos PI Channeling Injunction, the Asbestos

PD Channeling Injunction, set forth in Paragraph 35 of this Confirmation Order, and the

Asbestos Insurance Entity Injunction, set forth in Paragraph 37 of this Confirmation Order.

71.    The Asbestos PD Channeling Injunction applies in full to Travelers with respect

to Class 7 Claims.

72.    Consistent with Sections 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this

Confirmation Order, none of the B&W/McDermott Parties, the ACC, the FCR and the Asbestos

PI Trust may seek to terminate, or reduce or limit the scope of, the Asbestos PI Channeling

Injunction, the Asbestos PD Channeling Injunction, or the Asbestos Insurance Entity Injunction

with respect to Travelers.

---

[3] Capitalized terms in Paragraphs 70 through 72 not defined herein or in the Sept. 28 Plan have
the meanings ascribed thereto in the Settlement Agreement and Release between the
B&W/McDermott Parties, the ACC, the FCR and Travelers, which was approved by the
Bankruptcy Court on October 27, 2004 (the "Travelers Settlement Agreement").

## *Provisions Relating to the ACE Settlement Agreement*[4]

73.      The Asbestos PI Channeling Injunction, set forth in Paragraph 32 of this
Confirmation Order, applies in full to and for the benefit of the ACE Companies and their
Predecessors with respect to Asbestos PI Trust Claims.

74.      The Asbestos PD Channeling Injunction, set forth in Paragraph 35 of this
Confirmation Order, applies in full to and for the benefit of ACE Companies and their
Predecessors with respect to Class 7 Claims.

75.      The ACE Companies shall have the right to enforce the Asbestos Insurance Entity
Injunction, set forth in Paragraph 37 of this Confirmation Order with respect to the ACE
Companies and their Predecessors.

76.      The ACE Parties (other than the ACE Companies) shall have the right to enforce
the Asbestos Insurance Entity Injunction with respect to the ACE Parties and their Predecessors,
but only with respect to insurance policies and the Prior Agreements under which (and only to
the extent to which) such ACE Parties and their Predecessors are released pursuant to the ACE
Settlement Agreement.

---

[4] Capitalized terms in Paragraphs 73 through 79 not defined herein or in the Sept. 28 Plan have
the meanings ascribed thereto in the Settlement Agreement and Release between the
B&W/McDermott Parties (other than the Asbestos PI Trust), the ACC, the FCR, and the ACE
Parties (the "ACE Settlement Agreement"), which was approved by the Bankruptcy Court on
December 28, 2005.

May. 15. 2006 7:11AM                                                    No. 1149   P. 32/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 117 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-2   Filed 01/17/2006   Page 10 of 24

77.     Consistent with Sections 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this

Confirmation Order, none of the B&W/McDermott Parties, the ACC, or the FCR may seek to

terminate, or reduce or limit the scope of the Asbestos PI Channeling Injunction or the Asbestos

Insurance Entity Injunction with respect to (i) the ACE Companies and their Predecessors, or (ii)

the ACE Parties (other than the ACE Companies) and their Predecessors but only with respect to

the insurance policies and the Prior Agreements under which (and only to the extent to which)

such ACE Parties and their Predecessors are released pursuant to the ACE Settlement

Agreement.

78.     Except as released and/or modified in the ACE Settlement Agreement,

notwithstanding anything to the contrary in the Sept. 28 Plan or this Confirmation Order, the

ACE Collateral Insurance Policies, Programs and Security Agreements:

> a.  To the extent they were entered into prior to the Petition Date, are deemed
>     to have been assumed by the Debtors to the extent of the Debtors' interests
>     therein pursuant to Section 365 of the Bankruptcy Code on the Effective
>     Date, and the Sept. 28 Plan constitutes a motion to assume the same as
>     executory contracts as of the Effective Date, which motion is hereby
>     granted in its entirety;

> b.  Remain in full force and effect and survive, and remain unaffected,
>     unmodified and unimpaired by, the Sept. 28 Plan and the Confirmation
>     Order; and

> c.  Are binding upon and enforceable against the respective parties to the
>     ACE Collateral Insurance Policies, Programs And Security Agreements,
>     including the Reorganized Debtors, in accordance with the terms and
>     conditions thereof as modified or released by the ACE Settlement
>     Agreement.

79.     Any Claim by the ACE Parties, arising under the ACE Collateral Insurance

Policies, Programs And Security Agreements, against

- 32 -

       (i)     any B&W/McDermott Party, and/or

      (ii)    any Entity (including any ACE Party) that issued, holds, or
              maintains any of the ACE collateral identified on Exhibit A
              of the ACE Settlement Agreement (solely in that Entity's
              capacity as such),

shall not be channeled to the Asbestos PI Trust.

### *Provisions Relating to Insurer Misconduct Actions*

80.    Notwithstanding anything in the Sept. 28 Plan, nothing in the Sept. 28 Plan or any

related documents (or in any release documents executed by holders of Asbestos PI Trust

Claims) shall extinguish, settle, waive, impair, enjoin, channel, or relinquish any Insurer

Misconduct Action against any Asbestos Insurance Entity, except as otherwise provided in this

Confirmation Order.

81.    Consistent with Section 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this

Confirmation Order, the Asbestos Insurance Entity Injunction, set forth in Paragraph 37 of this

Confirmation Order, and the Asbestos PI Channeling Injunction, set forth in Paragraph 32 of this

Confirmation Order, shall apply to B&W/AIG Insurer Misconduct Actions against Certain AIG

Member Companies.[5]

---

[5] The terms "B&W/AIG Insurer Misconduct Actions" and "Certain AIG Member Companies"
have the meanings ascribed to them in the Settlement Agreement and Release between the
Babcock Parties, the ACC, the FCR and Certain AIG Member Companies, which was approved
by the Bankruptcy Court on June 16, 2004. The term "New Hampshire" has the meaning
ascribed to it in the Amended and Restated Settlement Agreement and Release between the
Babcock Parties, the ACC, the FCR and Certain AIG Member Companies, for which execution
is pending (the "Amended and Restated AIG Settlement Agreement"). Notwithstanding
Paragraph 81 above, the application of the Asbestos PI Channeling Injunction to any Claims
against New Hampshire is conditioned on and subject to the final execution and approval by
Final Order of the Amended and Restated AIG Settlement Agreement.

May. 15. 2006  7:11AM                                No. 1149   P. 34/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 119 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-2   Filed 01/17/2006   Page 12 of 24

82.   Consistent with Section 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this Confirmation Order, the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction shall apply to B&W/Underwriters Insurer Misconduct Actions against Underwriters and Equitas (in its capacity as Underwriters' reinsurer and run-off agent).[6]

83.   Consistent with Section 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this Confirmation Order, the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction shall apply to B&W/Participating London Companies Insurer Misconduct Actions against the Participating London Companies.[7]

84.   Consistent with Section 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this Confirmation Order, the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction shall apply to B&W/St. Paul Insurer Misconduct Actions against St. Paul.[8]

85.   Consistent with Section 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this Confirmation Order, the Asbestos PI Channeling Injunction, the Asbestos PD Channeling

---

[6] The terms "B&W/Underwriters Insurer Misconduct Actions," "Underwriters," and "Equitas" have the meanings ascribed to them in the Amended and Restated Settlement Agreement and Mutual Release between the Babcock Parties, the ACC, the FCR, and Underwriters, which was approved by the Bankruptcy Court on April 14, 2005.

[7] The terms "B&W/Participating London Companies Insurer Misconduct Actions" and "Participating London Companies" have the meanings ascribed to them in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and the Participating London Companies, which was approved by the Bankruptcy Court on November 28, 2005.

[8] The terms "B&W/St. Paul Insurer Misconduct Actions" and "St. Paul" have the meanings ascribed to them in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and St. Paul, which was executed on December 6, 2005, and filed for approval with the Bankruptcy Court on November 23, 2005 (the "St. Paul Settlement Agreement").

Injunction, and the Asbestos Insurance Entity Injunction shall apply to the B&W/Travelers Insurer Misconduct Actions against Travelers.[9]

86.     Consistent with Section 7.3 and 7.4 of the Sept. 28 Plan and Paragraph 80 of this Confirmation Order, the Asbestos Insurance Entity Injunction and the Asbestos PI Channeling Injunction shall apply to B&W/ACE Companies Insurer Misconduct Actions in favor of the ACE Companies and their Predecessors.[10]

### Notice

87.     Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors shall be, and hereby are, directed to serve a notice of the (i) the entry of this Confirmation Order, (ii) the bar date for filing Claims based on the rejection of executory contracts or unexpired leases, (iii) the bar date for filing non-asbestos claims and (iv) the date for filing final applications for compensation and reimbursement of expenses hereunder. The Debtors shall submit a proposed form of notice (the "Confirmation Notice") to this Court within ten (10) days hereof.

88.     The Debtors shall be, and hereby are, directed to publish the Confirmation Notice once in The Wall Street Journal (National Edition); the Ohio Beacon Journal; the Baton Rouge Advocate; the New Orleans Times-Picayune; the Pittsburgh Post-Gazette; and the Tarentum Valley News Dispatch no later than ten (10) days after the Confirmation Date.

89.     No later than ten (10) days after the Effective Date, the Debtors shall publish once in The Wall Street Journal (National Edition); the Ohio Beacon Journal; the Baton Rouge

---

[9] The term "B&W/Travelers Insurer Misconduct Actions" has the meaning ascribed to it in the Travelers Settlement Agreement.

[10] The term "B&W/ACE Companies Insurer Misconduct Actions" has the meaning ascribed to it in the ACE Settlement Agreement.

Advocate; the New Orleans Times-Picayune; the Pittsburgh Post-Gazette; and the Tarentum

Valley News Dispatch notice of the occurrence of the Effective Date of the Sept. 28 Plan, which

notice shall state that the Apollo/Parks Township Claims are not affected by the Sept. 28 Plan

and shall reference the 30-day extension to file Apollo/Parks Township Claims against the

Debtors pursuant to Section 108 of the Bankruptcy Code. The Debtors will send the Apollo FCR

and his counsel an affidavit of publication from the Debtors' noticing agent confirming

publication. The Debtors will consult with the Apollo FCR regarding the content, timing and

size of the publication and any disputes arising with respect to such publication shall be resolved

by the Bankruptcy Court.

90.     A copy of this Confirmation Order shall be immediately served on the parties

listed on the 2002 Notice List.

91.     This Confirmation Order is hereby declared to be in recordable form and shall be

accepted by any recording officer for filing and recording purposes without further or additional

orders, certifications, or other supporting documents.

92.     This Court would like to express its appreciation to Mr. Justice James Farley of

the Ontario Superior Court of Justice for presiding over the ancillary proceedings in Canada and

would again seek his assistance in recognizing this order and giving effect to it in Canada.


THIS ORDER is hereby ENTERED in New Orleans, Louisiana on

Jan. 17           , 2006


The Honorable Sarah S. Vance
United States District Judge

CLERK'S OFFICE
A TRUE COPY

FEB - 9 2006

Deputy Clerk, U.S. District Court
Eastern District Of Louisiana

## EXHIBIT A

### Definitions of Parties Protected by the
### Asbestos PI Channeling Injunction and the Asbestos PD Channeling Injunction

1.  "Debtors" means The Babcock & Wilcox Company ("B&W"), Americon, Inc., Diamond Power International, Inc., and the Babcock & Wilcox Construction Co., Inc.

2.  "Reorganized Debtors" means the Debtors, or any successors in interest thereto, from and after the Effective Date of the Sept. 28 Plan.

3.  "Asbestos Protected Parties" means

    a) the Debtors;

    b) the Reorganized Debtors (except as to Class 7 Claims);

    c) the Non-Debtor Subsidiaries (as defined below);

    d) the MII Indemnified Parties (as defined below);

    e) any Entity that, pursuant to the Sept. 28 Plan or otherwise after the Effective Date of the Sept. 28 Plan, becomes a direct or indirect transferee of, or successor to, any of the Debtors, the Reorganized Debtors, the Non-Debtor Subsidiaries, the Non-Debtor Affiliates (as defined below), or the MII Indemnified Parties, or any of their respective assets (but only to the extent that liability is asserted to exist as a result of its becoming such a transferee or successor);

    f) any Entity that, pursuant to the Sept. 28 Plan or otherwise after the Effective Date of the Sept. 28 Plan, makes a loan to any of the Debtors, the Reorganized Debtors, the Non-Debtor Subsidiaries, the Non-Debtor Affiliates, the MII Indemnified Parties, the Asbestos PI Trust (as defined below), or to a successor to, or transferee of any of the respective assets of, the Debtors, the Reorganized Debtors, the Non-Debtor Subsidiaries, the Non-Debtor Affiliates, the MII Indemnified Parties, or the Asbestos PI Trust (but only to the extent that liability is asserted to exist by reason of such Entity's becoming such a lender or to the extent any pledge of assets made in connection with such a loan is sought to be upset or impaired);

    g) each of the respective present and future Affiliates and Subsidiaries of each of the Debtors, each of the Reorganized Debtors, each of the Non-Debtor Subsidiaries, each of the Non-Debtor Affiliates, and each of the MII Indemnified Parties; or

    h) each of the respective past, present, and future Representatives of each of the Debtors, each of the Reorganized Debtors, each of the Non-Debtor Subsidiaries, each of the Non-Debtor Affiliates, and each of the MII Indemnified Parties.

4.     "Non-Debtor Subsidiaries" means each of the following Entities:

Americon Equipment Services, Inc.
Applied Synergistics, Inc.
B&W Service Company
Babcock & Wilcox Canada Ltd.
Babcock & Wilcox China Holdings, Inc.
Babcock & Wilcox Denmark Holdings, Inc.
Babcock & Wilcox do Brasil Limitada
Babcock & Wilcox Ebensburg Power, Inc.
Babcock & Wilcox Equity Investments, Inc.
Babcock & Wilcox Foreign Sales Corporation
Babcock & Wilcox India Private Limited
Babcock & Wilcox International Sales and Service Corporation
Babcock & Wilcox International, Inc.
Babcock & Wilcox Volund ApS
Babcock & Wilcox Volund France SAS·
Diamond Operating Co., Inc.
Diamond Power Australia Holdings, Inc.
Diamond Power China Holdings, Inc.
Diamond Power do Brasil Limitada
Diamond Power Equity Investments, Inc.
Diamond Power Finland OY
Diamond Power Importacao e Exportacao Ltda.
Diamond Power Machine (Hubei) Co., Inc.
Diamond Power Services S.E.A. Ltd.
Diamond Power Specialty (Proprietary) Limited
Diamond Power Specialty Limited
Diamond Power-Sturm GmbH
Diamond Power Sweden Aktiebolag·
Diamond Power Sweden AB
Ebensburg Investors Limited Partnership
Ebensburg Power Company
Ejendomsaktieselskabet Falkevej2
LT Produkter i Skutskar AB
National Ecology Company
North County Recycling, Inc.
P. T. Babcock & Wilcox Asia
Palm Beach Resource Recovery Corporation
Power Systems Operations, Inc.
Revloc Reclamation Service, Inc.

5.     "MII Indemnified Parties" means

a)  McDermott International, Inc. ("MII");

- 2 -

May. 15. 2006 7:11AM                                              No. 1149   P. 39/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 124 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-2   Filed 01/17/2006   Page 17 of 24

b) all Entities that Schedule 1.1(b) to the Non-Debtor Affiliate Settlement
Agreement identifies as Affiliates of MII (listed below);

c) all natural persons who are past or present Affiliates of MII or any of its
Subsidiaries;

d) all future Affiliates of MII or any of its Subsidiaries;

e) Hudson Products Corporation, a Delaware corporation, and all of its present
Subsidiaries;

f) all the respective Representatives of the Entities described in clauses (a) through
(e) of this definition,

g) all the respective past, present and future Representatives of any of B&W and its
Subsidiaries, and

h) all the respective successors (by operation of law or otherwise) of the Entities
described in clauses (a) through (g) of this definition.

The Affiliates identified on Schedule 1.1(b) to the Non-Debtor Affiliate Settlement Agreement
include the following Entities:

| Name | Jurisdiction of Organization |
|---|---|
| B&W de Panama, Inc. | Panama |
| B&W SOFC G.P., Inc. | Delaware |
| B&W SOFC L.P., Inc. | Delaware |
| Babcock & Wilcox Asia Investment Company | Delaware |
| Babcock & Wilcox Asia Limited | Hong Kong |
| Babcock & Wilcox Beijing Company, Ltd. | China |
| Babcock & Wilcox China Investment Co., Inc. | Panama |
| Babcock & Wilcox Finance, Inc. | Delaware |
| Babcock & Wilcox HRSG Company | Delaware |
| Babcock & Wilcox International Investments Co., Inc. | Panama |
| Babcock & Wilcox Investment Company | Delaware |
| Babcock & Wilcox Investment Company | Louisiana |
| Barmada McDermott (L) Limited | Malaysia |
| Barmada McDermott Sdn. Bhd. | Malaysia |
| Bechtel B&W Idaho, LLC | Delaware |
| Bechtel BWXT Idaho, LLC | Delaware |
| Boudin Insurance Company, Ltd | Bermuda |
| Brick Insurance Company, Ltd. | Bermuda |
| BWX Technologies, Inc. | Delaware |
| BWXT Federal Services, Inc. | Delaware |
| BWXT Hanford Company | Delaware |
| BWXT of Idaho, Inc. | Delaware |

- 3 -

May. 15. 2006 7:12AM                                                No. 1149   P. 40/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 125 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-2   Filed 01/17/2006   Page 18 of 24

| Name | Jurisdiction of Organization |
|---|---|
| BWXT of Ohio, Inc. | Delaware |
| BWXT Pantex, L.L.C. | Delaware |
| BWXT Protec, Inc. | Delaware |
| BWXT Savannah River Company | Delaware |
| BWXT Services, Inc. | Delaware |
| BWXT Washington, Inc. | Delaware |
| BWXT Y-12, L.L.C. | Delaware |
| Caspian Offshore Fabricators LLC | Azerbaijan Republic |
| Cayenne Insurance Company, Ltd. | Bermuda |
| Ceramatec G.P., Inc. | Utah |
| Ceramatec SOFC, Inc. | Utah |
| Chartering Company (Singapore) Pte. Ltd. | Singapore |
| Columbia Basin Ventures, LLC | Delaware |
| Construcciones Maritimas Mexicanas, S.A. de C.V. | Mexico |
| Creole Insurance Company, Ltd. | Bermuda |
| CTR Solutions, LLC | Delaware |
| Deep Oil Technology, Inc. | California |
| Deepwater Marine Technology, L.L.C. | Cayman Islands |
| Delta Catalytic (Holland) B.V. | Netherlands |
| Delta Hudson Engineering Corporation | Texas |
| Delta Hudson International, Inc. | Panama |
| DHEC Corporation | Texas |
| Diamond Power (Australia) Pty. Limited | Australia |
| Diamond Power Hubei Machine Company, Ltd. | China |
| DynMcDermott Petroleum Operations Company | Louisiana |
| Eastern Marine Services, Inc. | Panama |
| Ebensburg Investors Limited Partnership* | Pennsylvania |
| Ebensburg Power Company* | Pennsylvania |
| First Emirates Trading Corporation | United Arab Emirates |
| FloaTEC, LLC | Delaware |
| Global Energy -McDermott Limited | British Virgin Islands |
| Greenbank Terotech Pty. Limited | Australia |
| Gumbo Insurance Company, Ltd. | Bermuda |
| Halley & Mellowes Pty. Ltd. | Australia |
| Honore Insurance Company, Ltd. | Bermuda |
| Hudson Engineering (Canada), Ltd. | Canada |
| Hudson Engineering Company, Inc. | Delaware |
| Hudson Engineering International, Inc. | Panama |
| Hydro Marine Services, Inc. | Panama |
| Initec, Astano y McDermott International Inc., S.A. | Spain |
| International Vessels Ltd. | Mauritius |

- 4 -

| Name | Jurisdiction of Organization |
|---|---|
| J. Ray McDermott (Aust.) Holding Pty. Limited | Australia |
| J. Ray McDermott (Nigeria) Ltd. | Nigeria |
| J. Ray McDermott Asia Pacific Pte. Ltd. | Singapore |
| J. Ray McDermott Contractors, Inc. | Panama |
| J. Ray McDermott de Mexico, S.A. de C. V. | Mexico |
| J. Ray McDermott Diving International, Inc. | Panama |
| J. Ray McDermott Eastern Hemisphere Limited | Mauritius |
| J. Ray McDermott Engineering Holdings, Inc. | Delaware |
| J. Ray McDermott Engineering, LLC | Texas |
| J. Ray McDermott Far East, Inc. | Panama |
| J. Ray McDermott Contractors, Inc. | Texas |
| J. Ray McDermott Holdings, Inc. | Delaware |
| J. Ray McDermott International Services Limited | United Kingdom |
| J. Ray McDermott International Vessels, Ltd. | Cayman Islands |
| J. Ray McDermott International, Inc. | Panama |
| J. Ray McDermott Investments B.V. | Netherlands |
| J. Ray McDermott Middle East (Indian Ocean), Ltd. | Mauritius |
| J. Ray McDermott Middle East, Inc. | Panama |
| J. Ray McDermott Newfoundland, Ltd. | Newfoundland |
| J. Ray McDermott Solutions, Inc. | Delaware |
| J. Ray McDermott Spars, Inc. | Delaware |
| J. Ray McDermott Technology, Inc. | Delaware |
| J. Ray McDermott Underwater Services, Inc. | Delaware |
| J. Ray McDermott Underwater Services, Inc. | Panama |
| J. Ray McDermott West Africa Holdings, Inc. | Delaware |
| J. Ray McDermott West Africa, Inc. | Delaware |
| J. Ray McDermott, Inc. | Delaware |
| J. Ray McDermott, S.A. | Panama |
| Lagniappe Insurance Company, Ltd. | Bermuda |
| Macshelf Ltd | United Kingdom |
| Malmac Sdn. Bhd. | Malaysia |
| Marine Contractors, Inc. | Panama |
| McDermott (Malaysia) Sendirian Berhad | Malaysia |
| McDermott Abu Dhabi Offshore Construction Company | United Arab Emirates |
| McDermott Amur, Inc. | Panama |
| McDermott APC Services Limited | United Kingdom |
| McDermott Arabia Company Limited | Saudi Arabia |
| McDermott Azerbaijan, Inc. | Panama |
| McDermott Azerbaijan Marine Construction, Inc. | Panama |
| McDermott Azerbaijan Pipelines, Inc. | Panama |
| McDermott Caspian Contractors, Inc. | Panama |
| McDermott Cayman Ltd. | Cayman Islands |
| McDermott Central & Eastern Europe, Inc. | Panama |

| Name | Jurisdiction of Organization |
|---|---|
| McDermott Employee Relief Fund | Texas |
| McDermott Far East, Inc. | Panama |
| McDermott Gulf Operating Company, Inc. | Panama |
| McDermott Holdings (U.K.) Limited | United Kingdom |
| McDermott Incorporated | Delaware |
| McDermott Industries (Aust.) Pty. Limited | Australia |
| McDermott International Asset Management, Ltd. | Bahamas |
| McDermott International B.V. | Netherlands |
| McDermott International Beijing, Inc. | Panama |
| McDermott International Engineering & Construction Co., Ltd. | Cayman Islands |
| McDermott International Investments Co., Inc. | Panama |
| McDermott International Marine Investments N.V. | Netherlands Antilles |
| McDermott International Marketing, Inc. | Panama |
| McDermott International Project Management, Inc. | Panama |
| McDermott International Trading (Holland1) B.V. | Netherlands |
| McDermott International Trading Co., Inc. | Panama |
| McDermott Marine Construction Limited | United Kingdom |
| McDermott Marine UK Limited | United Kingdom |
| McDermott Offshore Services Company, Inc. | Panama |
| McDermott Old JV Office, Inc. | Panama |
| McDermott Overseas Investment Co. N.V. | Netherlands Antilles |
| McDermott Overseas, Inc. | Panama |
| McDermott Sakhalin, Inc. | Panama |
| McDermott Servicos de Construcao, Ltda. | Brazil |
| McDermott Shipbuilding, Inc. | Delaware |
| McDermott South East Asia Pte. Ltd. | Singapore |
| McDermott Submarine Cable Systems Limited | United Kingdom |
| McDermott Technology, Inc. | Delaware |
| McDermott Trade Corporation | Delaware |
| McDermott West Indies Company | United Arab Emirates |
| Menck B.V. | Netherlands |
| Mentor Engineering Consultants Limited | United Kingdom |
| Mentor Subsea Technology Services, Inc. | Delaware |
| MIMCO, Inc. | Panama |
| Nooter/Eriksen -Babcock & Wilcox, L.L.C. | Missouri |
| North Atlantic Vessel, Inc. | Panama |
| Northern Marine Services, Inc. | Panama |
| Oak Ridge Security Associates, L.L.C. | Delaware |
| Oceanic Red Sea Company | United Arab Emirates |

- 6 -

| Name | Jurisdiction of Organization |
|---|---|
| Offshore Angola, Ltd. | Cayman Islands |
| Offshore Hyundai International, Ltd. | Cayman Islands |
| Offshore Pipelines Far East Limited | Vanuatu |
| Offshore Pipelines International Gulf E.C. | Bahrain |
| Offshore Pipelines International, Ltd. | Cayman Islands |
| Offshore Pipelines Nigeria Limited | Nigeria |
| Offshore Pipelines Sdn. Bhd. | Malaysia |
| Offshore Power Generation Ltd. | Cayman Islands |
| Offshore Production Vessels, Ltd. | Cayman Islands |
| OPI International Vessels, Ltd. | Cayman Islands |
| OPI Vessels, Inc. | Delaware |
| OPMI, E.C. | Bahrain |
| OPMI, Ltd. | Cayman Islands |
| P. T. Armandi Pranaupaya | Indonesia |
| P. T. Babcock & Wilcox Indonesia | Indonesia |
| P. T. Bataves Fabricators | Indonesia |
| P. T. Jay Ray | Indonesia |
| P. T. McDermott Indonesia | Indonesia |
| Pirogue Insurance Company, Ltd. | Bermuda |
| POGC Sensor Technology Pty. Limited | Australia |
| PT. J. Ray McDermott Indonesia | Indonesia |
| Rocky Flats Technical Associates, Inc. | Colorado |
| Sabine River Realty, Inc. | Louisiana |
| Safe Sites of Colorado, L.L.C. | Delaware |
| Saudi OPMI Company Limited | Saudi Arabia |
| SOFCo L. P. | Delaware |
| SOFCo-EFS Holdings LLC  (formerly SOFCO Holdings LLC) | Delaware |
| Spars International Inc. | Texas |
| SparTEC, Inc. | Delaware |
| Tallares Navales del Golfo, S.A. de C.V. | Mexico |
| TL Marine Sdn. Bhd. | Malaysia |
| Trispec Technical Services Ltd. | Canada |
| Valveco Industries Pty. Ltd. | Australia |
| Varsy International N.V. | Netherlands Antilles |
| Wagley, Inc. | Alaska |
| Washington Group BWXT Operating Services, LLC | Delaware |
| WD 140 Platform LLC | Louisiana |

Any Entity which (i) at the time of its dissolution prior to February 22, 2000, was a wholly owned Subsidiary of MII or any of its wholly owned Subsidiaries, and (ii) will be included in a list of Non-Debtor Affiliates that is filed as part of the Plan Supplement on or before the Effective Date.

6.   "Non-Debtor Affiliates" means each of the MII Indemnified Parties and each of the Entities identified on a supplement to Schedule 1.1(b) of the Non-Debtor Affiliate Settlement Agreement included in the Plan Supplement.

7.   "Settling Asbestos Insurance Entities" means any Asbestos Insurance Entity that has entered into an Asbestos PI Insurance Settlement Agreement (which may also include an Asbestos PD Insurance Settlement Agreement) that is sufficiently comprehensive in the determination of the Asbestos Claimants' Committee, the Future Claimants' Representative, and the Debtors to warrant treatment under Section 524(g) of the Bankruptcy Code in the case of Asbestos PI Trust Claims or to warrant treatment under Section 105 of the Bankruptcy Code in the case of Class 7 Claims, and that is listed on the following schedule:

### Schedule Of Settling Asbestos Insurance Entities
### (As of January 11, 2006)

1.   The ACE Companies, as defined in the Settlement Agreement and Release between the B&W/McDermott Parties (other than the Asbestos PI Trust), the ACC, the FCR and the ACE Parties (the "ACE Settlement Agreement"), which was approved by the Bankruptcy Court on December 28, 2005.

2.   The ACE Parties (other than the ACE Companies), each as defined in the ACE Settlement Agreement, but only with respect to insurance policies and the Prior Agreements under which (and only to the extent to which) such ACE Parties are released pursuant to the ACE Settlement Agreement.

3.   Affiliated/Appalachian, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and Affiliated/Appalachian, which was approved by the Bankruptcy Court on December 23, 2003.

4.   American General Insurers, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and the Participating American General Insurers, which was approved by the Bankruptcy Court on November 28, 2005.

5.   Arkwright, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and Arkwright, which was approved by the Bankruptcy Court on October 27, 2004.

6.   Associated International, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and Associated International, which was approved by the Bankruptcy Court on June 16, 2004.

7.   Certain AIG Member Companies, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and Certain AIG Member Companies, which was approved by the Bankruptcy Court on June 16, 2004.

8.     CNA, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and CNA, which was approved by the Bankruptcy Court on December 23, 2003.

9.     Federal, as defined in the Settlement Agreement and Complete Asbestos Claim Release between the Babcock Parties, the ACC, the FCR and Federal, which was approved by the Bankruptcy Court on November 28, 2005.

10.    Fireman's Fund, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and Fireman's Fund, which was approved by the Bankruptcy Court on December 28, 2005.**

11.    First State Releasees, as defined in the Amended Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and First State, which was approved by the Bankruptcy Court on June 16, 2004.

12.    Mt. McKinley, as defined in the Settlement Agreement and Complete Asbestos Claim Release between the Babcock Parties, the ACC, the FCR and Mt. McKinley, which was approved by the Bankruptcy Court on October 27, 2004.

13.    New Hampshire, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and New Hampshire, for which execution is pending.**

14.    New York Marine Managers, Inc., West Coast Marine Managers, Inc., The Navigators Group, Inc., and Ranger, as identified in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR, the New York Marine Parties, and Ranger, which was approved by the Bankruptcy Court on December 28, 2005 (the "New York Marine Settlement Agreement").**

15.    New York Marine Participating Companies, as defined in the New York Marine Settlement Agreement, but solely with respect to the New York Marine Subject Policies and only to the extent such New York Marine Subject Policies are released pursuant to the New York Marine Settlement Agreement.**

16.    Northwestern, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and Northwestern, which was approved by the Bankruptcy Court on June 24, 2004.

---

**Certain of the above-listed Asbestos Insurance Entities (designated on this Schedule by **) have entered into settlement agreements with the Debtors that are subject to final execution and/or approval by Final Order of the Bankruptcy Court, and/or the Ontario Superior Court of Justice (Commercial List) in the Matter of Babcock & Wilcox Canada (Court File No. 00-CL-3667). Designation on this Schedule of such Asbestos Insurance Entities is subject to, and conditioned upon, such final execution and the entry of such Final Orders.

May. 15. 2006 7:12AM                                                              No. 1149   P. 46/46
Case 2:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 131 of 135
Case 2:00-cv-00558-SSV-ALC   Document 192-2   Filed 01/17/2006   Page 24 of 24

17. Orion, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and Orion, for which execution is pending.**

18. Participating London Companies, as defined in the Settlement Agreement and Mutual Release between the Babcock Parties, the ACC, the FCR and the Participating London Companies, which was approved by the Bankruptcy Court on November 28, 2005.

19. Prudential and Pearl, each as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR, Prudential and Pearl, which was approved by the Bankruptcy Court on October 27, 2004.

20. The RiverStone Insurers, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR, RiverStone and the RiverStone Insurers, which was approved by the Bankruptcy Court on October 27, 2004.

21. Royal, as defined in the Settlement Agreement and Release between the Babcock Parties, the ACC, the FCR and Royal, which was approved by the Bankruptcy Court on October 27, 2004.

22. St. Paul, as defined in the Settlement Agreement and Complete Asbestos Claim Release between the Babcock Parties, the ACC, the FCR and St. Paul, which was approved by the Bankruptcy Court on December 28, 2005.

23. Travelers, as defined in the Settlement Agreement and Release between the B&W/McDermott Parties, the ACC, the FCR and Travelers, which was approved by the Bankruptcy Court on October 27, 2004.

24. Underwriters and Equitas (solely in its capacity as Underwriters' reinsurer and run-off agent), each as defined in the Amended and Restated Settlement Agreement and Mutual Release between the Babcock Parties, the ACC, the FCR and Underwriters (the "Amended and Restated Settlement Agreement"), which was approved by the Bankruptcy Court on April 14, 2005.

- 10 -

# EXHIBIT "D"

Case 3:21-cv-01363-AB   Document 14   Filed 03/22/21   Page 133 of 135

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE | NUMBER 00-10992 |
| THE BABCOCK & WILCOX COMPANY | |
| | SECTION "B" |
| DEBTORS | |
| | CHAPTER 11 |
| | REORGANIZATION |

### Jointly Administered with

| | |
|---|---|
| DIAMOND POWER INTERNATIONAL, INC. | 00-10993 |
| BABCOCK & WILCOX CONSTRUCTION CO., INC. | 00-10994 |
| AMERICON, INC. | 00-10995 |

### FINAL DECREE ORDER

The *Motion by Debtor The Babcock & Wilcox Company for Entry of Final Decree and For Notice to Creditors* [**P-7814**] (the "Motion") filed by The Babcock & Wilcox Company (the "Movant Debtor"), came for hearing before this Court on June 17, 2009 at 9:00 a.m. Considering the Motion, and no objections being filed, the Court hereby finds as follows:

1. Notice has been properly given herein and no other or further notice is required.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion is hereby GRANTED; and

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the case of The Babcock & Wilcox Company, Case No. 00-10992 is hereby closed; *provided, however,* that the Asbestos Personal Injury Settlement Trust shall file its annual reports (the "Annual Reports") with the Court as required by the Asbestos Personal Injury Settlement Trust Agreement; and

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the clerk of Court shall accept the Annual Reports without the requirement that any party in interest file a request to re-open The Babcock & Wilcox Company chapter 11 case; and

Case 3:21-cv-01363-AB   Document 1-1   Filed 03/22/21   Page 134 of 135
Case 00-10992   Doc 7825   Filed 06/20/09   Entered 06/21/09 00:14:21   Imaged
Certificate of Service   Page 2 of 3

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that entry of this Final

Decree is without prejudice to the rights of The Babcock & Wilcox Company to seek to reopen its

chapter 11 case for cause; and

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Court retains

jurisdiction with respect to all matters arising from or related to the interpretation or implementation

of this Order.

New Orleans, Louisiana, June 18, 2009.

_____

Jerry A. Brown

U.S. Bankruptcy Judge

# CERTIFICATE OF NOTICE

```
District/off: 053L-2          User: pl                Page 1 of 1            Date Rcvd: Jun 18, 2009
Case: 00-10992               Form ID: pdf900         Total Noticed: 23
```

The following entities were noticed by first class mail on Jun 20, 2009.
```
db          +The Babcock & Wilcox Company,   201 St. Charles Avenue,   Suite 4615,
             New Orleans, LA 70170-1000
aty         +Allison M. H. Murray,   Stephen J. O'Brien & Associates,   650 Ridge Road,   Suite 400,
             Pittsburgh, PA 15205-9503
aty         +Ambrose V. McCall,   755 Magazine Street,   New Orleans, LA 70130-3629
aty         +Bailey Henderson Smith,   c/o McGlinchey Stafford,   643 Magazine Street,
             New Orleans, LA 70130-3405
aty         +Baldwin Haspel Burke & Mayer, L.L.C.,   2200 Energy Centre,   1100 Poydras Street,
             New Orleans, LA 70163-1101
aty         +David J. Messina,   Gordon Arata McCollam Duplantis & Eagan,   201 St. Charles Avenue,
             40th Floor,   New Orleans, LA 70170-1000
aty         +David J. Parsons,   SBE&P,   2323 Bryan Street,   Suite 2200,   Dallas, TX 75201-2655
aty         +Edward J. Rivera,   201 St. Charles Avenue,   35th Floor,   New Orleans, LA 70170-1000
aty         +Elihu Inselbuch,   375 Park Avenue,   35th Floor,   New York, NY 10152-0002
aty         +Elizabeth W. Magner,   1100 Poydras Street,   Suite 1806, Energy Centre,
             New Orleans, LA 70163-1101
aty         +Eric A. Schaffer,   Reed Smith LLP,   435 Sixth Avenue,   Pittsburgh, PA 15219-1808
aty         +Francis J Barry,   Deutsch, Kerrigan & Stiles, LLP,   755 Magazine Street,
             New Orleans, LA 70130-3629
aty         +Harkins Cunningham LLP,   801 Pennsylvania Ave., NW,   Suite 600,   Washington, DC 20004-2664
aty         +Heller, Draper, Hayden, Patrick & Horn, LLC,   650 Poydras Street, Suite 2500,
             New Orleans, LA 70130-6175
aty         +James E. Wimberley,   3120 Central Mall Drive,   Port Arthur, TX 77642-8039
aty         +Janet MacDonnell,   755 Magazine Street,   New Orleans, LA 70130-3629
aty         +Joy Lyu Monahan,   650 Poydras Street,   Suite 2500,   New Orleans, LA 70130-6175
aty         +Kingsmill Riess, L.L.C.,   201 St. Charles Avenue, Suite 3300,   New Orleans, LA 70170-3400
sp          +F. David Foster,   Miller & Chevalier Chartered,   655 15th Street,   Washington, DC 20005-5799
sp          +Kirkland & Ellis,   200 East Randolph Drive,   Chicago, IL 60601-6436
sp           Morrison Ernest,   Cox Hallett Wilkinson,   Milner House,   18 Parliament Street,
             Hamilton HM FX,   Bermuda
sp          +Robert J. Edwards,   6324 Perlita Drive,   New Orleans, LA 70122-2242
sp           Young, Conaway, Stargatt & Taylor, LLP,   c/o James L. Patton,   11th Floor, Rodney Square North,
             P.O. Box 391,   Wilmington, DE  19899-0391
```

The following entities were noticed by electronic transmission.
```
NONE.                                                                              TOTAL: 0

           ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
db*         +Babcock & Wilcox Company,   201 St. Charles Avenue,   Suite 4615,   New Orleans, LA 70170-1000
aty*        +Janet MacDonnell,   755 Magazine Street,   New Orleans, LA 70130-3629
                                                                           TOTALS: 0, * 2
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

**Date: Jun 20, 2009**                    **Signature:**    _Joseph Speetjens_